# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------

BERNARD LEWIS

     Plaintiff

v

ANNEMARIE E. STEWARD, ESQ

LEGAL SERVICING, LLC

ROBERT T. VAN DE MARK

NORTH AMERICAN PROCESS SERVING, LLC

RODNEY A. GIOVE, ESQ

ROBERT CRANDALL

WILLIAM SINGLER

RESOLUTION MANAGEMENT, LLC

MARK H. STEIN, ESQ

JP MORGAN CHASE BANK, N.A. d/b/a CHASE BANK

ERIN CAPITAL MANAGEMENT, LLC

     Defendants

**COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Case No.19 CIV.--------------

# 19 CV 8085

------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff institutes this action for actual damages, punitive damages and other costs against

defendants Annemarie Steward, Legal Servicing LLC, Robert Van De Mark, North American

Process Serving LLC, Rodney Giove, Robert Crandall, William Singler, Resolution Management

LLC, Mark H. Stein, JP Morgan Chase Bank, N.A. d/b/a Chase Bank, and Erin Capital

Management LLC, for violations of New York Judiciary Law § 487 (1), Violations of the Racketeer Influenced Corrupt Organization Act 18 U.S.C. § 1962, Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et Seq., and Criminal Facilitation in violation of New York Penal Law § 115.05 which led to Professional Negligence.

## I.                                JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1331 because there are questions arising under Federal Law, 15 U.S.C. § 1692 et Seq., (FDCPA), and 18 U.S.C. § 1962 et Seq., (RICO).

2. This Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

## II.                                PARTIES

3. Plaintiff Bernard Lewis is an individual residing at 4818 Wilder Avenue, Bronx (Bronx County) New York 10470.

4. Defendant Annemarie Steward is the attorney who is currently prosecuting a fraudulent collection action against plaintiff and sought an order to auction plaintiff's property after getting a default judgment and works from her office located at 2801 Wehrle Drive, Suite 5, Williamsville, (Erie County) New York 14221.

5. Defendant Legal Servicing LLC, is the Debt Collector who got a default judgment against plaintiff with an office located at 2801 Wehrle Drive, Suite 5, Williamsville (Erie County) New York 14221.

6. Defendant Robert Van De Mark is the Managing Member of Legal Servicing LLC, and works from the Company headquarters located at 2801 Wehrle Drive, Suite 5, Williamsville, (Erie County) New York 14221.

7. Defendant North American Process Serving LLC, is the process serving entity that allegedly served plaintiff in 2015 with a complaint for a judgment lien renewal at 4818 Wilder Avenue, Bronx, New York and the Company is currently located at 69 Delaware Avenue, Suite 1100, Buffalo, (Erie County) New York 14202.

8. Defendant Rodney A. Giove is the attorney who got a default judgment against plaintiff in 2005 when his office was located at 2801 Wehrle Drive, Suite 5, Williamsville, New York, but after Giove got sued by the Honorable Ann PFAU in the Erie County Supreme Court in case No. 2009-8236, Giove moved his office to 754 Park Place, Niagara Falls, (Niagara County), New York 14301.

9. Defendant Robert Crandall is the process sever who allegedly served a summons and complaint in 2005 upon plaintiff at 4058 Pratt Avenue, Bronx, New York and currently resides at 118-34 196 Street, Saint Albans, (Queens County) New York 11412.

10. Defendant William Singler is the notary who notarized the affidavit of service served by Crandall in 2005, and owner of American Legal Process who pled guilty to sewer service and resides at 180-18 Tudor Road, Jamaica Estates, (Queens County) New York 11432.

11. Defendant Resolution Management LLC, is the entity that allegedly purchased the default judgment from Legal Servicing LLC, in June of 2010, but according to the New York State Department of State, Division of Corporations records, the entity's address is P.O. Box 25776, Rochester, (Monroe County) New York 14625.

12. Defendant Mark H. Stein is the attorney who represented Resolution Management LLC, when the entity purchased the default judgment from Legal Servicing LLC, on June 23, 2010 and Stein is currently employed by the law firm of Lacy Katzen, LLP, located at 130 East Main Street, Second Floor, Rochester, (Monroe County) New York 14604.

13. Defendant JP Morgan Chase Bank, N.A. d/b/a Chase Bank is the entity that sold the same zombie debt to Legal Servicing LLC, and Erin Capital Management LLC, and the entity is headquartered at 270 Park Avenue, New York (New York County) New York 10017.

14. Defendant Erin Capital Management, LLC is the entity who claimed that it purchased the same zombie debt from Chase Bank that was sold to Legal Servicing LLC, and got a default judgment against Lewis and the entity is located at 307 Fifth Avenue, 17th Floor, New York, (New York County) New York 10016.

### III.                    FACTUAL ALLEGATIONS

15. Plaintiff incorporates all other paragraphs in this complaint by reference as though fully rewritten herein.

16. Plaintiff had a credit card with Chase Bank, and after 90 days of default, the account was paid 90 cents on the dollar by the Trade Credit Insurance policy which Chase purchased to protect itself from its defaulting customers, and Chase wrote off the debt and received tax benefits from the Internal Revenue Service.

17. Because Chase Bank was paid 90 cents on the dollar by the Trade Credit Insurance policy which Chase purchased to protect itself from its defaulting customers, and further received tax credits from the Internal Revenue Service, Chase was prohibited from double dipping.

18. Chase then sold the same zombie debt that was inaccurate, not owed, and or otherwise not collectable to both Erin Capital Management LLC, and Legal Servicing LLC, for five cents on the dollar according to the California attorney General and the Consumer Financial Protection Bureau.

19. The California attorney General Kamala Harris filed a complaint for permanent injunction, civil penalties, restitution, and other equitable relief against JP Morgan Chase & Co, Chase Bank USA, N.A., and Chase Bank Card Services, Inc., on May 9, 2013, in the Superior Court of the State of California, County of Los Angeles, case No. BC508466 which states in paragraph No. 15, "Before filing a lawsuit against a California consumer on an alleged defaulted credit card account, defendants' attorneys send correspondence to the consumer demanding payment of the balance due. In this correspondence to the consumer, defendants' attorneys: (a) state that they have been instructed to file suit; (b) claim that the consumer may be liable for additional amounts due, including attorneys' fees "when allowed by law", and (c) threaten to garnish the consumer's income, levy personal property, and place liens on real property."

**Exhibit A.** Complaint for permanent injunction, civil penalties, Restitution and other equitable relief against JP Morgan Chase & Co., by the California attorney General.

20. Paragraph No. 16 of Kamala Harris complaint states, "Through each of these communications with a California consumer, defendants commit unlawful, unfair, and/or fraudulent acts or practices, including, but not limited to, the following:

   a.  Although defendants' correspondence is signed by an attorney, no attorney has exercised any independent legal judgment in sending the correspondence, and no attorney has even reviewed the consumer's file to determine if the letter is accurate, including accuracy as to the claimed amount due.

   b.  The amounts claimed are often inaccurate.

5

   c.  Despite their threat to the contrary, defendants do not recover attorneys' fees from the consumer.

   d.  Despite their threat to the contrary, defendants do not place liens on the consumer's real property."

21.   Paragraph No. 17 of Kamala Harris complaint states "When defendants file a lawsuit against a California consumer, defendants commit additional unlawful, unfair, and/or fraudulent acts or practices, including, but not limited to, the following:

   a.  Defendants file a verification of the complaint in which the declarant states, under penalty of perjury, that the declarant is an assistant Treasurer and officer of Chase USA, and that the matters alleged in the complaint are true. These statements are false. The declarant is neither an "assistant Treasurer" nor an "officer" of Chase USA, but rather a low-level employee of Bankcard Services who has never even seen the complaint. The declarant has no personal knowledge about whether or not the complaint's allegations are true- for example, that venue is proper, that the consumer owes the amount claimed, or that the consumer's contract with defendants provides for the recovery of reasonable attorneys' fees.

   b.  Defendants do not properly serve consumers with the summons and complaint, despite filing proofs of service that declare under penalty of perjury that service was complete. For example, defendants, through their agents for service of process, falsely state in proofs of service that the consumer was personally served, when, in fact, he or she was not served at all- a practice known as "sewer service." Other times, defendants falsely state in proofs of service that substitute service was properly effected, even though defendants made no reasonable attempts to personally serve the

consumer. In any event, to more quickly generate seemingly legitimate process-server returns, defendants often file proofs of service that bear only a digitally applied facsimile of the declarant's signature, instead of the declarant's original, "wet ink" signature, as required for documents signed under penalty of perjury."

22. Paragraph No. 18 of Kamala Harris complaint states, "If the consumer does not appear to defend the lawsuit-which happens in the majority of the cases- defendants engage in unlawful, unfair, and/or fraudulent acts or practices to obtain a default judgment. These acts and practices include, but are not limited to, the following:

    a.  Defendants file a declaration in support of the entry of default judgment in which the declarant states, under penalty of perjury, that the declarant is an officer of Chase USA and a custodian of Chase USA's Business Books and records, and that he or she has personal knowledge of the facts supporting the entry of default. These statements are false. The declarant is not an officer of Chase USA, but rather a low-level employee of Bankcard services (often the same purported officer who signed the complaint verification), who has no personal knowledge of the facts set forth in the declaration. For example, the declarant has no personal knowledge of the balance that he, or she states is owed by the consumer and has not reviewed the books and records necessary to determine the amount owed.

    b.  In these same declarations in support of the entry of default judgment, the declarant states that defendants will not produce the purported contract with the consumer and so waive the claim for attorney's fees allegedly authorized by the contract. This is despite the threat previously made to the California consumer in pre-lawsuit correspondence that defendants may claim reasonable attorneys' fees.

c.  In requesting entry of default judgment, defendants' attorneys declare under penalty of perjury that the debtor against whom a default judgment is requested is not in the military service. In fact, defendants have made no inquiry and have no personal knowledge about whether or not the debtor is a service member and thus entitled to certain benefits under California military and veterans code section 400 et seq. One of these benefits, for example, is that a Court may not enter a default judgment against a defendant in the military service until an attorney is appointed to represent him or her.

d.  As an attachment to the declaration in support of the entry of default judgment, the declarant attached one of the consumer's credit card statements, but rarely redacts the consumer's private information protected under California law, such as the consumer's credit card account number."

23. Paragraph No. 19 of Kamala Harris complaint states, "After securing the default judgment through unlawful, unfair, and/or fraudulent acts or practices, defendants: (a) obtain a writ of execution and other Court orders to take the consumer's personal property; including wages and Bank accounts, to satisfy the default judgment; and (b) submit negative credit information concerning the default judgment against the consumer to consumer credit reporting agencies."

24. Paragraph No. 20 of Kamala Harris complaint states, "Defendants also engage in unlawful, unfair, and/or fraudulent acts or practices when providing affidavits to third parties who purchase defendants' defaulted credit card accounts. For example, in support of these third parties' collection actions, defendants provide affidavits to the third parties in which the affiant states that defendants sold the consumer's account to the third party and that the

consumer owes the amount stated in the affidavit. In fact, the affiant does not review defendants' books and records in a manner sufficient to support the facts to which he or she attests, does not have personal knowledge of the facts, and does not set forth those facts with particularity. Moreover, the affiant is not administered an oath prior to signing the affidavit, and no notary public is present to witness the signing."

25. On November 2, 2015 a stipulation for entry of judgment was entered whereby JP Morgan Chase & Co., settled the lawsuit by refunding $309 Million to 2.1 Million credit card customers, and further paying a fine of $80 Million.

**Exhibit B**. Stipulation for entry of judgment entered against JP Morgan Chase & Co., by the California attorney General.

26. The judgment required Chase to document and confirm debts before filing credit card collections lawsuits or selling credit card debts to collectors, barred Chase from robo-signing Court and other documents, prohibit debt buyers from reselling the credit card debts owed to Chase, barred Chase from selling certain debts, and Chase was required to permanently stop all attempts to collect, enforce in Court, or sell more than 528, 000 consumer accounts valued at hundreds of millions of dollars.

27. Emily Glazer of the Wall Street Journal reported on July 8, 2015 that the Consumer Financial Protection Board, along with 47 States and the District of Columbia found that JP Morgan Chase Bank sold zombie debts to third party debt buyers which include accounts that were inaccurate, or in some way not collectible and Chase settled the matter for $136 Million.

**Exhibit C.** JP Morgan to settle credit-card probes for $136 Million by Emily Glazer of the Wall Street Journal.

28. According to the Consumer Financial Protection Bureau, Chase made miscalculations in some of the lawsuits resulting in debtors facing judgments for the wrong amounts and failed to notify the Courts, or the affected customers.

29. On July 8, 2015 Chase signed a consent order with the Consumer Financial Protection Bureau whereby Chase admitted to selling lots of its credit card debt to third party buyers who were then free to collect the money but some of the accounts were;

    a.   Already been settled by agreement.

    b.   Paid in full.

    c.   Discharged in Bankruptcy.

    d.   Identified as fraudulent and not owed by the debtor.

    e.   Subject to an agreed-upon payment plan

    f.   No longer owned by Chase.

    g.   Otherwise no longer enforceable.

    **Exhibit D**. Consent order between the Consumer Financial Protection Bureau and Chase Bank, USA, N.A., file No. 2015-CFPB-0013.

30. Paragraph No. 24 of the Consent order states, "Because respondents sometimes failed to accurately update, maintain, and reconcile the account information in their databases before selling defaulted accounts to debt buyers, the resulting account information was not always accurate for accounts that had gone to judgment."

31. Paragraph No. 25 of the Consent order states, "Compounding this problem, when respondents obtained portfolios of credit card accounts from acquired Banks, they did not always receive important documentation needed to support claims that consumers owed the debts and owed the amount stated. On certain accounts respondents were unable to conform their databases with the original account documents for accounts that they acquired."

32. Paragraph No. 26 of the Consent order states, "As a result of these failures, respondents sold certain accounts to debt buyers that respondents knew or should have known were unenforceable or uncollectable. Respondent also provided erroneous and incomplete information to debt buyers who respondents knew or should have known would use this information in conducting collection activity."

33. Paragraph No. 27 of the Consent order states, "Respondents sold certain accounts to debt buyers where respondents knew or should have known the electronic sale file contained erroneous or missing information about the identity of the account holder, the amount owed, whether the account had been paid or settled, and whether respondents' internal operations had deemed an account to be fraudulent."

34. Paragraph No. 28 of the Consent order states, "Respondents also sold certain accounts that were not enforceable or otherwise should not have been subject to collection, including:

    a.  Accounts that were settled by agreement;

    b.  Accounts that were paid in full;

    c.  Accounts that were no longer owned by respondents when they were sold; and

    d.  Accounts that had been identified as fraudulently opened or subject to fraudulent charges or otherwise not owed by the identified debtor."

35. Paragraph No. 29 of the Consent order states, "Respondents also sold certain accounts that debt buyers could not lawfully collect, or which were susceptible to unlawful collection practices by debt buyers, including:

    a. Accounts with inaccurate amounts owed;

    b. Accounts where respondents knew or should have known supporting data was inaccurate or unavailable;

    c. Accounts that were subject to litigation;

    d. Accounts that were subject to a Bankruptcy stay;

    e. Accounts that were subject to an agreed payment plan;

    f. Accounts that were pending settlement; or

    g. Accounts that had deceased debtors.

36. Paragraph No. 30 of the Consent order states, "Respondents' actions caused harm to certain consumers because the debt buyers who purchased the accounts demanded payment from consumers and filed lawsuits based on invalid or inaccurate debts, or inaccurate information provided by Chase. Consumers were thus pursued to pay amounts not owed or which were uncollectable. Consumers also could be sued and have a judgment entered against them based on documents that were falsely sworn. Further, if debt buyers furnished faulty information to consumer reporting agencies, then the consumers' credit files and credit reports would contain inaccurate information, which could affect these consumers' ability to obtain credit, employment, housing, and insurance in the future."

37. In plaintiff's case, Chase sold the same account to Erin Capital Management, LLC, and Legal Servicing, LLC.

38. Erin Capital Management LLC, sued plaintiff in the Bronx County Civil Court in 2002 and got a default judgment without plaintiff's knowledge and plaintiff only found out about the default judgment in March of 2019 when the default judgment was assigned to Caddis Investments, LLC.

   **Exhibit E.** Notice of assignment of judgment from Erin Capital Management LLC, to Caddis Investments, LLC.

39. Rodney A. Giove then filed a verified complaint against plaintiff on May 19, 2005 in the case of Legal Servicing LLC, Successor in interest to Chase Manhattan Bank v. Bernard Lewis in the Bronx County Civil Court, with index No. 0022189/2005.

40. The complaint list Lewis address as 4058 Pratt Avenue, Bronx, New York and Giove address is listed as 2801 Wehrle Drive, Suite # 5, Williamsville New York which is the same office from which Legal Servicing current attorney Annemarie Steward works.

   **Exhibit F.** Verified complaint filed by Rodney Giove against Bernard Lewis in the Bronx County Civil Court.

41. Paragraph No. 1 of the Verified complaint states, "That at all timed hereinafter mentioned, the plaintiff Legal Servicing, LLC, a Delaware limited liability Company authorized to do Business in New York having a principal place located at 2801 Wehrle Drive, Suite # 5, Williamsville, NY 14221 is successor in interest to Chase Manhattan Bank."

42. However, according to the New York State Department of State, Division of Corporations Record, Chase Manhattan Banking Corporation became inactive on January 4, 1993 which

demonstrates that Chase Manhattan Bank could not have sold Lewis collection account to

Legal Servicing, LLC, which was founded in 2004.

**Exhibit G.** New York State Department of State, Division of Corporation records for

Chase Manhattan Banking Corporation.


43. A Verification and affidavit of merit attached to Giove verified complaint states, "Robert T.

Van De Mark, being duly sworn, deposes and states the following under penalties of

perjury: I am the president and CEO of plaintiff and am fully familiar with the facts and

circumstances of this matter. Defendant heretofore entered into a credit card agreement with

plaintiff's predecessor in interest, Chase Manhattan Bank. At defendant's request, plaintiff's

predecessor in interest mailed a credit card and card agreement to defendant who opened an

account in defendant's name. Defendant utilized the credit card, made minimal payments on

behalf of the account pursuant to the credit card agreement and has now defaulted in making

the scheduled payments. Plaintiff's predecessor in interest mailed statements to defendant

advising of said default and demanding payment. Defendant retained said statement without

objection. No payment has been received despite due demand. The information contained in

plaintiff's complaint is true to deponent's own knowledge except to those matters stated to

be alleged on information and belief, and to those matters your deponent believed them to

be true. This verification is made by deponent because plaintiff is a Corporation and

deponent is the president and CEO with knowledge of the facts and circumstances of the

debt allegedly and upon account records and other data in your deponent's possession."

44. However, the affidavit of mailing of a copy of the summons states, "Candace R. Milks,

being duly sworn, deposes and states: I am over 18 years of age, reside at 4982 Roseview

Ave., Blasdell, NY 14219 and I am acting as agent for plaintiff's attorney in this action. The above entitled action is against a natural person and is based upon nonpayment of a contractual obligation. To comply with the additional notice provisions of CPLR 3215, as amended, on Monday, July 11, 2005, I enclosed a copy of the summons and verified complaint in the above entitled action an a first class mail post-paid sealed envelope properly addressed to the defendant Bernard Lewis at defendants last known residence at 4058 Pratt Ave, Bronx, NY 10466 and I deposited the envelope in an official depository under the exclusive care and custody of the United States Postal Service within New York State and the envelope has not been returned by the Postal Service."

**Exhibit H**. Affidavit of mailing of a copy of the summons by Candace R. Milks

45. The affidavit of service shows that Robert Crandall served the summons and complaint upon Lewis via service upon Jane Doe, co-tenant at 4058 Pratt Avenue, Bronx, New York on May 5, 2005 and the affidavit of service was notarized by William Singler.

**Exhibit I.** Affidavit of service upon Lewis by Robert Crandall, and notarized by Singler.

46. Rodney Giove then made an application for a default judgment which was entered by the default Clerk of the Bronx County Civil Court on August 17, 2005.

**Exhibit J.** Entry of judgment against Lewis by the default clerk of the Bronx Civil Court.

47. The New York State attorney General filed a felony complaint against William Singler and his Company ZMOD Process Corporation, Inc., d/b/a American Legal Process, Inc., in April of 2009 for criminal possession of a forged instrument in the second degree, offering a false

instrument for filing in the first degree, scheme to defraud in the second degree, and Notary

public fraud in violation of § 135-a (2) of the Executive Law of the State of New York.

**Exhibit K** Felony complaint against William Singler and ZMOD Process Corporation,

Inc., dba American Legal Process Inc., by the New York State attorney General.

48. Paragraph No. 14 of the felony complaint states, "Katt told me that in the Spring of 2008

(which was after NYSAG's investigation into ALP's practices became known publicly), she

first began to receive from ALP affidavits of service that had been prepared for her to sign

regarding the cases assigned to her. Katt told me that Hand at ALP told her to sign them and

have her signature notarized by a local notary. Prior to the spring of 2008, Katt claimed that

she was unaware that affidavits of service had been created from the worksheets she

submitted to ALP and subsequently filed with the Courts. At some point after April, 2008,

Katt asked Singler on the phone who had been signing the affidavits of service on her behalf

in cases in which she had served process before the Spring of 2008. Singler told Katt that he

had signed the affidavits of service himself."

49. Based upon Singler's admissions, Robert Crandall may not have even signed the affidavit of

service in Lewis case on May 13, 2005.

50. Craig D. Robins, Esq of Long Island Bankruptcy Blog.com posted on Tuesday April 14,

2009, "Long Island Process Serving Company owner arrested Today for sewer service."

**Exhibit L.** Long Island Process Serving Company owner arrested Today for sewer

service by Craig D. Robins, Esq of Long Island Bankruptcy Blog.com.

51. On July 21, 2009 the Honorable Timothy J. Drury of the Erie County Supreme Court signed

an order to show cause that was filed by the Honorable Ann PFAU, in the matter of the

Petition of Honorable Ann PFAU, Chief administrative Judge of the New York State

Unified Court System v. Forster & Garbus et al; case No. 2009-8236 which states in

paragraph No. 5 -7 of the order to show cause, "Vacating and setting aside default

judgments taken in the identified actions and proceedings upon such terms as may be just, or

denying a pending motion for a default judgment, unless the party seeking to obtain or

enforce a default judgment establishes at the hearing, without reference to an American

Legal Process affidavit of service, that service was effected properly pursuant to CPLR

Article 3;

With respect to those default judgments that are vacated and set aside. Directing

restitution in like manner and subject to the same conditions as where a judgment is

reversed or modified on appeal;

Enjoining the respondents from seeking to obtain a default judgment against any

individual defendant as to whom the respondent used American Legal Process to serve

the summons and complaint, or the notice of Petition or order to show cause and Petition,

until such time as the respondents can show evidence of service other than an affidavit of

service provided by American Legal Process;"

**Exhibit M.** Order to show cause signed by Judge Drury on July 21, 2009, in the matter of

the Petition of Honorable Ann PFAU v. Forster & Garbus et al, index No. 2009-8236.

52. The Verified Petition attached to the order to show cause and signed by Ann PFAU on July

9, 2009 states in paragraph No. 6, "Respondents, except as noted below, are law firms and

lawyers who used American Legal Process to serve process, and who obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process."

**Exhibit N.** Verified Petition signed by the Honorable Ann Pfau, along with the attorney affirmation of James M. Morrissey, assistant attorney General.

53. Paragraph No. 9 of the verified Petition states, "Respondent Rodney A. Giove represents plaintiffs in debt collection actions and proceedings, including greater Niagara Holdings, LLC, and used American Legal Process to serve process, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process."

54. Paragraph No. 12 of the verified Petition states, "From 2004 to date, respondents each have used American Legal Process to serve process on at least 100 occasions."

55. Paragraph No. 13 of the verified Petition states, "Petitioner seeks an order and judgment, inter alia, ordering respondents to identity those actions and proceedings for which they obtained default judgments on behalf of their clients where American Legal Process served process, and vacating those default judgments upon such terms as may be just unless respondents establish at the hearing, without reference to American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3.."

56. Paragraph No. 2 of the attorney affirmation executed by James M. Morrissey, assistant attorney General states in paragraph No. 2, "Petitioner brings this action to vacate default judgments taken Statewide –usually against consumers alleged to owe a debt-that were

obtained by fraud, misrepresentation, illegality and lack of proper service. The number of

default judgments respondent seeks to vacate is likely in excess of 100,000."

57. Paragraph No. 19 of Morrissey affirmation states, "Where American Legal Process served a

summons and complaint by so-called "nail and mail" service, defendants defaulted 75.8% of

the time. The OAG reviewed 235 cases in which respondents used American Legal Process

to serve process and obtained default judgments. Affidavit of George Danylik, internal audit

manager of the Unified Court System internal audit unit, sworn to on July 15, 2009

("Danyluk aff.) ¶ 6. Almost all of the actions and proceedings were against consumers who

were alleged to owe a debt, and the average default judgment was for $5,475."

58. Paragraph No. 20 of Morrissey affirmation states, "American Legal Process' policy and

practice, communicated to its servers, was to attempt service once, affix the summons and

complaint to the door if no one answered the door, and fabricate two earlier attempts. This

policy and practice is shown by the sworn handwritten statements from American Legal

Process employees and/or severs annexed hereto as exhibit O, and the United Court System

internal audit unit analysis of the processCase database. This policy may have changed after

Annette Forte, an American Legal Process server, was arrested in April 2008 for filing false

documents."

59. Page 6 of Morrissey affirmation shows that Dunham Tyler, a process server employed by

American Legal Process was at two different locations serving process 839 times.

60. Paragraph No. 28 and 29 of Morrissey affirmation states, "The American Legal Process

processCase database shows that, from January 1, 2007 to October 8, 2008, William Singler,

the owner of American Legal Process, claims to have notarized the signatures of process

servers from across New York State on 73, 395 occasions for an average of over 3, 300

affidavits per month. Danyluk Aff., ¶ 39. The analysis of the UCS internal audit unit shows that Singler notarized the signatures of servers on dates when, according to American Legal Process ProcessCase database, it was physically impossible for him to do so, or the claim is so highly improbable that it should not be credited."

61. On January 15, 2010, the New York State attorney General announced that William Singler, owner of Long Island based American Legal Process, has pled guilty to a scheme to defraud for failing to provide proper legal notification to thousands of New Yorkers facing primarily debt related lawsuits.

    **Exhibit O.** Press release from New York State attorney General's office regarding guilty plea entered by William Singler, the owner of American Legal Process.

62. Once Rodney Giove found out about the arrest of William Singler, Giove turned plaintiff's file over to Annemarie Steward, an attorney in his office.

63. On June 23, 2010 Annemarie Steward executed an assignment of judgment and substitution of attorney whereby Legal Servicing LLC, assigned the judgment to Resolution Management, LLC, and Mark H. Stein of Lacy Katzen, LLP executed the sham agreement on behalf of Resolution Management, LLC.

    **Exhibit P.** Assignment of judgment and substitution of attorney between Legal Servicing, LLC, and Resolution Management, LLC.

64. According to the New York State Department of State, Division of Corporations record, the Business address for Resolution Management, LLC, is P.O. Box 25776, Rochester, New York 14625.

**Exhibit Q**. New York State Department of State, Division of Corporations records for Resolution Management, LLC.

65. Even though the default judgment was sold to Resolution Management LLC, and Mark Stein was the attorney of record for Resolution Management LLC, Annemarie Steward filed a summons and complaint for a judgment lien renewal in 2015.

66. In order to circumvent the evidence in the Civil Court which shows that the default judgment was assigned to Resolution Management LLC, Steward filed the complaint for judgment lien renewal dated June 11, 2015 in the Bronx County Supreme Court.

**Exhibit R**. Complaint for judgment lien renewal filed by Annemarie Steward on behalf of Legal Servicing LLC, dated June 11, 2015.

67. Paragraph No. 7 of the judgment lien renewal states, "On August 17, 2005, Judgment in the amount of $15, 844.06 was entered in the New York City Civil Court of Bronx County under index Number 22189 BCV 2005, in favor of Legal Servicing, LLC, the plaintiff named above, and against Bernard Lewis, the defendant named above. A Transcript of judgment was filed in the Bronx County Civil Court on August 30, 2005. Copies of the judgment and transcript of judgment are annexed hereto as exhibit A."

68. Paragraph No. 12 of the judgment lien renewal states, "Plaintiff is the owner and holder of the judgment."

69. If Legal Servicing sold the default judgment to Resolution Management in June of 2010, then Legal Servicing could not be the owner and holder of the default judgment, and further lacked the legal authority to file a complaint for Judgment lien renewal on June 11, 2015.

70. On June 27, 2015 Emmad Gabbar of North American Process Serving, LLC, served Lewis
via service upon Katherine Doe with the summons and complaint for judgment lien renewal
at 4818 Wilder Avenue, Bronx, New York, but the affidavit of service failed to list the floor
number that the summons and complaint was served.

**Exhibit S**. Affidavit of service upon Lewis via service upon Katherine Doe at 4818
Wilder Avenue, Bronx, New York.

71. On February 25, 2016 the Supreme Court entered an order granting Legal Servicing LLC, a
default judgment lien renewal in the amount of $31,007.85.

**Exhibit T**. Judgment and judgment lien renewal entered against Lewis on February 25, 2016.

72. On November 16, 2017 Annemarie Steward filed a Petition seeking to auction Lewis
property in the Bronx County Supreme Court with index No. 31007/2017E.

**Exhibit U**. Petition filed by Annemarie Steward seeking to auction Lewis property.

73. Paragraph No. 8-9 of the Petition states, "That upon information and belief, such real
property is improved by a single family residence, which upon information and belief, is not
the respondent's homestead and therefore respondent is not entitled to the exemption set
forth in CPLR Section 5206 (e). That the Petitioner is entitled to a sale of the respondent's
interest in the real property known as 9875 Ward Road, Wayland, New York 14572. See,
Kolb vs. Anisis, 104 A.D. 2d 399 (2nd Dept. 1984)."

74. After Lewis found out that Legal Servicing got a default judgment and sought an order to auction the property, Lewis filed a motion to vacate the default judgment, judgment lien renewal, and dismissal for misrepresentation, fraud and lack of jurisdiction on October 1, 2018.

75. Annemarie Steward filed an affirmation in opposition on October 16, 2018 which states in paragraph No. 13, "In the 2015 action entitled Legal Servicing, LLC vs. Bernard Lewis commenced in the Bronx County Supreme Court under index number 23210/2015E, the defendant was served in accordance with Section 308 (2) of the New York Civil Practice Law and Rules. CPLR 308 (2) states, inter alia, that:

Personal service on a natural person shall be made by any of the following methods: by delivering the summons within the State to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence, or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential"... such delivery and mailing to be effected within twenty days of each other. In that case, pursuant to the affidavit of service, the process server delivered the summons and complaint to the defendant's co-tenant, Katherine "Doe", a person of suitable age and discretion, residing at the defendant's residence, at 4818 Wilder Avenue, Bronx, New York 10470 on June 27, 2015."

**Exhibit V.** Affirmation in opposition to Lewis motion to vacate default judgment, judgment lien renewal and dismissal for misrepresentation, fraud and lack of jurisdiction.

76. Paragraph No. 27 of Annemarie Steward affirmation in opposition states, "The respondent's statement is a complete fabrication. It is respectfully submitted that your affirmant is not, nor ever was, the owner of Legal Servicing, LLC. Your affirmant has been employed as Corporate counsel to Legal Servicing, LLC since 2007. Further, there are no public records whatsoever that would indicate that your affirmant is the Legal owner of Legal Servicing, LLC. On the contrary, annexed hereto as exhibit "D" is a current report from the Better Business Bureau dated October 9, 2018 showing Robert Van De Mark as the Managing Member of Legal Servicing, LLC. Mr. Van De Mark has been the sole owner and managing member of Legal Servicing, LLC, since the business was created in 2004. Further, the annexed report demonstrates that Legal Servicing, LLC, maintains an A+ rating with the Better Business Bureau."

77. Paragraph No. 30 of Annemarie Steward affirmation in opposition states, "Again, as stated previously, this is simply an action for an order permitting the sale of the respondent's interest in real property located at 4058 Pratt Avenue, Bronx, New York 10466. As such, its respectfully requested that any and all of the claims made by the respondent with regard to Legal Servicing, LLC's and business practices and your affirmant's practice as an attorney at law be disregarded by this Court."

78. Paragraph No. 31 of Annemarie Steward affirmation in opposition states, "With regard to the respondent's arguments pertaining to the action commenced in 2005, wherein Legal Servicing, LLC, obtained a judgment in the amount of $15, 844.06 against Bernard Lewis, your affirmant respectfully submits that the present action is separate and distinct from the action commenced in 2005."

79. Paragraph No. 32 of Annemarie Steward affirmation in opposition states, "Regardless, and for the sake of argument, it is respectfully submitted that any defenses raised by the respondent are of no consequence at this juncture since the respondent is no longer within his time of right to raise a meritorious defense to the 2005 action."

80. Paragraph No. 35 of Annemarie Steward affirmation in opposition states, "Furthermore, your affirmant respectfully submits that any alleged issues raised by the respondent pertaining service of the summons and complaint in the 2005 action are irrelevant. Pursuant to CPLR 5014 (2), "an action upon money judgment may only be maintained between the original party to the judgment where… the judgment was entered against the defendant by default for want of appearance and the summons was served other than by personal delivery to him.." As such because service of the summons and complaint in the 2015 renewal judgment action was proper and in accordance with CPLR 308 (2), no issue can be raised with regard to service in the prior 2005 action."

81. Paragraph No. 36 of Annemarie Steward affirmation in opposition states, "Accordingly, it is respectfully submitted that the arguments raised by the respondent with regard to the 2005 action are completely irrelevant to this case. Further, the claims he has raised in his opposition are completely self-serving and unsupported by any credible evidence. See, Baretta Realty Skyline Div. of Real Property Technologies, LLC vs. A + Abstract, Inc., 32 Misc. 3d 133 (App. Term, 2nd, 11th & 13th Jud. Dists.)."

82. Paragraph No. 37 of Annemarie Steward affirmation in opposition states, "However, your affirmant would like to clarify one point of contention raised by the respondent in paragraph 5 of his affidavit. Mr. Lewis states that "Court records show that the plaintiff in the case of 22189 BCV 2005 was Resolution Management LLC." The respondent provides a case

summary from the Bronx County Civil Court. Your affirmant respectfully submits that Legal Servicing, LLC assigned the judgment in the 2005 action to Resolution Management, LLC in November of 2009. An assignment of the judgment was filed with the Bronx County Civil Court on September 2, 2010."

83. Paragraph No. 38 of Annemarie Steward affirmation in opposition states, "Resolution Management, LLC then assigned the judgment in the 2005 action back to Legal Servicing, LLC on May 1, 2012. Although an assignment of judgment from Resolution Management, LLC to Legal Servicing, LLC was not recorded with the Bronx County Civil Court, said assignment must not be considered invalid. See, Law Research Serv., Inc. vs. Martin Lutz Appellate Printers, Inc., 498 F.2d 836 (2d Cir. 1974), wherein the Court held that assignments are not required "to be recorded in order to be deemed valid, and the assignee of a judgment may attempt to enforce that judgment and collect from the debtor…" As such, the respondent's arguments pertaining the plaintiff's name in the 2005 action lack any merit whatsoever."

84. Paragraph No. 39 of Annemarie Steward affirmation in opposition states, "Regardless, it must be noted that the judgment Petitioner seeks to enforce is not the judgment obtained in the 2005 action against the respondent. Rather, the Petitioner is seeking to enforce a judgment lien that was renewed and obtained against the respondent on February 25, 2016. This is clearly stated in both my Petition affirmation dated November 15, 2017 (See WHEREFORE paragraph on page 3 of Petition and WHEREFORE paragraph on page 5 affirmation."

85. Paragraph No. 40 of Steward affirmation in opposition states, "It is unequivocally clear that the respondent's motion papers are nothing more than a frivolous attempt to distract this Court from the Petitioner's undisputed entitlement to enforce its judgment."

86. Paragraph No. 41 of Steward affirmation in opposition states, "Based upon the foregoing, it is respectfully requested that the relief requested in the respondent's motion be denied in its entirety, and that the Petition of Legal Servicing, LLC be granted in its entirety."

87. The Bronx County Supreme Court denied Lewis motion to vacate the default judgment, judgment lien renewal and dismissal for misrepresentation, fraud and lack of jurisdiction.

88. On June 13, 2019 Annemarie Steward submitted a notice of settlement of order to Judge Mary Ann Brigantti of the Bronx County Supreme Court which states on page 2, first paragraph of the proposed order, "**ORDERED** that Petitioner, Legal Servicing, LLC, may issue execution against respondent's interest in the real property located at 4058 Pratt Avenue, Bronx, New York, 10466; and it is further **ORDERED** that the Bronx County Sherriff be directed to conduct a sale of real property located at 4058 Pratt Avenue, Bronx, New York, 10466."

**Exhibit W**. Notice of settlement for order permitting execution on real property.

89. As a result of the defendants conduct, plaintiff has been damaged and is entitled to relief.

## IV.      FIRST COUNT-JUDICIARY LAW § 487 (1)

### (As to Annemarie Steward, Rodney Giove & Mark Stein)

90. Plaintiff incorporates all other paragraphs in this complaint by reference as though fully rewritten herein.

91. Rodney Giove with an address of 2801 Wehrle Drive, Suite 5, Williamsville, New York filed a complaint against Lewis dated April 26, 2005 in the Bronx County Civil Court in the case of Legal Servicing LLC, Successor in interest to Chase Manhattan Bank v. Bernard Lewis with case No. 0022189/2005.

92. The process server Robert Crandall served Lewis via service upon Jane Doe, co- tenant at 4058 Pratt Avenue, Bronx, New York on May 5, 2005 and the affidavit of service was notarized by William Singler, the owner of American Legal Process, Inc.

93. In April of 2009 the New York State attorney General filed a Felony Complaint against William Singler and his Company ZMOD Process Corporation, Inc., dba American Legal Process, Inc., for criminal possession of a forged instrument in the second degree, offering a false instrument for filing in the first degree, Scheme to defraud in the second degree, and Notary fraud in violation of § 190.65 (1) (a) of the Executive Law of the State of New York.

94. On April 14, 2009 Willian Singler was arrested for failing to provide proper Legal notification to thousands of New Yorkers facing debt-related lawsuits, causing them unknowingly to default and have costly judgments entered against them without the chance to respond or defend themselves.

95. On January 15, 2010 the New York State attorney General issued a press release stating that William Singler, owner of Long Island based American Legal Process, pled guilty to a

scheme to defraud for failing to provide proper legal notification to thousands of New Yorkers facing primarily debt related lawsuits.

96. On July 9, 2009 the Honorable Ann PFAU executed a Verified Petition, in the matter of the Petition of Honorable Ann PFAU, Chief administrative Judge of the New York State Unified Court System v. Forster & Garbus et al; in the Erie County Supreme Court with index No. 2009-8236 which states in paragraph No. 9, "Respondent Rodney A. Giove represents plaintiffs in debt collection actions and proceedings, including greater Niagara Holdings, LLC, and used American Legal Process to serve process, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process."

97. Paragraphs 12 and 13 of the Honorable Ann PFAU Verified Petition states, "From 2004 to date, respondents each have used American Legal Process to serve process on at least 100 occasions. Petitioner seeks an order and judgment, inter alia, ordering respondents to identity those actions and proceedings for which they obtained default judgments on behalf of their clients where American Legal Process served process, and vacating those default judgments upon such terms as may be just unless respondents establish at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3."

98. On July 21, 2009 the Honorable Timothy J. Drury of the Erie County Supreme Court signed an order to show cause submitted by the Honorable Ann PFAU which states in paragraph No. 1-5;"

   a. Ordering respondents to identify those actions and proceedings commenced in the judicial districts of New York (i) in which they appeared, as a party and/or counsel, and

(ii) for which American Legal Process, served the summons and complaint, or the notice of Petition or order to show cause and Petition, and (iii) for which a default judgment was taken, or for which an application for a default judgment is pending (referred to herein as "identified actions and proceedings");

b.  Ordering respondents to notify the parties to the identified actions and proceedings ("interested parties") by first class mail to the last known residence, or actual place of business, using the notice form annexed as exhibit N to the motion papers, of the pendency of this special proceeding, and of their right to be heard;

c.  Requiring the respondents to file with the Court a scheduled of interested parties to which they sent the notice, including (i) the date each notice was sent, (ii) the name and address to which the notice was sent, (iii) the amount of the default judgment, (iv) the amount paid by the judgment-debtor after the default judgment was entered, if any;

d.  Providing interested parties with an opportunity to be heard herein;

e.  Vacating and setting aside default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a default judgment, unless the party seeking to obtain or enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3;"

99. Instead of complying with Judge Drury's July 21, 2009 order, Rodney Giove transferred Lewis case to an attorney in his office by the name of Annemarie Steward.

100.   Steward then assigned the default judgment to Resolution Management, LLC, which operates from a Post Office Box in Rochester New York with intent to circumvent Judge Drury's order, and Mark Stein represented Resolution Management LLC, in the sham sale.

101. On June 11, 2015 Annemarie Steward sued Lewis in the Bronx County Supreme Court for a judgment lien renewal using plaintiff's address of 4818 Wilder Avenue, Bronx, New York and instructed North American Process serving to serve the summons and complaint upon Lewis at 4818 Wilder Avenue, Bronx, New York.

102. Annemarie Steward got a default judgment and judgment lien renewal on February 25, 2016 for $31, 007.85.

103. On November 16, 2017 Annemarie Steward filed a Petition seeking an order to auction plaintiff's property to satisfy the default judgment.

104. After plaintiff found out that Legal Servicing got a default judgment and sought an order to auction plaintiff's property, Lewis filed a motion to vacate the default judgment and judgment lien renewal.

105. On October 16, 2018 Annemarie Steward filed an affirmation in opposition which states in paragraph No. 37, "However, your affirmant would like to clarify one point of contention raised by the respondent in paragraph 5 of his affidavit. Mr. Lewis states that "Court records show that the plaintiff in the case of 22189 BCV 2005 was Resolution Management LLC." The respondent provides a case summary from the Bronx County Civil Court. Your affirmant respectfully submits that Legal Servicing, LLC assigned the judgment in the 2005 action to Resolution Management, LLC in November of 2009. An assignment of the judgment was filed with the Bronx County Civil Court on September 2, 2010."

106. However, Steward statements are false because the assignment of judgment and substitution of attorney was filed with the Bronx County Civil Court on September 2, 2010, and the agreement is dated June 23, 2010, but was notarized on June 24, 2010.

107. Paragraph No. 38 of Annemarie Steward affirmation in opposition states, "Resolution Management, LLC then assigned the judgment in the 2005 action back to Legal Servicing, LLC on May 1, 2012. Although an assignment of judgment from Resolution Management, LLC to Legal Servicing, LLC was not recorded with the Bronx County Civil Court, said assignment must not be considered invalid. See, Law Research Serv., Inc. vs. Martin Lutz Appellate Printers, Inc., 498 F.2d 836 (2d Cir. 1974), wherein the Court held that assignments are not required "to be recorded in order to be deemed valid, and the assignee of a judgment may attempt to enforce that judgment and collect from the debtor…" As such, the respondent's arguments pertaining the plaintiff's name in the 2005 action lack any merit whatsoever."

108. Because Steward made misrepresentations and fraudulent representations to the Bronx County Supreme Court with intent to deceive, the Court denied Lewis motion for relief.

109. Steward then submitted a notice of settlement dated June 23, 2019 for an order permitting Execution on real property, seeking an order directing the Bronx County Sherriff to conduct a sale of the real property located at 4058 Pratt Avenue, Bronx, New York.

110. Rodney Giove knew that the order signed by Judge Drury on July 21, 2009 required him to identity the actions and proceedings in which American Legal Process served the summons and complaint, notify the parties identified in the action by first class mail and to vacate and set aside all default judgments taken in the identified actions and proceedings.

111. But Giove engaged in deceit when he transferred plaintiff's file to an attorney in his office by the name of Annemarie Steward, with intent to circumvent the July 21, 2009 order signed by Judge Drury of the Erie County Supreme Court.

112.  Annemarie Steward engaged in deceit with Mark Stein on June 23, 2010 by executing an assignment of judgment and substitution of attorney with intent to circumvent Judge Drury's July 21, 2009 order.

113.  Mark Stein engaged in deceit, in order to circumvent the July 21, 2009 order signed by Judge Drury and knew that the assignment of judgment to his client was a sham because his client Resolution Management, LLC's business address is P.O. Box 25776, Rochester, New York 14625 and no legitimate entity can conduct business from a Post Office Box in Rochester New York.

114.  Annemarie Steward engaged in deceit on June 11, 2015 when Steward filed a complaint for judgment lien renewal in the Bronx County Supreme Court, instead of the Bronx County Civil Court where the default judgment was assigned to Resolution Management, LLC, with intent to deceive in violation of New York Judiciary Law § 487 (1).

115.  Judiciary Law § 487 provides, in pertinent part: an attorney or counselor who: (1) is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent as to deceive the Court or any party, is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal of law, he forfeits to the party injured treble damages, to be recovered in a civil action.

116.  Annemarie Steward engaged in deceit on October 16, 2018 when Steward filed an affirmation in opposition to Lewis motion to vacate default judgment, judgment lien renewal and dismissal for misrepresentation, fraud and lack of jurisdiction and states in paragraph No. 38, "Resolution Management, LLC, then assigned the judgment in the 2005 action back to Legal Servicing, LLC on May 1, 2012. Although an assignment of judgment

from Resolution Management, LLC to Legal Servicing, LLC was not recorded with the Bronx County Civil Court, said assignment must not be considered invalid."

117.  By engaging in deceit from 2009 to present, Rodney Giove, Annemarie Steward and Mark Stein intent was to block the default judgment entered against Lewis from being vacated in violation of Judge Drury July 21, 2009 order, with intent to steal Lewis property by making misrepresentations and false representations to the Bronx County Supreme Court.

118.  Plaintiff has suffered irreparable damages because of the actions of the defendants, and Annemarie Steward, Rodney Giove, and Mark Stein are liable for deceit, or consent to deceit with intent to deceive the Court, or a party within the meaning of Section 487, and are liable to plaintiff for treble damages.

### SECOND COUNT-NEGLIGENCE

(As to Annemarie Steward, Robert Van De Mark, Rodney Giove,

Mark Stein, JP Morgan Chase Bank & Erin Capital Management)

119.  Plaintiff incorporates all other paragraphs in this complaint by reference as though fully rewritten herein.

120.  JP Morgan Chase Bank was negligent when it sold the same zombie debt to multiple third party debt buyers which include accounts that were inaccurate, or in some way not collectable.

121. Erin Capital Management was negligent when it purchased zombie debts from Chase Manhattan Bank, failed to conduct its own due diligence, sued plaintiff, engaged in sewer service and got a default judgment against Lewis in the Bronx County Civil Court.

122. In knowingly making a punishable written false statement which is a verification and affidavit of merit dated April 26, 2005 attached to the verified complaint executed by Rodney Giove, Robert Van De Mark was negligent because he failed to conduct his own due diligence when he allegedly purchased zombie debts from Chase Manhattan Bank, as Chase Manhattan Bank was dissolved on January 4, 1993 according to the New York State Department of State, Division of Corporations record and his affidavit failed to indicate the date of the alleged sale.

123. New York Penal Law § 210.45 states, a person is guilty of making a punishable false written statement when he knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing a legally authorized form notice to the effect that false statements made therein are punishable. See People v Ackerman, 989 N.Y.S. 2d 268 (N.Y. Sup. Ct., 2014); People v Shutter, 2010 NY Slip Op 02281 (N.Y. App. Div. 4/8/2010); People v Lowin, 71 A.D. 3d 1194 (N.Y. App. Div., 2010).

124. Rodney Giove was negligent when he transferred plaintiff's file to Annemarie Steward, with intent to circumvent the order entered on July 21, 2009 by Judge Drury which directed Giove to identify those actions and proceedings in which American Legal Process served the summons and complaint, notify the parties to the identified actions and proceedings by first class mail to the last known residence, and vacating and setting aside all default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a default judgment, unless the party seeking to obtain or

enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3.

125.   That on or about June 23, 2010 Annemarie Steward provided Rodney Giove with the means to commit such crime, and that, Steward was rendering aid to Giove to do so when Giove transferred plaintiff's file to Steward, with intent to circumvent the July 21, 2009 order signed by Judge Drury.

126.   That the defendant did so believing both: that Rodney Giove intended to commit such crime, and that, Annemarie Steward was rendering aid to Rodney Giove to do so.

127.   That the defendant's conduct in fact aided Rodney Giove to commit fraud upon the Court and the felony of criminal facilitation with intent to circumvent Judge Drury July 21, 2009 order.

128.   By representing a sham entity called Resolution Management, LLC which conducts business from a Post Office Box in Rochester New York with intent to circumvent Judge Drury July 21, 2009 order, Mark Stein was professionally negligent.

129.   That on or about June 23, 2010 Mark Stein provided Legal Servicing LLC, and its Managing member Robert Van De Mark with the means to commit such crime, and that Stein was rendering aid to Legal Servicing LLC, and its Managing member Robert Van De Mark to do so when Stein represented Resolution Management LLC, in a sham sale.

130.   The defendant did so believing both: that Legal Servicing LLC and its Managing member Robert Van De Mark intended to circumvent an order entered by Judge Drury on July 21, 2009 which required Legal Servicing to vacate the default judgment entered against Lewis

in the Bronx County Civil Court in 2005, and that he, the defendant, was rendering aid to Legal Servicing LLC, and its Managing partner, Robert Van De Mark.

131.   That the defendants' conduct in fact aided Legal Servicing LLC, and its Managing member Robert Van De Mark, to circumvent the July 21, 2009 order signed by Judge Drury, and committed the felony of fraud upon the Court and criminal facilitation in violation of New York Penal Law § 115.05 with intent to block a default judgment entered against plaintiff from being vacated.

132.   As a result of the criminal facilitation which led to negligence by the defendants, plaintiff has been damaged because of the defendants' intentional negligence.


## THIRD COUNT- FAIR DEBT COLLECTION PRACTICES ACT (15 USC 1692)

(As to Annemarie Steward, Legal Servicing LLC, Robert Van De Mark,

& Erin Capital Management, LLC)

133. ·  Plaintiff incorporates all other foregoing allegations as though fully set forth here.

134.   Defendants conduct were negligent or willful, or both, rendering them liable for attempting to collect zombie debts allegedly purchased from Chase Bank that included accounts that were inaccurate, settled, discharged in Bankruptcy, not owed, or otherwise not collectable, that are not authorized by any agreement or permitted by law, in violation of § 1692 f (1).

135.   Defendants conduct were intentional or willful or both, rendering them liable for failing to cease collection of an alleged debt, and not providing proper verification of the debt to the complaints prior to initiating lawsuits, in violation of 1692 g (b).

136. As a result of the foregoing violations, defendants are liable for actual damages, including general damages and special damages in an amount to be proven at trial, but not less than $2,000 per complaint, pursuant to 15 USC 1692 (k) a 1.

137. As a result of the foregoing violations, defendants are liable for actual damages, including general damages and special damages in an amount to be proven at trial, but not less than $1,000 per complaint, pursuant to 15 USC 1692 (k) a 2 a.

138. As a result of the foregoing violations, defendants are liable for costs and reasonable fees pursuant to 15 USC 1692 (k) a 3.

139. As a result of the foregoing violations, defendants should be enjoined from employing any of the unlawful conduct, methods, acts, or practices under the FDCPA alleged herein or proven at trial.

140. Based on the allegations above and further set forth herein, Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC, violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which was to harass, oppress, or abuse Lewis by, without limitation; continuing to pursue collection of disputed and unverified debt; and filing suit on invalid debt, forcing plaintiff to defend against invalid actions, and further, and in addition thereto, knew or should have known that they have engaged in such conduct, and the said consequences thereof.

141. Upon information and belief, Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC, communicated credit information to persons, including but not limited to credit reporting bureaus or agencies, with respect to plaintiff, which they knew or should have known to be false- including without limitation allegations

that plaintiff owes said debts to Legal Servicing LLC, and Erin Capital Management LLC, and that Chase Bank sold the same zombie debt to both collection agencies.

142.    Upon information and belief, Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC, have, in violation of 15 U.S.C. § 1692 e (8) failed to communicate to plaintiff, other persons and entities, including credit bureaus, and persons yet to be determined, that plaintiff disputes the alleged debt that Chase sold to both Legal Servicing LLC, and Erin Capital Management, LLC.

143.    By falsely representing that Legal Servicing LLC, and Erin Capital Management LLC, are either assignees of an original creditor, and/or that said assignments constitutes proper, competent, or valid assignments between Chase Manhattan Bank & Legal Servicing LLC, and Chase Manhattan Bank & Erin Capital Management LLC, and the original creditor of any alleged debt by any alleged original creditor to Legal Servicing LLC & Erin Capital Management LLC, and that Chase Manhattan Bank is the original creditor, Legal Servicing LLC & Erin Capital Management LLC, made material, false and misleading representations, and have further communicated to plaintiff and other persons credit information which is known or which should be known to be false, including the above, the failure to communicate that a disputed debt is disputed, the "re-aging" of said debt, the false and misleading representation and impression that Chase Manhattan Bank which was exist when it was dissolved on January 4, 1993 and is the original creditor of said debt, and other material false and misleading representations violated 15 U.S.C. § 1692 e, 15 U.S.C 1692e(2) (A), § 1692e(5), § 1692e (10) and § 1692f. Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC, either knew, or should have known all of the above.

144.   By reporting the accounts sued on to credit bureaus with misleading information regarding the nature and/or status of said alleged debt with respect to such matters as the identity of the original creditor, the relevant dates and ages of said alleged debt, and other matters which Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC, knew or should have known would mislead, Annemarie Steward, Legal Servicing LLC, Robert Van De Mark, and Erin Capital Management LLC, violated 15 U.S.C. § 1692e(2)(A), 1692e(8), 1692e(10), and 1692k(a) (3).

145.   The Fair Debt Collection Practices Act, § 1692k, provides for actual damages, statutory damages up to one-thousand dollars ($1,000.00) per violation, costs of the action, and reasonable attorneys' fees. Plaintiff has suffered actual damages as the proximate and actual cause and result of the violations of the FDCPA by Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC to be determined at trial. Annemarie Steward, Legal Servicing LLC, Robert Van De Mark and Erin Capital Management LLC are liable to plaintiff for statutory damages as prescribed by § 1692k(a)(2)(A), actual damages pursuant to § 1692k(a)(1), in amount to be determined at time of trial, and costs pursuant to § 1692k(a)(3).

## FOURTH COUNT (RICO, 18 U.S.C. § 1962 (A), 1964 ET SEQ)

### (As to all Defendants)

146.   Plaintiff incorporates all other paragraphs in this complaint by reference as though fully rewritten herein.

147.   The averments of the above stated paragraphs are stated here as if fully set forth herein.

148.   Plaintiff is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

149.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961 (3).

150.   Legal Servicing LLC, and Erin Capital Management LLC, follow directions of defendant

JP Morgan Chase Bank, N.A. d/b/a Chase Bank which sold zombie debts to third party debt

collectors that included accounts that were inaccurate, settled, discharged in Bankruptcy, not

owed, or otherwise not collectable for an average of five cents on the dollar.

151.   Defendant Robert Van De Mark held out himself as the President and CEO of Legal

Servicing LLC, and Annemarie Steward alleged in her affirmation in opposition that Robert

Van De Mark is the Managing Partner and sole owner of Legal Servicing LLC, who

influences the Enterprise consisting of all other defendants.

152.   Defendants Rodney Giove, Annemarie Steward, and Mark Stein follow directions of

defendant Robert Van De Mark to file fraudulent debt collection actions, false letters, and

other false documents with Courts, and County Clerks to promote their scheme to defraud

the public and the Judiciary to fictionalize debt collection actions in the name of Parties

without standing.

153.   Defendants William Singler, Robert Crandall, and North American Process Serving LLC,

follow the directions of defendants Rodney Giove and Annemarie Steward to engage in

sewer service upon plaintiff, and Robert Crandall followed the direction of his supervisor

William Singler, who pled guilty to sewer service on January 15, 2010 according to a press

release from the New York State attorney General.

154.   Rodney Giove instructed William Singler and his employee Robert Crandall to serve

plaintiff with a complaint at 4058 Pratt Avenue, Bronx, New York in 2005, but Annemarie

Steward instructed North American Process Serving to serve plaintiff at 4818 Wilder

Avenue, Bronx, New York with a complaint for judgment lien renewal in 2015.

155.  Due process requires that before a person's property interest be adjudicated, the party be provided with notice through means reasonably calculated to provide the party with notice of pendency of the proceeding and the opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); and Beck v. Greentree Securities, Inc., 87 NY2d 566 (1996); Temple B'Nai Shalom of Great Neck v. Village of Great Neck Estates, 32 AD3d 391 (2nd Dept. 2006); lv. dnd. 8 NY3d 813 (2007); cert. dnd. 552 U.S. 1183 (2008). Lewis was denied that right and opportunity.

156.  With respect to plaintiff's claims under 18 U.S.C. § 1962(a), defendants together constitute an "Enterprise" as that term is defined in 18 U.S.C. § 1961 (4), which through defendants, were and are engaged in interstate or foreign Commerce and the activities of which affect interstate or foreign Commerce.

157.  During the class period and to date the acts lasted a substantial period of time, do last indefinitely and are pervasive as defendants intend to have them last indefinitely and to victimize tens of thousands of credit card holders, attorneys and the Judiciary by perpetuating their frauds and deceptions for profit.

158.  Defendants acting individually and/or by and through their officers and Directors, engaged in a fraudulent scheme and common plan which included using or causing the interstate wires to transfer and obtain funds from the fraudulent debt collections actions, and by so doing they engaged in multiple commissions of wire fraud involving the same and/or similar fraudulent representations to tens of thousands of consumers, violating 18 U.S.C. §§ 1341 and 1343, and 15 U.S.C. §§ 45 and 52.

159.  This conduct constitutes predicate acts of Racketeering activity within the meaning of 18 U.S.C. § 1961 (1). All such instances were related in their common objective, or repeated on

multiple occasions during the class period, and are capable of further repetition, as a result of which they constitute a pattern of Racketeering activity.

160.   Defendants and their respective agents have used or invested income derived from this pattern of Racketeering activity in the Enterprise in violation of 18 U.S.C. § 1962(a), including use of the proceeds of their Racketeering activity to further their scheme.

161.   Plaintiff suffered injury and financial damages, by reason of defendants' use for Investment of income derived from their pattern of Racketeering and the Enterprise, which used or invested enabled the Enterprise to continue its operations, and paid for defendants' perpetuation of their fraudulent activities, as a result of which plaintiff have been deceived to believe that he was liable for the zombie debts, when the documents used to collect the zombie debts were unlawful.

162.   Defendants Annemarie Steward, Legal Servicing LLC, Robert Van De Mark, North American Process Serving LLC, Rodney Giove, Robert Crandall, William Singler, Resolution Management LLC, Mark Stein, JP Morgan Chase Bank, N.A., and Erin Capital Management LLC, were the actual and proximate cause of Mr. Plaintiff's injuries and each are liable under this count.

## **PRAYER FOR RELIEF**

By reason of the deceit, or consent by the defendants, Negligence, violations of the Fair Debt Collection Practices Act, and Racketeering activities designed to steal Lewis property by assigning the default judgment from Legal Servicing to Resolution Management in violation of the July 21, 2009 order entered by Judge Drury, and by making misrepresentations and false representations to the Bronx County Supreme Court, plaintiff respectfully prays that the Court;

A. Award plaintiff an amount of $96,000.00, trebled pursuant to Section 487.

B. Award plaintiff for his past credit damages and future credit damages because both Legal Servicing LLC, and Erin Capital Management LLC, reported erroneous information to the credit Bureaus, and further filed defective default judgments with the Bronx County Clerk based upon the same zombie debt, after engaging in sewer service.

C. Issue an order requiring Legal Servicing and Erin Capital Management LLC, to vacate the default judgments entered against Bernard Lewis in the Bronx County Clerk records.

D. Issue an order directing Rodney Giove to comply with Judge Timothy Drury July 21, 2009 order which required Giove to identify those actions and proceedings in which American Legal Process served the summons and complaint; Notify the parties to the identified actions and proceedings by first class mail to the last known residence, file with the respective Courts a schedule of interested parties to which the notice was sent, including the date each notice was sent, the name and address to which the notice was sent; and vacating and setting aside default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a default judgment, unless the party seeking to obtain or enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3.

E. Issue an immediate injunction prohibiting Legal Servicing LLC, its Managing member Robert Van De Mark, and its current attorney Annemarie Steward from auctioning the property located at 4058 Pratt Avenue, Bronx, New York 10466.

F. Refer Rodney Giove, Annemarie Steward and Mark Stein to the Bar association for misconduct and intent to deceive in violation of New York Judiciary Law § 487 (1).

## JURY TRIAL DEMANDED

Plaintiff hereby request a trial by Jury on all triable issues, pursuant to Fed. R. Civ. P. 38 (b).

Dated: August 29, 2019

Respectfully Submitted

Bernard Lewis

Pro Se Plaintiff

4818 Wilder Avenue

Bronx, NY 10470

347-846-6643

BLE4058@yahoo.com

## STATEMENT OF VERIFICATION

I have read the above complaint and it is correct to the best of my knowledge.

BERNARD LEWIS

Pro Se Plaintiff

# EXHIBIT A

CONFORMED COPY

1   KAMALA D. HARRIS
    Attorney General of California
2   FRANCES T. GRUNDER
    Senior Assistant Attorney General
3   MICHELE VAN GELDEREN
    Supervising Deputy Attorney General
4   WILLIAM R. PLETCHER (SBN 212664)
    BERNARD A. ESKANDARI (SBN 244395)
5   TIMOTHY D. LUNDGREN (SBN 254596)
    Deputy Attorneys General
6       300 South Spring Street, Suite 1702
      Los Angeles, CA 90013
7       Telephone: (213) 897-2000
      Fax: (213) 897-4951
8       Email: bernard.eskandari@doj.ca.gov

9   *Attorneys for Plaintiff, the People of the State of*
    *California*

[EXEMPT FROM FILING FEES
UNDER GOVERNMENT CODE
SECTION 6103]

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 09 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

10

11         SUPERIOR COURT OF THE STATE OF CALIFORNIA

12           FOR THE COUNTY OF LOS ANGELES

13

14   THE PEOPLE OF THE STATE OF       Case No.   **B C 5 0 8 4 6 6**
15   CALIFORNIA,

16               Plaintiff,   **COMPLAINT FOR PERMANENT**
17         v.   **INJUNCTION, CIVIL PENALTIES,**
                  **RESTITUTION, AND OTHER**
18   JPMORGAN CHASE & CO., a Delaware   **EQUITABLE RELIEF**
    Corporation; CHASE BANK USA, N.A., a
19   Delaware Corporation; CHASE BANKCARD   (BUS. & PROF. CODE, § 17200 et seq.)
    SERVICES, INC., a Delaware Corporation;
20   and DOES 1 through 100, inclusive,

21              Defendants.

22                         [VERIFIED ANSWER REQUIRED
                              PURSUANT TO CODE OF CIVIL
23                              PROCEDURE SECTION 446]

24

25

26

27

28

1        Plaintiff, the People of the State of California, by and through Kamala D. Harris, Attorney

2 General of the State of California, alleges the following on information and belief:

3                                  INTRODUCTION

4    1.    Defendants have committed debt collection abuses against tens of thousands of California

5 consumers. For years, Defendants have flooded California's courts with collection lawsuits

6 against defaulted credit card borrowers based on patently insufficient evidence—betting that

7 borrowers would lack the resources or legal sophistication to call Defendants' bluff. Rather than

8 follow basic procedures to ensure fundamental fairness to California consumers, Defendants have

9 run a massive debt collection mill that abuses the California judicial process to obtain default

10 judgments, writs of execution, and wage-garnishment orders on the backs of lawsuits that cannot

11 withstand scrutiny. At nearly every stage of the collection process, Defendants have cut corners

12 in the name of speed, cost savings, and their own convenience, providing only the thinnest veneer

13 of legitimacy to their lawsuits.

14    2.    Defendants have directed their handful of in-house California lawyers to file a staggering

15 number of lawsuits against California consumers—for example, more than 100,000 lawsuits

16 between January 2008 and April 2011, an average of well over 100 lawsuits each day the courts

17 were open. Some days were more frenzied than others. For example, Defendants filed 469

18 lawsuits on April 1, 2010, and then followed it up with 226 lawsuits the next day. In addition to

19 the lawsuits filed by Defendants' in-house lawyers, outside firms retained by Defendants to assist

20 with collections filed another 20,000 cases against California consumers between January 2008

21 and April 2011.

22    3.    To maintain this breakneck pace, Defendants have employed unlawful practices as

23 shortcuts to obtain judgments against California consumers with speed and ease that could not

24 have been possible if Defendants had adhered to the minimum substantive and procedural

25 protections required by law. At the heart of Defendants' unlawful conduct is the rampant use of

26 "robo-signing"—a practice of signing declarations, affidavits, and other documents in mass

27 quantities, typically hundreds at a time, without any knowledge of the facts alleged in the

28 document and without regard to the truth or accuracy of those facts. Robo-signing has infected

1    all aspects of Defendants' unlawful debt collection practices—from pre-lawsuit correspondence,

2    to litigation in California courts, to affidavits provided to purchasers of Defendants' debt for

3    filing in third-party collection lawsuits against consumers.

4        4.    In this action, the People seek an order permanently enjoining Defendants from engaging

5    in these unlawful, unfair, and fraudulent practices, and request restitution to California consumers

6    as appropriate, civil penalties, and all other relief available under California law.

7    DEFENDANTS AND VENUE

8        5.    Defendant J.P. Morgan Chase & Co. (JPMC), a financial holding company, provides

9    various financial services worldwide.  JPMC is a Delaware corporation, headquartered in New

10    York, New York.  At all relevant times, JPMC has transacted and continues to transact business

11    throughout California, including Los Angeles County.

12        6.    Defendant Chase Bank USA, N.A. (Chase USA) is one of JPMC's principal bank

13    subsidiaries and its issuer of consumer credit cards.  JPMC's legal department provides in-house

14    counsel to Chase USA.  Chase USA is a Delaware corporation, headquartered in Newark,

15    Delaware.  At all relevant times, Chase USA has transacted and continues to transact business

16    throughout California, including Los Angeles County.

17        7.    Defendant Chase BankCard Services, Inc. (BankCard Services) is a subsidiary of Chase

18    USA and provides credit card services, including debt collection support, to JPMC and Chase

19    USA.  BankCard Services is a Delaware corporation, headquartered in Newark, Delaware.  At all

20    relevant times, BankCard Services has transacted and continues to transact business throughout

21    California, including Los Angeles County.

22        8.    Plaintiff is not aware of the true names and capacities of defendants sued herein as DOES

23    1 through 100, inclusive, and, therefore, sues these defendants by such fictitious names.  Each

24    fictitiously named defendant is responsible in some manner for the violations of law alleged.

25    Plaintiff will amend this Complaint to add the true names of the fictitiously named defendants

26    once they are discovered.  Whenever reference is made in this Complaint to "Defendants," such

27    reference shall include DOES 1 through 100 as well as the named defendants.

28        9.    At all relevant times, each Defendant acted individually and jointly with every other

2

1    named Defendant in committing all acts alleged in this Complaint.

2        10.    At all relevant times, each Defendant acted: (a) as a principal; (b) under express or

3    implied agency; and/or (c) with actual or ostensible authority to perform the acts alleged in this

4    Complaint on behalf of every other named Defendant.

5        11.    At all relevant times, some or all Defendants acted as the agent of the others, and all

6    Defendants acted within the scope of their agency if acting as an agent of another.

7        12.    At all relevant times, each Defendant knew or realized, or should have known or realized,

8    that the other Defendants were engaging in or planned to engage in the violations of law alleged

9    in this Complaint. Knowing or realizing that the other Defendants were engaging in such

10   unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.

11   Each Defendant intended to and did encourage, facilitate, or assist in the commission of the

12   unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

13       13.    Defendants have engaged in a conspiracy, common enterprise, and common course of

14   conduct, the purpose of which is and was to engage in the violations of law alleged in this

15   Complaint. The conspiracy, common enterprise, and common course of conduct continue to the

16   present.

17       14.    The violations of law alleged in this Complaint occurred in Los Angeles County and

18   throughout the State of California.

DEFENDANTS' BUSINESS PRACTICES

19

20       15.    Before filing a lawsuit against a California consumer on an alleged defaulted credit card

21   account, Defendants' attorneys send correspondence to the consumer demanding payment of the

22   balance allegedly due. In this correspondence to the consumer, Defendants' attorneys: (a) state

23   that they have been instructed to file suit; (b) claim that the consumer may be liable for additional

24   amounts due, including attorneys' fees "when allowed by law"; and (c) threaten to garnish the

25   consumer's income, levy personal property, and place liens on real property.

26       16.    Through each of these communications with a California consumer, Defendants commit

27   unlawful, unfair, and/or fraudulent acts or practices, including, but not limited to, the following:

28           a.    Although Defendants' correspondence is signed by an attorney, no attorney has

3

1    exercised any independent legal judgment in sending the correspondence, and no attorney has

2    even reviewed the consumer's file to determine if the letter is accurate, including accuracy as to

3    the claimed amount due.

4        b.    The amounts claimed are often inaccurate.

5        c.    Despite their threat to the contrary, Defendants do not recover attorneys' fees from

6    the consumer.

7        d.    Despite their threat to the contrary, Defendants do not place liens on the

8    consumer's real property.

9    17.  When Defendants file a lawsuit against a California consumer, Defendants commit

10   additional unlawful, unfair, and/or fraudulent acts or practices, including, but not limited to, the

11   following:

12       a.    Defendants file a verification of the complaint in which the declarant states, under

13   penalty of perjury, that the declarant is an assistant treasurer and officer of Chase USA, and that

14   the matters alleged in the complaint are true.  These statements are false.  The declarant is neither

15   an "assistant treasurer" nor an "officer" of Chase USA, but rather a low-level employee of

16   BankCard Services who has never even seen the complaint.  The declarant has no personal

17   knowledge about whether or not the complaint's allegations are true—for example, that venue is

18   proper, that the consumer owes the amount claimed, or that the consumer's contract with

19   Defendants provides for the recovery of reasonable attorneys' fees.

20       b.    Defendants do not properly serve consumers with the summons and complaint,

21   despite filing proofs of service that declare under penalty of perjury that service was complete.

22   For example, Defendants, through their agents for service of process, falsely state in proofs of

23   service that the consumer was personally served, when, in fact, he or she was not served at all—a

24   practice known as "sewer service."  Other times, Defendants falsely state in proofs of service that

25   substitute service was properly effected, even though Defendants made no reasonable attempts to

26   personally serve the consumer.  In any event, to more quickly generate seemingly legitimate

27   process-server returns, Defendants often file proofs of service that bear only a digitally applied

28   facsimile of the declarant's signature, instead of the declarant's original, "wet-ink" signature, as

1    required for documents signed under penalty of perjury.

2        18.    If the consumer does not appear to defend the lawsuit—which happens in the majority of

3    the cases—Defendants engage in unlawful, unfair, and/or fraudulent acts or practices to obtain a

4    default judgment.  These acts and practices include, but are not limited to, the following:

5            a.    Defendants file a declaration in support of the entry of default judgment in which

6    the declarant states, under penalty of perjury, that the declarant is an officer of Chase USA and a

7    custodian of Chase USA's business books and records, and that he or she has personal knowledge

8    of the facts supporting the entry of default.  These statements are false.  The declarant is not an

9    officer of Chase USA but rather a low-level employee of BankCard Services (often the same

10   purported officer who signed the complaint verification), who has no personal knowledge of the

11   facts set forth in the declaration.  For example, the declarant has no personal knowledge of the

12   balance that he or she states is owed by the consumer and has not reviewed the books and records

13   necessary to determine the amount owed.

14           b.    In these same declarations in support of the entry of default judgment, the

15   declarant states that Defendants will not produce the purported contract with the consumer and so

16   waive the claim for attorneys' fees allegedly authorized by the contract.  This is despite the threat

17   previously made to the California consumer in pre-lawsuit correspondence that Defendants may

18   claim reasonable attorneys' fees.

19           c.    In requesting entry of default judgment, Defendants' attorneys declare under

20   penalty of perjury that the debtor against whom a default judgment is requested is not in the

21   military service.  In fact, Defendants have made no inquiry and have no personal knowledge

22   about whether or not the debtor is a service member and thus entitled to certain benefits under

23   California Military and Veterans Code section 400 et seq.  One of these benefits, for example, is

24   that a court may not enter a default judgment against a defendant in the military service until an

25   attorney is appointed to represent him or her.

26           d.    As an attachment to the declaration in support of the entry of default judgment, the

27   declarant attaches one of the consumer's credit card statements, but rarely redacts the consumer's

28   private information protected under California law, such as the consumer's credit card account

5

1  number.

2  19.  After securing the default judgment through unlawful, unfair, and/or fraudulent acts or

3  practices, Defendants:  (a) obtain a writ of execution and other court orders to take the

4  consumer's personal property; including wages and bank accounts, to satisfy the default

5  judgment; and (b) submit negative credit information concerning the default judgment against the

6  consumer to consumer credit reporting agencies.

7  20.  Defendants also engage in unlawful, unfair, and/or fraudulent acts or practices when

8  providing affidavits to third parties who purchase Defendants' defaulted credit card accounts.  For

9  example, in support of these third parties' collection actions, Defendants provide affidavits to the

10  third parties in which the affiant states that Defendants sold the consumer's account to the third

11  party and that the consumer owes the amount stated in the affidavit.  In fact, the affiant does not

12  review Defendants' books and records in a manner sufficient to support the facts to which he or

13  she attests, does not have personal knowledge of the facts, and does not set forth those facts with

14  particularity.  Moreover, the affiant is not administered an oath prior to signing the affidavit, and

15  no notary public is present to witness the signing.

16              FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

17        VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200

18                        (Unfair Competition Law)

19  21.  Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 20,

20  inclusive, as through set forth here in full.

21  22.  Defendants have engaged in, and continue to engage in, acts or practices that constitute

22  unfair competition as defined in Business and Professions Code section 17200.  These acts or

23  practices include, but are not limited to, the following:

24        a.        Violating Civil Code section 1788.13, part of the Rosenthal Fair Debt Collection

25  Practices Act, Civil Code section 1788 et seq. (Rosenthal Act), by making misrepresentations and

26  engaging in unlawful practices in connection with the collection of a debt, as alleged in

27  Paragraphs 15 through 20;

28        b.        Violating Civil Code section 1788.17, part of the Rosenthal Act, by using false,

1   deceptive, or misleading representations or means in connection with the collection of a debt, as

2   alleged in Paragraphs 15 through 20;

3        c.    Violating Business and Professions Code section 6077.5, subdivision (a), by

4   making misrepresentations and engaging in unlawful practices in connection with the collection

5   of a debt; and by using false, deceptive, or misleading representations or means in connection

6   with the collection of a debt, as alleged in Paragraphs 15 through 20;

7        d.    Violating Code of Civil Procedure sections 396a and 446, subdivision (a), by

8   failing to properly verify complaints, as alleged in Paragraph 17;

9        e.    Violating Code of Civil Procedure section 1010.6, subdivision (b)(2)(B), by

10  electronically filing proofs of service of summons, "signed" under penalty of perjury, that were

11  never actually "wet-ink" signed by the declarant but bear only his or her facsimile signature, and

12  for which no printed form of the document is maintained bearing an original signature, as alleged

13  in Paragraph 17;

14       f.    Violating Code of Civil Procedure section 585 in obtaining default judgments by

15  offering declarations containing facts that are not within the personal knowledge of the declarant

16  and that are not set forth with particularity, as alleged in Paragraph 18;

17       g.    Violating California Rules of Court, rule 1.20, by filing documents without

18  redacting all but the last four digits of the consumer's financial account number, as alleged in

19  Paragraph 18;

20       h.    Declaring under penalty of perjury that no defendant was in the military service so

21  as to be entitled to the benefits of California Military and Veterans Code section 400 et seq., when

22  in fact Defendants have no knowledge of and make no inquiry into the defendant's military

23  status, as alleged in Paragraph 18; and

24       i.    Violating Penal Code section 118 et seq., by committing or suborning perjury, as

25  alleged in Paragraphs 15 through 20.

26  23.    Defendants' conduct was in continuing violation of the Unfair Competition Law,

27  beginning at a time unknown to Plaintiff but no later than January 2008, and continuing to within

28  four years of the filing of this Complaint.

7

## PRAYER FOR RELIEF

WHEREFORE, the People pray for judgment as follows:

1.     That Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from engaging in unfair competition as defined in Business and Professions Code section 17200, including, but not limited to, the acts and practices alleged in this Complaint, under the authority of Business and Professions Code section 17203;

2.     That the Court make such orders or judgments as may be necessary to prevent the use or employment by any Defendant of any practice that constitutes unfair competition or as may be necessary to restore to any person in interest any money or property that may have been acquired by means of such unfair competition, under the authority of Business and Professions Code section 17203;

3.     That the Court assess a civil penalty of $2,500 against each Defendant for each violation of Business and Professions Code section 17200 in an amount according to proof, under the authority of Business and Professions Code section 17206;

4.     In addition to any penalty assessed under Business and Professions Code section 17206, that the Court assess a civil penalty of $2,500 against each Defendant for each violation of Business and Professions Code section 17200 perpetrated against a senior citizen or disabled person, in an amount according to proof, under the authority of Business and Professions Code section 17206.1;

5.     That the People recover their costs of suit; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

1   6.    For such other and further relief that the Court deems just and proper.

2

3   Dated: May 9, 2013                          Respectfully Submitted,

4                                               KAMALA D. HARRIS
                                                Attorney General of California
5                                               FRANCES T. GRUNDER
                                                Senior Assistant Attorney General
6                                               MICHELE VAN GELDEREN
                                                Supervising Deputy Attorney General
7

8

9

10                                              BERNARD A. ESKANDARI
                                                Deputy Attorney General
11                                              *Attorneys for Plaintiff, the People of the*
                                                *State of California*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
People v. JPMorgan Chase & Co., et al.

# EXHIBIT B



1  KAMALA D. HARRIS
   Attorney General of California
2  MARK J. BRECKLER
   Chief Assistant Attorney General
3  NICKLAS A. AKERS
   Senior Assistant Attorney General
4  DANIEL A. OLIVAS
   MICHELE VAN GELDEREN
5  Supervising Deputy Attorneys General
   AMOS E. HARTSTON (SBN 186471)
6  WILLIAM R. PLETCHER (SBN 212664)
   BERNARD A. ESKANDARI (SBN 244395)
7  TIMOTHY D. LUNDGREN (SBN 254596)
   Deputy Attorneys General
8    300 South Spring Street, Suite 1702
   Los Angeles, CA  90013
9  Telephone: (213) 897-2652
   Fax:  (213) 897-4951
10 Email: bernard.eskandari@doj.ca.gov

11 Attorneys for Plaintiff
   The People of the State of California

12

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT
CODE SECTION 6103

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 03 2015

Sherri R. Carter, Executive Officer/Clerk
By: Benigno Del Barrio, Deputy

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                        **COUNTY OF LOS ANGELES**

15

16  THE PEOPLE OF THE STATE OF          Case No. BC508466
17  CALIFORNIA,

18                          Plaintiff,   **STIPULATION FOR ENTRY
19          v.                           OF JUDGMENT**

20  JPMORGAN CHASE & CO., a Delaware
    Corporation; CHASE BANK USA, N.A., a
21  Delaware Corporation; CHASE BANKCARD
    SERVICES, INC., a Delaware Corporation;
22  and DOES 1 through 100, inclusive,

23                          Defendants.

24

25

26

27

28

RECEIVED
NOV 02 2015
Dept. 308



Plaintiff, the People of the State of California ("People" or "Plaintiff"), appearing through its attorney, Kamala D. Harris, Attorney General of the State of California, by Deputy Attorney General Amos E. Hartston, and defendants JPMorgan Chase & Co., Chase Bank USA, N.A., and Chase BankCard Services, Inc. (collectively, "Defendants"), appearing through their attorneys, David L. Schrader of Morgan, Lewis & Bockius LLP, and Noah A. Levine of Wilmer Cutler Pickering Hale and Dorr LLP, stipulate as follows:

1.     This Court has jurisdiction of the subject matter hereof and the parties to this Stipulation for Entry of Judgment ("Stipulation").

2.     The Judgment ("Judgment"), a true and correct copy of which is attached hereto as Exhibit 1, may be entered by Department 308 of the Los Angeles County Superior Court. Counsel for Plaintiff will submit the Judgment to Department 308 of this Court, for approval and signature, based on this Stipulation, during the court's ex parte calendar or on any other ex parte basis.

3.     Plaintiff and Defendants (collectively, "the Parties") hereby waive their right to move to set aside the Judgment through any collateral attack, and further waive their right to appeal from the Judgment attached hereto as Exhibit 1, except that the Parties each agree that Department 308 shall retain jurisdiction for the purposes specified in Paragraph 79 of the Judgment. Nothing herein shall waive any right to appeal from any decision in connection with a future effort to enforce the Judgment.

4.     The Parties have stipulated and consented to the entry of the Judgment without the taking of proof and without trial or adjudication of any fact or law herein, without the Judgment constituting evidence of or an admission by Defendants regarding any issue of law or fact alleged in the Complaint on file herein, and without Defendants admitting any liability regarding allegations of violations that occurred prior to the entry of the Judgment.

5.     Defendants will accept service of any Notice of Entry of Judgment entered in this action by delivery of such notice to David L. Schrader, Morgan, Lewis & Bockius, 300 South Grand Avenue, 22nd Floor, Los Angeles, CA 90071, and to Julie Lepri, JP Morgan Chase & Co.,

1

 

1    10 S. Dearborn St. IL 1-0075, Chicago, IL 60603, and agrees that service of the Notice of Entry

2    of Judgment will be deemed personal service upon it.

3        6.    The individuals signing below represent that they have been authorized by the

4    parties they represent to sign this Stipulation.

5        7.    This Stipulation may be executed in counterparts, and the Parties agree that a

6    facsimile signature shall be deemed to be, and shall have the full force and effect as, an original

7    signature.

8    Dated: 10/29/2015                        KAMALA D. HARRIS
                                              Attorney General of California
9

10

11                                           BY: AMOS E. HARTSTON
                                                 Deputy Attorney General
12

13    Dated: _____            MORGAN, LEWIS & BOCKIUS LLP

14

15                                           BY:  DAVID L. SCHRADER
                                                  Attorneys for Defendants
16                                                JPMorgan Chase & Co., Chase Bank USA,
                                                  N.A., and Chase BankCard Services, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

1    10 S. Dearborn St. IL 1-0075, Chicago, IL 60603, and agrees that service of the Notice of Entry

2    of Judgment will be deemed personal service upon it.

3        6.    The individuals signing below represent that they have been authorized by the

4    parties they represent to sign this Stipulation.

5        7.    This Stipulation may be executed in counterparts, and the Parties agree that a

6    facsimile signature shall be deemed to be, and shall have the full force and effect as, an original

7    signature.

8    Dated: _____

KAMALA D. HARRIS
Attorney General of California

9

10

11    BY:   AMOS E. HARTSTON
            Deputy Attorney General

12

13    Dated: October 28, 2015

MORGAN, LEWIS & BOCKIUS LLP

14

15    BY:   DAVID L. SCHRADER
Attorneys for Defendants
16    JPMorgan Chase & Co., Chase Bank USA,
      N.A., and Chase BankCard Services, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

2

1

2    Dated: October 29, 2015                          JPMORGAN CHASE & CO.

3

4

5                                                     BY:   Gordon A. Smith
                                                           CEO – Consumer/Community Bank
6

7

8    Dated: _____                          CHASE BANK USA, N.A.

9

10                                                    BY:   Eileen M. Serra
                                                           CEO – Card Services
11

12

13   Dated: _____                          CHASE BANKCARD SERVICES, INC.
14

15

16                                                    BY:   John W. Delaney, Managing Director
                                                           JPMorgan Chase Bank, N.A.
17

18

19

20

21

22

23

24

25

26

27

28

---

1

2
Dated: _____

3

4

5

6

7

8
Dated: 10/30/2015

9

10

11

12

13
Dated: _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JPMORGAN CHASE & CO.


BY:   Gordon A. Smith
      CEO – Consumer/Community Bank


CHASE BANK USA, N.A.

Eileen M. Serra
BY:   Eileen M. Serra
      CEO – Card Services


CHASE BANKCARD SERVICES, INC.


BY:   John W. Delaney, Managing Director
      JPMorgan Chase Bank, N.A.

3

1

2    Dated: _____

3

4

5

6

7

8    Dated: _____

9

10

11

12

13    Dated: _Oct. 27, 2015_

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JPMORGAN CHASE & CO.


BY: _____
     Gordon A. Smith
     CEO – Consumer/Community Bank


CHASE BANK USA, N.A.


BY: _____
     Eileen M. Serra
     CEO – Card Services


CHASE BANKCARD SERVICES, INC.


BY: _____
     John W. Delaney, Managing Director
     JPMorgan Chase Bank, N.A.

# EXHIBIT C

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/j-p-morgan-to-settle-credit-card-probes-for-125-millionsources-1436321426

MARKETS

# J.P. Morgan to Settle Credit-Card Probes for $136 Million

Settlement also includes $50 million in restitution



The Consumer Financial Protection Bureau and several states attorneys general confirmed the settlement with J.P. Morgan Chase on Wednesday afternoon. PHOTO: SPENCER PLATT/GETTY IMAGES

*By Emily Glazer*
Updated July 8, 2015 2:39 pm ET

PRINT          TEXT                                              6 COMMENTS

J.P. Morgan Chase JPM 0.44% ▲ & Co. has agreed to pay $136 million to settle probes by state and federal authorities over its collection and sale of credit-card debt.

The settlement, the latest by regulators to crack down on credit-card and debt-collection abuses, also includes $50 million in restitution. The Wall Street Journal had reported Tuesday that the company would pay at least $125 million to settle the probes, citing people familiar with the matter.

J.P. Morgan, the Consumer Financial Protection Bureau and several states attorneys general confirmed the settlement Wednesday afternoon.

J.P. Morgan, the largest U.S. bank by assets, has been accused of relying on robosigning and other methods of collecting debt from consumers that they may not have owed and providing inaccurate information to debt buyers, an area regulators have scrutinized in

recent years at several financial-services firms.

The CFPB along with 47 states and the District of Columbia Columbia said they found that J.P. Morgan sold "zombie debts" to third-party debt buyers which include accounts that were inaccurate or in some way not collectible. The order requires J.P. Morgan to overhaul debt sales and half collections on 528,000 consumers' accounts.

The states will divvy up around $95 million, while the CFPB will receive $30 million, the people said. The Office of the Comptroller of the Currency also received a $30 million civil penalty in a related action.

"We will continue to be vigilant in taking action against deceptive debt sales and collections practices that exploit consumers," CFPB Director Richard Cordray said in a statement.

A Chase spokesman said in a statement the bank is "pleased to resolve these legacy issues and are working to complete our remediation of affected credit card customers."

Reuters reported the expected settlement with J.P. Morgan on Tuesday.

J.P. Morgan disclosed the CFPB probe in an August 2013 regulatory filing. The CFPB issued a warning earlier in 2013 to the financial industry that it would scrutinize alleged abuses in debt collection, such as falsely representing the size of debt and failing to post payments made by borrowers.

In September 2013, J.P. Morgan was ordered to refund $309 million to 2.1 million credit-card customers and pay $80 million in fines, at the time the largest penalty—$389 million—in a broad examination of products sold to credit-card customers. The bank didn't admit or deny allegations that it harmed consumers by allegedly making errors in hundreds of thousands of debt-collection lawsuits.

J.P. Morgan addressed many of the same issues raised by the CFPB and states in a consent order with the Office of the Comptroller of the Currency, also in September 2013.

Write to Emily Glazer at emily.glazer@wsj.com

Copyright © 2019 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

7/27/2019, 12:26 AM

# EXHIBIT D

# UNITED STATES OF AMERICA
# CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING

File No. 2015-CFPB-0013

In the Matter of:

CHASE BANK, USA N.A. and

CHASE BANKCARD SERVICES, INC.

**CONSENT ORDER**

The Consumer Financial Protection Bureau (Bureau) has reviewed the debt sale and collections practices of Chase Bank, USA N.A. and its subsidiary Chase BankCard Services, Inc. (Respondents, as defined below) and has found that such practices violate Sections 1036(a)(1) and (a)(3) of the Consumer Financial Protection Act (CFPA), 12 U.S.C. §§ 5536(a)(1) and (a)(3). Under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

# I

## Overview

1.   Respondents provide consumers with credit card accounts and also have acquired credit card accounts from other credit card issuers. At the end of 2012, Respondents had approximately 64.5 million open accounts with $124 billion in outstanding credit card debt.

2.   When consumers fail to pay on these accounts they are placed in default. Respondents collect on the defaulted debts through their internal collection attempts, and, during the time period relevant to this Order, by filing collection lawsuits. Respondents also collected on defaulted debts by selling defaulted accounts to third party debt buyers who collect on the accounts, or by using all three methods. From 2009 to 2012, Respondents recovered approximately $4.6 billion out of approximately $57 billion of debt from defaulted accounts using these methods.

3.   Respondents sold to debt buyers certain accounts that were inaccurate, settled, discharged in bankruptcy, not owed by the consumer, or otherwise uncollectable.  The debt buyers then sought to collect these inaccurate, settled, discharged, not owed, or otherwise uncollectable debts from consumers.

4.   Respondents filed lawsuits and obtained judgments against consumers using deceptive affidavits and other documents that were prepared without following required procedures, because for example, they were at times signing without personal knowledge of the signer, a practice commonly referred to as "robo-signing."

5.  Respondents made certain errors calculating pre- and post-judgment fees and interest when filing debt collection lawsuits, which resulted in judgments against consumers for incorrect amounts.

6.  Respondents' practices harmed consumers. Respondents subjected certain consumers to collections activity for accounts that were not theirs, in amounts that were incorrect or uncollectable. Respondents also obtained judgments against consumers using documents that were falsely sworn and that at times contained inaccurate amounts. These actions may affect consumers' ability to obtain credit, employment, housing, and insurance in the future. Respondents' practices misled consumers and courts and caused consumers to pay false or incorrect debt and incur legal expenses and court fees to defend against invalid or excessive claims.

7.  Respondents suspended Collections Litigation in 2011 and suspended all Debt sales in December 2013. Respondents state that they are not currently engaged in Collections Litigation or sales of Debt with respect to their consumer credit card business, which is the subject of this Order.

8.  The Bureau brings this action to ensure Respondents do not revive these practices, to obtain relief for injured consumers, and to impose or obtain civil money penalties.

## II

## Jurisdiction

9.  The Bureau has jurisdiction over this matter under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

## III

## Stipulation

10.   Respondents have executed a "Stipulation and Consent to the Issuance of a Consent Order," dated June 26, 2015 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondents have consented to the issuance of this Consent Order by the Bureau under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563 and 5565, without admitting or denying any of the findings of fact or conclusions of law in Sections I and V herein, except that Respondents admit the facts necessary to establish the Bureau's jurisdiction over Respondents and the subject matter of this action.

## IV

## Definitions

11.   The following definitions apply to the terms of this Consent Order:

a.   "Account" means an extension of credit to a Consumer in the United States, primarily for personal, family, or household purposes, and established or maintained for a Consumer pursuant to a credit card program.

b.   "Affiant" means any signatory to a Declaration, other than one signing solely as a notary or witness to the act of signing, signing in his or her capacity as an employee or agent of Respondents.

c.   "Charged-Off" and "Charge-Off" refer to Accounts treated by Respondents as a loss or expense because Respondents have determined that, under the Federal Financial Institutions Examination Council's Final Notice of

4

Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36903 (June 12, 2000), or other relevant guidelines, repayment of the Debt is unlikely.

d.  "Collections Litigation" means attempts by Respondents (or a third party acting on their behalf for an Account owned by Respondents) through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.  Collections Litigation does not include processes or proceedings initiated by Respondents in bankruptcy or probate matters involving a Consumer, or litigation brought by a Debt Buyer that has purchased an Account through a Debt Sale, unless specifically referenced by this Consent Order.

e.  "Competent and Reliable Evidence" shall include documents and/or records created by Respondents in the ordinary course of business, which are capable of supporting a finding that the proposition for which the evidence is offered is true and accurate, and which comport with applicable law and court rules.

f.  "Consumer" means any natural person obligated or allegedly obligated to pay any Debt. For provisions regarding communications, notices, and providing information to a Consumer, this term includes the Consumer's representative.

g.  "Consumer Reporting Agency" means, coterminous with the meaning of Consumer Reporting Agency as defined in the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f), any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the

practice of assembling or evaluating Consumer credit information or other information on consumers for the purpose of furnishing Consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing Consumer reports.

h. "Debt" means, coterminous with the meaning of "debt" as defined in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(5), any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. However, for the purposes of this Consent Order, "Debt" shall be limited to a Debt arising out of an Account issued or acquired by, or owed to Respondents, including obligations that have been sold or transferred to others, and established or maintained for a Consumer pursuant to a credit card program.

i. "Debt Buyer" means an entity that purchases from Respondents a portfolio consisting primarily of Accounts with Charged-Off Debts through a Debt Sale.

j. "Debt Sale" means a sale by Respondents of a portfolio of Accounts with Charged-Off Debts through an individual bulk sale or contractual forward-flow agreement.

k. "Declaration" means any affidavit, sworn statement, or declaration, whether made under penalty of perjury or otherwise signed by an Affiant for purposes of affirming its accuracy and veracity, submitted to a court in

6

a Collections Litigation matter by or on behalf of Respondents for the purpose of collecting a Debt, but does not include affidavits, sworn statements, or declarations signed by counsel based solely on counsel's personal knowledge and not based on a review of Respondents' books and records (such as affidavits of counsel relating to service of process, extensions of time, or fee petitions).

l. "Effective Credit Agreement" means the written document or documents evidencing the terms of the legal obligation between Respondents and the Consumer at the time of Charge-Off.

m. "Effective Date" means the date on which this Consent Order is issued.

n. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegee.

o. "Respondents" and "Chase" mean Chase Bank USA, N.A. and Chase BankCard Services, Inc. and their successors and assigns.

p. "Servicemember" means "servicemembers in military service" as defined in Section 101, Paragraph (1) of the Servicemembers Civil Relief Act, to the extent that such servicemembers in military service are identified on the Department of Defense's Defense Manpower Data Center (DMDC) database.

## V

## Bureau Findings and Conclusions

The Bureau finds the following:

12.   Respondent Chase Bank USA, N.A. is a national banking association
      headquartered in Newark, DE.

13.   Respondent Chase BankCard Services, Inc. is a Chase Bank USA, N.A.
      subsidiary incorporated in Delaware and headquartered in Newark, DE.

14.   At all times material to this Consent Order, Respondents issued, collected on,
      or sold credit card Accounts. Respondents suspended their Collections
      Litigation program in 2011 and suspended all Debt sales in December 2013.
      Respondents state that they are not currently engaged in Collections Litigation
      or sales of Debt with respect to their consumer credit card business, which is
      the subject of this Order.

15.   Respondents are "covered persons" as that term is defined by 12 U.S.C. §
      5481(6).

### Chase's Credit Card Business

16.   When Consumers fail to pay on their Accounts, Respondents use various
      methods to collect these Debts. During the time period relevant to this Order,
      Respondents made collection calls and sent collection letters to Consumers,
      obtained judgments against Consumers through Debt collection lawsuits, and
      sold defaulted Accounts to third party Debt Buyers. Respondents also created
      sworn documents used to establish their legal authority to collect delinquent
      Accounts in Collections Litigation, and provided sworn documents and other
      support services to the Debt Buyers to whom Respondents sold Accounts.
      Respondents also supplied these documents to the attorneys Respondents and
      their buyers used to file collection lawsuits against Consumers.

17.  Between 2009 and 2012, Respondents recovered approximately $4.6 billion out of approximately $57 billion of Debt from defaulted Accounts using these collection methods.

18.  When Respondents sought to collect through litigation, they referred the defaulted Accounts to a network of in-house collections attorneys as well as outside counsel. Between 2009 and 2011, Respondents, through their internal and external attorneys, filed more than 500,000 collections lawsuits against Consumers across the country.

19.  When Respondents sold defaulted Accounts to Debt Buyers, they did so at a significant discount to the face value of the Debts. On average, Respondents received 5% of the balance owed. For example, an Account where the Consumer owed $10,000 might have been sold for $500. The Debt Buyer could then seek to collect from the Consumer the full $10,000 balance plus interest, attorney's fees, and other costs of collection.

20.  From 2009 to 2013, Respondents sold approximately 5.3 million defaulted credit card Accounts, with a face value of $27.2 billion, for approximately $1.3 billion.

### Findings and Conclusions as to Respondents' Sale of Credit Card Accounts That Were Inaccurate or Unenforceable

21.  Respondents used several different databases and automated processes to track and manage their credit card Accounts. These databases contained relevant

information about the Accounts such as payment history, Account balances, and credit reporting information.

22. Respondents relied on the information contained within these databases to determine whether to sell the Accounts.

23. When Respondents sold defaulted credit card Accounts, they provided account information from these databases to the Debt Buyers. Chase typically provided an electronic sale file gathered from their databases containing information about the portfolio of Debts. Debt Buyers used the information that Respondents provided to collect these amounts from Consumers.

24. Because Respondents sometimes failed to accurately update, maintain, and reconcile the Account information in their databases before selling defaulted Accounts to Debt Buyers, the resulting Account information was not always accurate for accounts that had gone to judgment.

25. Compounding this problem, when Respondents obtained portfolios of credit card Accounts from acquired banks, they did not always receive important documentation needed to support claims that Consumers owed the Debts and owed the amount stated. On certain Accounts Respondents were unable to conform their databases with the original Account documents for Accounts that they acquired.

26. As a result of these failures, Respondents sold certain Accounts to Debt Buyers that Respondents knew or should have known were unenforceable or uncollectable. Respondents also provided erroneous and incomplete

information to Debt Buyers who Respondents knew or should have known would use this information in conducting collection activity.

27.    Respondents sold certain Accounts to Debt Buyers where Respondents knew or should have known the electronic sale file contained erroneous or missing information about the identity of the Account holder, the amount owed, whether the Account had been paid or settled, and whether Respondents' internal operations had deemed an Account to be fraudulent.

28.    Respondents also sold certain Accounts that were not enforceable or otherwise should not have been subject to collection, including:

    a.  Accounts that were settled by agreement;

    b.  Accounts that were paid in full;

    c.  Accounts that were no longer owned by Respondents when they were sold; and

    d.  Accounts that had been identified as fraudulently opened or subject to fraudulent charges or otherwise not owed by the identified debtor.

29.    Respondents also sold certain Accounts that Debt Buyers could not lawfully collect, or which were susceptible to unlawful collection practices by Debt Buyers, including:

    a.  Accounts with inaccurate amounts owed;

    b.  Accounts where Respondents knew or should have known supporting data was inaccurate or unavailable;

    c.  Accounts that were subject to litigation;

    d.  Accounts that were subject to a bankruptcy stay;

  e. Accounts that were subject to an agreed payment plan;

  f. Accounts that were pending settlement; or

  g. Accounts that had deceased debtors.

30.  Respondents' actions caused harm to certain Consumers because the Debt Buyers who purchased the Accounts demanded payment from Consumers and filed lawsuits based on invalid or inaccurate Debts, or inaccurate information provided by Chase. Consumers were thus pursued to pay amounts not owed or which were uncollectable. Consumers also could be sued and have a judgment entered against them based on documents that were falsely sworn. Further, if Debt Buyers furnished faulty information to Consumer Reporting Agencies, then the Consumers' credit files and credit reports would contain inaccurate information, which could affect these Consumers' ability to obtain credit, employment, housing, and insurance in the future.

31.  Consumers have very limited control over their Accounts in default. They cannot prevent Respondents from selling the Accounts or ensure that the Account information Respondents sell is accurate and that the Debts are enforceable. Once Respondents sold their Accounts, Consumers could not obtain documents regarding the Debt from Respondents.

*Respondents' Debt Sales Practices Were Unfair*

32.  Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause Consumers substantial injury that is not reasonably avoidable

and if the substantial injury is not outweighed by countervailing benefits to Consumers or competition.

33. Respondents' acts and practices of selling certain credit card Accounts to Debt Buyers that Respondents knew or should have known were unenforceable or selling such Accounts with inaccurate information or information inadequate to support the claims that Consumers owed the Debts and owed them in the amounts stated, caused or were likely to cause substantial injury to Consumers that was not reasonably avoidable or outweighed by any countervailing benefit to Consumers or to competition.

34. Thus, Respondents engaged in unfair acts and practices in violation of sections 1036(a)(1)(B) and 1031(c)(1) of the CFPA. 12 U.S.C. § 5536(a)(1)(B) and 5531(c)(1).

*Respondents' Debt Sales Practices Provided Substantial Assistance to Debt Buyers' Deceptive Collection Practices*

35. Section 1036(a)(3) of the CFPA prohibits "knowingly or recklessly" providing "substantial assistance" to a covered person in engaging in an unfair, deceptive or abusive act or practice. 12 U.S.C. § 5536(a)(3).

36. Respondents knew or should have known that Debt Buyers would seek to collect on certain Accounts sold by Respondents that were unenforceable, had inaccurate information, or included inadequate information to support the claims that Consumers owed the Debts and owed them in the amounts stated.

37. Respondents knew or should have known that the Debt Buyers would attempt to collect on and file lawsuits against Consumers over these Debts.

38.   Thus Respondents knowingly or recklessly provided substantial assistance to the deceptive acts and practices of a covered person or service provider in violation of section 1036(a)(3) of the CFPA, 12 U.S.C. § 5536(a)(3).

## Findings and Conclusions as to Respondents' Use of Statements that were Falsely Sworn to Enforce Debts

39.   From 2009 to 2011, Respondents brought over 500,000 lawsuits to collect delinquent credit card Accounts, many of which required some form of sworn, certified, or verified factual allegations.

40.   Respondents also provided more than 150,000 sworn statements and documents to support collection lawsuits brought by the Debt Buyers that purchased their defaulted credit card Accounts. Respondents' in-house and outside counsel prepared sworn statements and sent those documents to be signed by Respondents' employees in centralized locations.

41.   These sworn statements were representations to courts, debtors, and non-debtor Consumers that the statements were truthful and accurate statements of fact, verified by the Affiant based on personal knowledge or a review of business records, made under oath, and properly witnessed or notarized by the witness or notary.

42.   Respondents' employees and agents prepared the sworn statements in bulk using stock templates. The statements often were not prepared and reviewed by the individual who signed the sworn statements. The signing individual at times lacked personal knowledge of the information they were attesting to and did not perform the review or follow the signing and notary procedures required by law. Their failure to properly prepare, review, or execute certain

sworn documents resulted in these sworn statements containing misleading representations.

43.   The specific practices Respondents engaged in include the following:

   a.   Swearing to personal knowledge of facts without personal knowledge of those facts. For example, Respondents' employees or agents swore to practices regarding business recordkeeping without personal knowledge of those practices;

   b.   Swearing to having reviewed the contents of records when in fact they had not. For example, Respondents' employees or agents swore to the accuracy, authenticity, and veracity of attached exhibits without reviewing those exhibits or without having the personal knowledge needed to verify the contents of the exhibits;

   c.   Swearing to personal knowledge of how records accompanying a sale were kept by Respondents and how the records were transferred to buyers without actually identifying the records they were swearing to;

   d.   Signing complaint verification forms in batches and then attaching the verifications to complaints that the signer had never seen or reviewed;

   e.   Notarizing or attesting to documents without witnessing the signing of those documents;

   f.   Notarizing documents without administering oaths; and

   g.   Notarizing documents without names and dates so that this information could be inserted later.

   h.   Signing certain proofs of claim in bankruptcy without reviewing the records supporting those claims.

44. These practices, in many cases, resulted in Respondents lacking a proper evidentiary basis to prove the debt. Consumers, who were not notified of Respondents' practices, did not know about a potential basis to challenge Respondents' improperly sworn documents. Courts, which also were not provided notice that the documents were improperly sworn, relied on and entered certain judgments against Consumers. Although Respondents ceased engaging in collections litigation and ceased making collections efforts against Affected Consumers in 2012, they took no action to notify Consumers or to seek vacatur or another remedy from the courts.

45. Some judgments obtained by Respondents after charge-off were reported on the public records section of Consumers' credit reports. A reported judgment can have additional negative effects on Consumers. Mortgage lenders may insist that the judgments be paid because unsatisfied judgments may make it more difficult for Consumers to make their mortgage payments or are a threat to their security interest. Before making hiring decisions, employers may search public records or obtain credit reports showing civil judgments against prospective employees and be dissuaded from hiring them, particularly if the employee will be handling money or finances.

46. Consumers themselves had little opportunity to challenge the documents that were falsely sworn or to demand that Respondents use proper procedures because they were unaware that part or all of the evidentiary basis for the judgment was improperly sworn documents. For most Consumers, the obstacles and cost to seek a remedy post-judgment, such as vacatur, could be too significant.

47.   Consumers obtained no legitimate benefit from Respondents' document execution practices. Any additional costs that Respondents would have incurred by conforming their practices to their legal obligations or otherwise remediating Consumers were outweighed by the harm to Consumers.

*Respondents' Sworn Document Practices Were Deceptive*

48.   Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B).

49.   In numerous instances, in connection with collecting or attempting to collect credit card Accounts, Respondents represented, directly or indirectly, expressly or by implication, that the sworn documents prepared by Respondents' employees or agents were executed and notarized in accordance with the law, that the statements of fact therein were accurate and based on direct knowledge or a review of Account-level documentation.

50.   In truth and in fact, in numerous instances, Respondents' sworn documents were not executed and notarized in accordance with the law, the statements of fact therein were not accurate or were not based on direct knowledge or a review of Account-level documentation by the signer.

51.    Respondents' representations were material because they were likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit or collection attempt and were likely to mislead Consumers acting reasonably under the circumstances.

52.    Thus Respondents' representations constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5531(a)(1)(B).

*Respondents' Sworn Document Practices Were Unfair*

53.    Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause Consumers substantial injury that is not reasonably avoidable and if the substantial injury is not outweighed by countervailing benefits to Consumers or competition.

54.    Respondents' sworn documents practices that resulted in a lack of proper evidentiary support for some judgments were likely to cause substantial injury to Consumers that was not reasonably avoidable or outweighed by any countervailing benefit to Consumers or to competition.

55.    Thus Respondents engaged in unfair acts and practices in violation of sections 1036(a)(1)(B) and 1031(c)(1) of the CFPA. 12 U.S.C. § 5536(a)(1)(B) and 5531(c)(1).

*Respondents' Failure to Provide Notice that Judgments Were Obtained Using Documents that were Falsely Sworn Was Unfair*

56.    Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or

is likely to cause Consumers substantial injury that is not reasonably avoidable and if the substantial injury is not outweighed by countervailing benefits to Consumers or competition.

57. Respondents' act and practice of failing to notify Consumers and the courts once it learned that some or all of the evidentiary support for its judgments was based on documents that were falsely sworn was likely to cause substantial injury to Consumers that was not reasonably avoidable or outweighed by any countervailing benefit to Consumers or to competition.

58. Thus Respondents engaged in unfair acts and practices in violation of sections 1036(a)(1)(B) and 1031(c)(1) of the CFPA. 12 U.S.C. § 5536(a)(1)(B) and 5531(c)(1).

### Findings and Conclusions as to Respondents' Miscalculation of Judgments

59. When Respondents filed Debt collection suits against Consumers, their employees and agents made certain errors in calculating the amounts owed. Approximately 9% of the judgments that Respondents obtained against Consumers contained erroneous amounts that were greater than what the Consumers legally owed.

60. These erroneous amounts were stated in documents that Respondents submitted to the court and that formed the basis for the judgments entered against the Consumers.

61. Although Respondents halted collection efforts on these accounts after they became aware of the errors, Respondents' failure to notify Affected Consumers and to move to vacate judgments harmed Consumers who paid or were subject

to collection attempts for a judgment amount that was greater than what they legally owed.

62.  Consumers had little opportunity to avoid such injuries because they were unaware of and lacked any meaningful way of proving that certain judgments against them were for erroneous amounts.

63.  Consumers obtained no legitimate benefit from Respondents' errors. Any additional costs that Respondents would have had to incur to calculate amounts owed accurately, include accurate amounts in the sworn documents it submitted to the court, and inform Consumers of the erroneous judgment were outweighed by the ongoing harm to Consumers.

*Respondents' Failure to Remediate the Miscalculation of Judgments Was Unfair*

64.  Section 1036(a)(1)(B) of the CFPA prohibits "unfair, deceptive, or abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause Consumers substantial injury that is not reasonably avoidable and if the substantial injury is not outweighed by countervailing benefits to Consumers or competition.

65.  Respondents' failure to immediately address the erroneous judgment amounts that Respondents obtained was likely to cause substantial injury to Consumers that was not reasonably avoidable or outweighed by any countervailing benefits to Consumers or to competition.

66.  Thus Respondents engaged in unfair acts and practices in violation of sections 1036(a)(1)(B) and 1031(c)(1) of the CFPA. 12 U.S.C. § 5536(a)(1)(B) and 5531(c)(1).

# Order

# VI

## Conduct Provisions

**IT IS ORDERED** under Sections 1053 and 1055 of the CFPA, that:

67. **Requirements relating to Debt Sales**

   a. Respondents will not knowingly or recklessly provide substantial assistance to a Debt Buyer's unfair, deceptive, or abusive acts or practices in violation of 12 U.S.C. § 5536(a)(3).

   b. Respondents will implement effective processes, systems, and controls to provide accurate documentation and information to Debt Buyers and Consumers in connection with Debt Sales. Respondents will document the referenced processes, systems, and controls in writing, and will make such documentation available to appropriate employees of Respondents.

68. **Documentation and Information Provided to Debt Buyers at Debt Sale**

   a. For Debt Sale contracts entered into after the Effective Date, Respondents' contracts or other agreements with Debt Buyers will prohibit Debt Buyers from engaging in Debt Buyer initiated collection efforts on any Account for which Respondents have not provided the following Account-level documentation substantiating the Debt:

    i.   the last four digits of the Account number that was used at the time of the Consumer's last statement, or, if not available, when credit was last extended to the Consumer;

    ii.   the Consumer's name and last known address;

    iii.   the first date of delinquency for purposes of consumer reporting;

    iv.   the date and amount of last payment;

    v.   the date the Account was Charged-Off;

    vi.   the unpaid balance due on the Account, with a breakdown of the post-Charge-Off balance, interest, and fees;

    vii.   the name of the last creditor to extend credit to the Consumer; and

    viii.   whether the Consumer has demanded in writing that Respondents cease contact with the Consumer, if the Consumer has done so and has not revoked the demand.

69.  **Documentation and Information Available to Debt Buyers After Debt Sale**

    a.  For Debt Sale contracts entered into after the Effective Date, Respondents will make available to a Debt Buyer, for a minimum of three years following the Debt Sale, upon request at no or nominal cost to the Debt Buyer, at a minimum:

i.     the Effective Credit Agreement;

ii.    if the Consumer, within eighteen (18) months prior to the Debt Sale and while Respondents were the creditors on the Account, has disputed the amount of a Debt Respondents claimed to be owed in a monthly Account statement, a record of any such dispute and the result of Respondents' investigation of the dispute;

iii.   if the Account is subject to a judgment, an itemization of the judgment amount as awarded, including the amounts awarded by the court for costs, attorney's fees, interest, and any other fee;

iv.    copies of the last eighteen (18) monthly Account statements. If the Account was open for less than eighteen (18) months, Respondents shall make available all Account statements; and

v.     the name and address of the original creditor, such that the Debt Buyer may comply with any obligation of the Debt Buyer to provide "the name and address of the original creditor" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(5) and (b).

70. **Documentation and Information Provided to Consumers at Debt Sale**

a. When Respondents sell an Account to a Debt Buyer after the Effective Date, Respondents shall provide to the Consumer prior to the time that the Debt Buyer is authorized, by contract, to begin Debt Buyer-initiated Debt collection efforts, notice of the sale of the Account, which shall include:

    i. the name and contact information (at a minimum, phone number and address) of the Debt Buyer;

    ii. the name of the last creditor to extend credit to the Consumer;

    iii. the last four digits of the Account number at the time of the Consumer's last statement or, if not available, the Account number that was used when credit was last extended to the Consumer;

    iv. the amount due on the Account at the time of sale, with a breakdown of the post-Charge-Off balance, interest, and fees;

    v. a description of the readily available method(s) provided by Respondents pursuant to Section VI, Paragraph 71 (b) below that former customers can use to obtain Account information;

    vi. a statement that this is not a bill and the Consumer should not send payment to Respondents and a description of the toll free number and other contact information for Respondents' customer service if the Consumer has any questions about the contents of this notice; and

> vii.   a statement that the Debt Buyer is prohibited from reselling the Consumer's Debt to an entity other than Respondents.

71.   **Documentation and Information Available to Consumers After Debt Sale**

   a.  For Debt Sales following the Effective Date, Respondents will make available to a Consumer, upon request and at no cost to the Consumer, at a minimum:

   > i.   the Effective Credit Agreement;

   > ii.   if the Account is subject to a judgment, an itemization of the judgment amount as awarded, including the amounts awarded by the court for costs, attorney's fees, interest, and any other fee;

   > iii.   copies of the last eighteen (18) monthly Account statements. If the Account was open for less than eighteen (18) months, Respondents shall make available all Account statements; and

   > iv.   the name and address of the original creditor, as that term is used in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(5) and (b).

   b.  Respondents shall establish readily available method(s), including telephone routing based on Account verification to customer service agents familiar with Debt Sales, for Consumers to obtain the information identified in Section VI, Paragraph 71 (a) above.

72.   **Restrictions on Respondents' Sale of Accounts**

a. Even if otherwise permissible under law, Respondents will not sell Accounts that, as of the date of sale, possess any of the following characteristics:

    i.    the Consumer's Debt has been discharged in a Chapter 7 bankruptcy case with no assets available for distribution to creditors;

    ii.    the Consumer has notified Respondents, in writing to the address provided by Respondents for direct disputes, or to Respondents' business address if Respondents have not specified an address, of identity theft or unauthorized use and Respondents have not determined, after reasonable review, that the Consumer owes the Debt;

    iii.    Respondents have been informed or have knowledge that the Consumer(s) responsible for the Debt is deceased;

    iv.    the Account has been settled;

    v.    Respondents lack Competent and Reliable Evidence that they own the Account;

    vi.    Respondents cannot comply with Section VI, Paragraphs 68 or 69 of this Agreement because Respondents cannot provide the required information or documentation;

vii.   the Consumer has alleged in writing that he or she does not owe the amount claimed by Respondents, and Respondents have not determined, after a reasonable review, that the Consumer owes all of the amount Respondents will be selling, and have not provided a response to the Consumer, either directly to the Consumer or through a Consumer Reporting Agency, as appropriate;

viii.   the Consumer is paying pursuant to and in accordance with the terms of a modification or payment plan;

ix.   more than three years have passed since the date on which the Account was Charged-Off, or the date of the Consumer's last payment, whichever is later;

x.   the Consumer is a Servicemember;

xi.   Respondents have determined that the Account was opened and is maintained, at the time of the Debt Sale, by a minor; or

xii.   the Consumer is currently engaged offensively in litigation with Respondents, in an individual action.

b.   Respondents will not sell Accounts that are beyond the date of obsolescence under Section 605 of the Fair Credit Reporting Act or Regulation V without including in their sales contract or similar agreement a term requiring the Debt Buyer to provide clear and prominent notice to the Consumer that, due to the age of the Debt, the Debt is not likely to appear on the Consumer's credit report.

c. If, after Respondents sell the Consumer's Account, a Consumer disputes information that Respondents have furnished to a Consumer Reporting Agency, Respondents will comply with the Fair Credit Reporting Act, 15 U.S.C. §1681s-2 and Regulation V, 12 C.F.R. Parts 1022.40-1022.43.

d. If Respondents determine that they have sold an Account in violation of the above provisions, Respondents shall make a reasonable effort to repurchase the Account and take reasonable steps to require their Debt Buyers to inform Respondents about any amounts paid on the Debt since the date of sale, so that Respondents may reconcile the Account balance upon repurchase. However, if Respondents determine more than one year after the date of a Debt Sale that they sold the Account of a deceased person, Respondents shall not be required to make efforts to repurchase the Account.

73. **Requirements Relating to Debt Buyers**

a. Respondents will conduct due diligence before entering into new relationships with Debt Buyers, and will conduct due diligence periodically when forward-flow contractual arrangements are in place.

b. Respondents will not sell Accounts to a Debt Buyer unless the Debt Buyer represents to Respondents that it is licensed or otherwise authorized to conduct business in the states where the Consumers reside or, where authorized by state law, that the Debt Buyer will engage vendors that are licensed or otherwise authorized to conduct business in the states where the Consumers reside.

c. In their contracts or other agreements with Debt Buyers, Respondents will prohibit Debt Buyers from reselling Accounts. This prohibition shall not prohibit Respondents from repurchasing Accounts they sell to Debt Buyers.

d. In the event Respondents provide Debt Buyers with Declarations, those Declarations must comply with the requirements of Section VI, Paragraph 74 of this Consent Order.

e. In their contracts or other agreements with Debt Buyers, Respondents will prohibit Debt Buyers from imposing interest on Charged-Off Accounts unless permitted by law.

f. In their contracts or other agreements with Debt Buyers, Respondents will prohibit Debt Buyers from swearing to the validity or otherwise attesting to the accuracy of any documentation or information provided by Respondents, unless the Debt Buyer must do so as part of filing a bankruptcy proof of claim (POC) based on information from Respondents or are otherwise allowed by law to do so.

g. In their contracts or other agreements with Debt Buyers, Respondents will prohibit Debt Buyers from assessing fees and interest on any Account in violation of any terms and conditions of the Effective Credit Agreement that remain applicable when such fees or interest are assessed, or any applicable state or federal law.

h.  In their contracts or other agreements with Debt Buyers, Respondents will require Debt Buyers to comply with all applicable state and federal consumer protection and debt collection laws and regulations, including the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., laws prohibiting the imposition of interest on Charged-Off Accounts, and laws regarding the assessment of fees and interest.

i.  Upon notice, through their periodic due diligence obligations in Section VI, Paragraph 73 (a) above or otherwise, that a Debt Buyer is violating provisions of its agreement with Respondents, Respondents shall take reasonable action with respect to the Debt Buyer including, but not limited to, recalling Accounts or terminating future Debt Sales to the Debt Buyer where appropriate, or both.

74.  **Requirements Relating to Declarations**

a.  Factual assertions made in Declarations must be accurate and capable of being supported by Competent and Reliable Evidence.

b.  Declarations shall be based on personal knowledge, a review of Respondents' books and records, or other appropriate standard as set forth in the Declaration and in accordance with the applicable requirements of state or federal law.

c.  Affiants shall review their Declarations for accuracy and completeness.

d.  If an Affiant relies on a review of business records for the basis of a Declaration, the referenced business record shall be attached when the Declaration is executed by or on behalf of Respondents if required by applicable state or federal law or court rule. If the record is not required to

be attached, Respondents shall provide the Effective Credit Agreement and most recent monthly statement to the Consumer upon request.

e.  Respondents shall maintain and keep available records needed to establish that the Declarations and documents attached thereto in Collections Litigation were substantiated with Competent and Reliable Evidence for five years or such other period as required by relevant regulatory authorities.

f.  Respondents shall have effective processes, systems, and controls such that Affiants review relevant business records or other Competent and Reliable Evidence to substantiate the Consumer's Debt. Respondents will document the referenced processes, systems, and controls in writing, and will make such documentation available to appropriate employees of the Respondents.

g.  Respondents shall have written standards for qualifications, training, and quality control of employees who regularly prepare or execute Declarations. Respondents shall require covered employees to properly and timely complete such training.

h.  For Declarations used on a frequent or repetitive basis, Respondents will implement effective processes, systems, and controls to review and approve standardized templates for compliance with applicable law, rule, court procedure, and the terms of this Consent Order. Respondents will document the referenced processes, systems, and controls in writing, and will make such documentation available to appropriate employees of the Respondents.

i. Declarations shall accurately and legibly identify the Affiant's name, title, employer, and the date of signing.

j. Respondents shall have effective processes, systems, and controls to maintain adequate numbers of employees to prepare, verify, and execute Declarations, based on current and future projected workload demands.

k. Respondents shall not pay incentives to employees or third-party providers based solely on the volume of Declarations prepared, verified, or executed.

l. Affiants shall be individuals, not entities, and Declarations shall be signed by hand signature of the Affiant, except for permitted electronic filings.

m. All material information in a Declaration required to be completed or provided by an Affiant prior to submission under applicable state or federal law or court rule must be complete at the time the Affiant signs the Declaration.

n. Affiants shall date their signatures on Declarations using the actual date of signing.

o. Respondents shall maintain or require the notary to maintain records of notarizations of documents used in Collections Litigation executed by each notary employed by Respondents who notarizes documents as part of that notary's employment.

p. Where Respondents submit an affidavit, declaration, or other sworn statement in arbitration, bankruptcy, or probate proceedings for the purposes of collecting a Debt, those shall comply with all the applicable requirements of this Section.

75. **Requirements Related to Collections Litigation**

a. Any complaint or claim filed by or on behalf of Respondents in Collections Litigation shall include the name of the creditor at the time of the Consumer's last payment, or if not available, the last creditor to extend credit to the Consumer and the date of the last credit extension, the date of the last payment, the amount of the Debt owed, and a breakdown of any post-Charge-Off interest and fees.

b. The attorney's fees Respondents or their counsel seek from a court or in arbitration shall be reasonable and authorized by law and the Effective Credit Agreement.

c. Documents submitted to courts in Collections Litigation for the purpose of supporting factual allegations in Declarations to establish a Debt shall be actual and applicable business records or true copies or reproductions of those records and not documents prepared solely for litigation, unless the use of documents prepared solely for litigation is permitted by the court.

d. If Respondents learn that any information that was contained in a Declaration, court pleading, or bankruptcy POC, and which relates to the character, amount or legal status of a Debt, was materially inaccurate at the time the Declaration, court pleading, or POC was executed or made, Respondents will correct such information if the matter in which the Declaration, court pleading, or POC was executed or made remains pending.

e. Before obtaining a default judgment against a Consumer, Respondents shall proffer to the court relevant information and documentation

maintained by Respondents to support their claims, unless prohibited by law or court rule.

f.  Respondents shall implement effective processes, systems, and controls to prohibit the assessment of fees, expenses, and other charges collected through Collections Litigation that are not in accordance with the terms of the Effective Credit Agreement and applicable law.

g.  Respondents will maintain policies and procedures requiring that when Respondents engage in Collections Litigation, such Collections Litigation complies with the applicable legal requirements and is based on accurate information.  Respondents will develop and implement, to the extent not in place already, measures to provide accurate documents to their law firms for use in Collections Litigation.

h.  Any complaint or claim for payment of a Debt that Respondents assert in arbitration, bankruptcy, or probate proceedings for the purpose of collecting on an Account shall comply with all the applicable requirements for Collections Litigation in this Section.

76.  **Requirements Related to Remediation and Balance Adjustments**

Within sixty [60] days of the Effective Date of this Consent Order, unless another time period is stated:

*Remediation*

a.  Respondents represent that, consistent with appropriate local rules and practice, they have sought the withdrawal, dismissal, or termination of all pre-judgment Collections Litigation matters that were pending at any time

34

between January 1, 2009 and June 30, 2014. In the event that Respondents are notified of a pre-judgment matter that was pending in this time period that Respondents have not sought to withdraw, dismiss, or terminate under this Paragraph, Respondents will move or take other affirmative action to withdraw, dismiss, or terminate such matter.

b. For Collections Litigation matters that were pending at any time between January 1, 2009 and June 30, 2014 in which Respondents have obtained a judgment, Respondents represent that they have, consistent with appropriate local rules and practice, sought to cease their current post-judgment enforcement activities, and to remove, withdraw, or terminate its active wage garnishments, bank levies, and similar means of enforcing those judgments. In the event that Respondents are notified that post-judgment enforcement activities are being taken by Respondents or on their behalf that Respondents have not sought to cease under this Paragraph, Respondents shall move or take other affirmative action to stop such activities.

c. Where Respondents have obtained a court judgment against a Consumer through Collections Litigation that was pending at any time between January 1, 2009 and June 30, 2014, Respondents shall notify the Consumer that they shall not seek to enforce, collect, sell or otherwise transfer the judgment they have obtained and/or that they will request that the Consumer Reporting Agencies amend, delete, or suppress information regarding the judgment, as applicable. Respondents shall provide this notification, consistent with Exhibit A to this Consent Order,

to the Consumer's last known address. Respondents shall complete this notification consistent with the timetable set forth in Section VII, Paragraph 80.

d. Respondents shall request that each of the Consumer Reporting Agencies that compiles and maintains files on Consumers on a nationwide basis amend, delete, or suppress information in the public record section of such files regarding the judgments obtained in Collections Litigation for cases that were pending at any time between January 1, 2009 and June 30, 2014. Respondents shall complete this request consistent with the timetable set forth in Section VII, Paragraph 80.

e. Respondents shall not reinstitute Collections Litigation that was pending, filed, withdrawn, adjudicated, or dismissed between January 1, 2009 and the Effective Date and will take no further affirmative action to collect; enforce through Collections Litigation, arbitration, bankruptcy (other than pursuant to bankruptcy payment plans currently in effect), or probate; or sell or transfer these Accounts, except that, where a Consumer pursues a claim against Respondents, Respondents may assert, through a set-off, counterclaim, or other means, Respondents' entitlement to amounts (less the pre-and post-judgment interest, fees, and costs that accrued after the referral to Collections Litigation consistent with Section VI, Paragraph 76(h) of this Consent Order). Where a Consumer, in an individual action, seeks to vacate a judgment regarding an Account that was the subject of Collections Litigation that was pending, filed, withdrawn, adjudicated or dismissed between January 1, 2009 and the Effective Date, Respondents

will rely, for factual statements to be proved by declaration, on Declarations that are in compliance with Section VI, Paragraph 74 (a)–(d), (i), (l), (m) and (n) of this Consent Order.

f.  This Section shall not be construed to prohibit Respondents from filing a POC in response to a request from a Consumer or trustee.

g.  Nothing in this Consent Order shall be construed to prohibit Respondents from receiving voluntary payments sent by Consumers whose Accounts were subject to Collections Litigation that was dismissed per Section VI, Paragraph 76 (a) of this Consent Order.

*Balance Adjustments*

h.  For all Accounts referred to Collections Litigation from January 1, 2009 to June 30, 2014, Respondents shall address potential balance inaccuracies following Collections Litigation by treating each Account as if it had not been referred to Collections Litigation, including by waiving all pre- and post-judgment interest, fees, and costs that accrued after the referral, thereby reducing the amount owed.

i.  Respondents shall provide the Bureau with semiannual reports describing their implementation of the remediation and balance adjustment requirements set forth above. Such reports shall include a description of Respondents' remediation and balance adjustment plans, updates on progress, and state-specific data.

# VII

## Order to Pay Redress

**IT IS FURTHER ORDERED** that:

77. Respondents shall provide to Consumers against whom Collections Litigation was pending at any time between January 1, 2009 and June 30, 2014, a cash refund of amounts paid by individual Consumers in excess of such Consumer's contractual balance at the time of referral to Collections Litigation plus 25% of the excess amount paid. Respondents shall also refund or otherwise refuse payments from such Consumers, after the date of this Consent Order, in excess of the Consumer's contractual balance at the time of referral to Collections Litigation.

78. Respondents shall provide redress to Consumers in an aggregate amount of not less than Fifty Million Dollars ($50,000,000). If, by July, 1, 2016, the total redress to Consumers is less than $ 50 million, Respondents shall pay half of the remaining amount to the Bureau as a civil penalty under 12 U.S.C. § 5565(c). For purposes of calculation of the redress amount, the total aggregate redress shall include refunds and payments made on these Collections Litigation cases by Respondents at any point before or after the date of this Consent Order, including any amounts of these refunds and payments escheated to the states, as well as actions taken by Respondents to provide redress to Consumers by refunding payment or refusing to accept payments by Consumers prior to the date of this Consent Order.

*Redress Plan*

79.  Within ninety (90) days of the Effective Date, Respondents shall deliver a written plan describing how Respondents intend to identify and provide redress to eligible Consumers as required by Paragraphs 77 and 78 of this Section ("Redress Plan"), subject to further refinement and required approval by the appropriate prudential regulatory authority.

80.  Respondents will make all payments to Consumers required by Paragraphs 77 and 78 of this Section pursuant to the Redress Plan following receipt of full required approval by the appropriate prudential regulatory authorities. In the event that Respondents require more than Two Hundred Seventy (270) days from full approval to complete the notifications under Section VI, Paragraph 76 (c), the request to the Consumer Reporting Agencies under Section VI, Paragraph 76 (d), and the payments under Paragraphs 77 and 78 of this Section, Respondents and the Bureau shall discuss in good faith an extension of the date. Prior to the good faith discussions, Respondents shall provide the Bureau an explanation of the steps they took to make the notifications, requests and payments and the reasons why they were unable to make all notifications, requests and payments within the 270 days.

81.  Respondents shall provide the Bureau with semiannual reports describing their implementation of the redress requirements set forth above. Such reports shall include a description of Respondents' redress plans, updates on progress, and state-specific data. Upon receipt of a reasonable request of the Bureau, Respondents will provide further information on their implementation of the redress requirements.

# VIII

## Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED that:**

82. Under Sections 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations described in Section V of this Consent Order, and taking into account the factors in 12 U.S.C. § 5565(c) (3), Respondents must pay a civil money penalty of Thirty Million Dollars ($30,000,000) to the Bureau.

83. Within 10 days of the Effective Date, Respondents must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the wiring instructions to be provided by counsel for the Bureau.

84. The civil penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

85. Respondents must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Respondents must not:

   a.    Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Consent Order; or

   b.    Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Consent Order.

# IX

## Notices

**IT IS FURTHER ORDERED** that:

86.   Unless otherwise directed in writing by the Bureau, Respondents must provide all submissions, requests, communications, or other documents relating to this Consent Order in writing, with the subject line, "*In re Chase BankCard Services, Inc,* File No. 2015-CFPB-0013," and send them either:

87.   By overnight courier (not the U.S. Postal Service), as follows:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1625 Eye Street, N.W.
> Washington D.C. 20006;
> or

88.   By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552

# X

## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

89. Respondents may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Enforcement Director.

90. The Enforcement Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Enforcement Director must be in writing.

# XI

## Administrative Provisions

91. Nothing herein shall be construed as relieving Respondents of the obligation to comply with all state and federal laws, regulations or rules, nor shall any of the provisions herein be deemed to be permission to engage in any acts or practices prohibited by such laws, regulations, or rules.

92. In the event of a conflict between this Consent Order and the requirements of federal, state, or local laws, such that Respondents cannot comply with this Consent Order without violating these requirements, Respondents shall document such conflicts and notify the Bureau that they intends to comply with the requirements to the extent necessary to eliminate the conflict.

93. Respondents shall designate one or more management-level employees to be the primary contact for the Bureau regarding complaints and inquiries from Consumers regarding their Debt, including those whose Accounts have been sold. Respondents shall provide a written response to such inquiries, or seek additional time to respond, within forty-five (45) days to the Consumer.

94. It is the intent of the parties to work collaboratively to address any potential violations of this Consent Order. If the Bureau determines that Respondents are potentially in violation of one of the provisions of this Consent Order, before initiating any application for injunctive or monetary relief, the Bureau shall notify Respondents in writing as soon as practicable. Respondents shall thereafter have forty-five (45) days from receipt of such written notice, or such additional time as Respondents and the Bureau agree in writing, to provide a written response to the Bureau's notice. Respondents will be considered to have cured a potential violation of this Consent Order and to be in compliance with this Consent Order where Respondents: (1) correct the violation; (2) fully remediate any non-de minimis monetary Consumer harm; and (3) can establish that the violation was isolated and is therefore not likely to reoccur. The Bureau shall determine whether Respondents have satisfied the above elements of any cure, and a determination that the cure is sufficient shall not be unreasonably withheld. In response to any enforcement action brought by the Bureau, any party may present evidence that Respondents have or have not taken corrective or remedial action to address any potential violation.

95. The Bureau is not required to provide notice in advance of taking any enforcement action if necessary to protect the health, safety or welfare of the public.

96. The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau or any other governmental agency from taking any other action against Respondents, except as described in Paragraph 97.

97. The Bureau releases and discharges Respondents for all potential liability for law violations that the Bureau has or might have asserted arising out of or relating to any aspect of any Covered Conduct, to the extent that such practices occurred before the Effective Date, including all civil claims pursuant to consumer protection statutes or other consumer-related or civil fraud laws (including common law), and civil statutes or common law related to Respondents' Collections Litigation before the courts or arbitral panels. "Covered Conduct" means (1) any aspect of Collections Litigation, including without limitation processes and procedures for signing affidavits and other Declarations prepared for use in Collections Litigation; the preparation or provision of information or other documentation, including Declarations, in connection with Collections Litigation; Respondents' liability for actions taken by Respondents' outside law firms related to Collections Litigation, including without limitation the determination of fees and interest owed (any claims against the outside law firms themselves are not being released and are explicitly preserved) by a Consumer in connection with any Debt and reporting to or communications with Consumer Reporting Agencies arising out of or concerning Collections Litigation; (2) any aspect of Debt Sales, including

44

without limitation signing affidavits or Declarations prepared for use by Debt Buyers; the preparation or provision of information or other documentation, including Declarations, to any Debt Buyer or Consumer in connection with or following any Debt Sale; reviewing the business practices of and negotiating with Debt Buyers; and reporting to or communications with Consumer Reporting Agencies arising out of or concerning Debt Sales; and (3) the provision of information or documentation concerning any Debt, including Declarations, in connection with a bankruptcy, arbitration or probate proceeding, or a proof of claim. This release does not preclude or affect any right of the parties to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

98.    This Release is neither an admission of liability of the allegations of the Complaint or in cases settled pursuant to this Order, nor a concession by the States or the United States that their claims are not well-founded.

99.    Nothing in this Order shall be construed to create, waive, or limit any private right of action, including any claims individual Consumers have or may have under state consumer protection laws against any person or entity, including Chase.

100.    The Release by the parties of the above-listed claims is intended to be and shall be for the benefit only of the parties and no other individual or entity.

101.    This Consent Order is intended to be and will be construed as, a final Consent Order issued under Section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

102. The obligations of Respondents under this Consent Order shall commence and terminate as follows:

   a. The obligations of Respondents under Sections VI, Paragraphs 67-73 shall apply to Debt Sales entered into after the Effective Date;

   b. The obligations of Respondents under Subsection VI, Paragraph 74 (a)-(c), (i), (l), (m), and (n) shall have no termination date; and

   c. The obligations of Respondents under all other paragraphs shall terminate on January 1, 2020.

103. Termination of such obligations as provided in this Section shall not relieve Respondents from the obligation to complete the consumer redress specified above.

104. Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

105. The provisions of this Consent Order will be enforceable by the Bureau. For any violation of the Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondents wherever Respondents may be found and Respondents may not contest that court's personal jurisdiction over Respondents.

106. This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent

Order and the accompanying Stipulation. This Consent Order and the

accompanying Stipulation supersede any prior oral or written communications,

discussions, or understandings.

**IT IS SO ORDERED**, this 8th day of July, 2015.

Richard Cordray
Director
Consumer Financial Protection Bureau

## Exhibit A

In accordance with Section VI, Paragraph 76 (c), the language found below, or substantially similar language that is not materially different, will be included as part of communications to Consumers whom Respondents sued for a credit card Debt if Respondents obtained a judgment in that lawsuit between January 1, 2009 and June 30, 2014. The communication will include the following:

- Chase entered into an agreement with the U.S. Consumer Financial Protection Bureau [and your State Attorney General] on June 26, 2015; and with the Office of the Comptroller of the Currency on September 18, 2013.

- Chase will request that the three major credit card reporting agencies (Equifax, Experian, and Trans Union) not report the Chase judgment against you. Once Chase submits this request, it is up to each credit reporting agency to decide whether to report the judgment.

- This notice is for your information only and you do not have to take any action regarding this letter.

- If you have any questions or concerns you may contact Chase toll free at _____.

If the judgment is currently owned by Respondents, the notice will also include the following:

- Chase will no longer try to collect money from you based on its judgment against you.

- Chase has stopped and has agreed to stop any effort to enforce the judgment, including active wage garnishments, bank levies and similar collection efforts.  If you are aware of any enforcement efforts in connection with your judgment, please contact us toll free at

  _____.

- Chase will not sell your judgment to a debt buyer or any other company.

# EXHIBIT E

**ERIN CAPITAL MANAGEMENT**
50 Bayside Drive
Atlantic Highlands, NJ 07716

March 12, 2019

BERNARD LEWIS
4818 WILDER AVE
BRONX NY 10470-1212

RE:     **NOTICE OF ASSIGNMENT OF JUDGMENT**
        *Erin Capital Management vs. BERNARD LEWIS*
        State of Jurisdiction:      New York
        Court File No.:             47941-BCV-2002
        Judgment Date:              6/5/2002
        Original Creditor:          CHASE BANK
        Original Account Number:    XXXXXXXXXXXX0847

Dear BERNARD LEWIS,

We are writing to advise you that the above-referenced judgment, and all rights and obligations relative to the judgment, have been sold, transferred and assigned to Caddis Investments, LLC, effective as of 2/6/2019.  Please direct all future communications and correspondence to Caddis Investments, LLC at:

        Caddis Investments, LLC
        c/o InvestiNet, LLC
        511 Rhett Street
        Greenville, SC 29601
        Suite 1
        1-800-533-8675

Kindest Regards,

ERIN CAPITAL MANAGEMENT

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.
THIS IS AN ATTEMPT TO COLLECT A DEBT; ANY INFORMATION WILL BE USED FOR THAT PURPOSE.

# EXHIBIT F

ORIGINAL

# CONSUMER CREDIT TRANSACTION
## IMPORTANT!! YOU ARE BEING SUED!!
## THIS IS A COURT PAPER--A SUMMONS

**DON'T THROW IT AWAY!! TALK TO A LAWYER RIGHT AWAY!! PART OF YOUR PAY CAN BE TAKEN FROM YOU (GARNISHEED). IF YOU DO NOT BRING THIS TO COURT, OR SEE A LAWYER YOUR PROPERTY CAN BE TAKEN AND YOUR CREDIT RATING CAN BE HURT!! YOU MAY HAVE TO PAY OTHER COSTS TOO!! IF YOU CAN'T PAY FOR YOUR OWN LAWYER, BRING THESE PAPERS TO THIS COURT RIGHT AWAY. THE CLERK (PERSONAL APPEARANCE) WILL HELP YOU!!**

STATE OF NEW YORK         COUNTY OF BRONX
CIVIL COURT OF CITY OF NEW YORK

_____

LEGAL SERVICING, LLC,
SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK
      Plaintiff,

   -against-

BERNARD LEWIS
      Defendant(s)

_____

0022189

**SUMMONS**

**Index No.**
*Plaintiff's Address:*
2801 WEHRLE DRIVE  SUITE #5
WILLIAMSVILLE, NY 14221
*The basis of venue designated:*
Defendant resides in the County of BRONX

*To the Above Named Defendant:* **YOU ARE HEREBY SUMMONED** to appear in the CIVIL COURT OF  CITY OF NEW YORK, in the county of BRONX at the office of the Clerk of the said Court located at 851 GRAND CONCOURSE, BRONX, NY 10451, County of BRONX, State of New York, within the time provided by law as noted below and to file your Answer* to the annexed Complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the relief demanded in the Complaint, together with the costs of this action.

**DATED April 26, 2005**
DEFENDANT/DEMANDO ADDRESS:
BERNARD LEWIS

4058 PRATT AVE
BRONX, NY10466

By: RODNEY GIOVE, ESQ.
Attorney for Plaintiff
2801 Wehrle Drive, Suite #5
Williamsville, NY 14221
(716) 565-9300

FEE PAID
MAY 19 2005
CIVIL COURT
BRONX COUNTY

NOTE: The law provides that: (a) if this Summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY (20) days after such service; or (b) if the Summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York , you are allowed THIRTY (30) days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  WE ARE DEBT COLLECTORS AS DEFINED BY LAW.**

STATE OF NEW YORK    COUNTY OF BRONX
CIVIL COURT OF CITY OF NEW YORK

---

LEGAL SERVICING, LLC,
SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK,

                               Plaintiff,          **Verified Complaint**

  -vs-

                                            **Index No.**

BERNARD LEWIS

                             Defendant(s).

---

        Plaintiff through its attorney, RODNEY GIOVE, ESQ., complaining of the Defendant, respectfully alleges:

    1.    That at all timed hereinafter mentioned, the Plaintiff LEGAL SERVICING, LLC, a Delaware Limited Liability Company authorized to do business in New York having a principal place of business located at 2801 WEHRLE DRIVE  SUITE #5, WILLAIMSVILLE, NY 14221 is SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK.

    2.    That upon information and belief the Defendant is and at all times hereinafter mentioned as a resident of the county where this action is brought.

    3.    The agreement sued upon herein was duly assigned to Plaintiff and notice thereof was duly given to Defendant.

    4.    That there are monies due from Defendant to Plaintiff for charges incurred and or loans granted in connection with credit card(s) issued by Plaintiff's assignor pursuant to credit card agreement(s) made in compliance with the law, a copy of which agreement(s) were duly mailed to Defendant on which there is a balance due of $15,321.38, no part of which sum has been paid, although due and duly demanded.

    5.    The above debt arises from account number 5263501210809503.

    **WHEREFORE**, Plaintiff demands judgment against Defendant for the sum of $15,321.38 with interest from April 26, 2005, plus the costs and disbursement of this action.

**DATED:** April 26, 2005

                              By:_____

                                 RODNEY GIOVE, ESQ.
                                 Attorney for Plaintiff
                                 2801 Wehrle Drive, Suite #5
                                 Williamsville, NY 14221
                                 (716) 565-9300

## VERIFICATION AND AFFIDAVIT OF MERIT

STATE OF NEW YORK)
COUNTY OF ERIE) ss:

Robert T. Van De Mark, being duly sworn, deposes and states the following under penalties of perjury:

I am the President and CEO of Plaintiff and am fully familiar with the facts and circumstances of this matter. Defendant heretofore entered into a Credit Card Agreement with Plaintiff's predecessor in interest, CHASE MANHATTAN BANK. At Defendant's request, Plaintiff's predecessor in interest mailed a credit card and card agreement to Defendant who opened an account in Defendant's name. Defendant utilized the credit card, made minimal payments on behalf of the account pursuant to the credit card agreement and has now defaulted in making the scheduled payments. Plaintiff's predecessor in interest mailed statements to Defendant advising of said default and demanding payment. Defendant retained said statement without objection. No payment has been received despite due demand. The information contained in Plaintiff's Complaint is true to deponent's own knowledge except to those matters stated to be alleged on information and belief, and to those matters your deponent believed them to be true. This Verification is made by deponent because Plaintiff is a corporation and deponent is the President and CEO with knowledge of the facts and circumstances of the debt alleged and upon account records and other data in you deponent's possession.

Robert T. Van De Mark, President and CEO

Sworn to before me this 26th
day of April, 2005.

Notary Public

SHANNON G. DILS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01-DI6099369
Qualified in Erie County
Commission Expires September 29, 2007

# EXHIBIT G

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through August 2, 2019.

Selected Entity Name: CHASE MANHATTAN BANKING CORPORATION
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | CHASE MANHATTAN BANKING CORPORATION |
| **DOS ID #:** | 920942 |
| **Initial DOS Filing Date:** | JUNE 04, 1984 |
| **County:** | NEW YORK |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | INACTIVE - Termination (Jan 04, 1993) |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
CHASE MANHATTAN NATIONAL CORPORATION
1 CHASE MANHATTAN PLZ
NEW YORK, NEW YORK, 10081

**Registered Agent**

CT CORPORATION
1633 BROADWAY
NEW YORK, NEW YORK, 10019

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the

initial certificate of incorporation, however this
information is not recorded and only available by
viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| JUL 23, 1990 | Actual | CHASE MANHATTAN BANKING CORPORATION |
| JUN 04, 1984 | Actual | CHASE MANHATTAN NATIONAL CORPORATION |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

# EXHIBIT H

STATE OF NEW YORK        COUNTY OF BRONX
CIVIL COURT OF THE CITY OF NEW YORK

Index No. 22189 BCV 2005

LEGAL SERVICING, LLC,
SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK
                                Plaintiff,

                -against-

BERNARD LEWIS
4058 PRATT AVE
BRONX, NY 10466

                        Defendant(s)

*AFFIDAVIT
(AFFIRMATION)
OF MAILING OF A
COPY OF THE SUMMONS*

STATE OF NEW YORK)
COUNTY OF ERIE) ss:

Candace R. Milks, being duly sworn, deposes and states:  I am over 18 years of age, reside at 4982 Roseview Ave., Blasdell,  NY  14219 and I am acting as  agent for  plaintiff's attorney in this action.

The above entitled action is against a natural person and is based upon nonpayment of a contractual obligation.

To comply with the additional notice provisions of CPLR 3215, as amended, on Monday, July 11, 2005 I enclosed a copy of the summons and verified complaint in the above entitled action an a first class mail post-paid sealed envelope properly addressed  to the defendant BERNARD LEWIS at defendants last know residence address at 4058 PRATT AVE, BRONX, NY 10466 and I deposited the envelope in an official depository under the exclusive care and custody of the United States Postal Service within New York State and the envelope has not been returned by the Postal Service.

The aforementioned envelope bore the legend "personal and confidential" and the envelope did not indicate that the communication was from an attorney or concerned an alleged debt.

I state under the penalties of perjury that the statements herein made are true, except as to such statements as are based on information and belief, with statements I believe to be true.

Candace R. Milks

Sworn to before me

Notary Public

SHANNON G. DILS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01-DI6099369
Qualified in Erie County
Commission Expires September 29, 2007

# EXHIBIT I

# BRONX

## AFFIDAVIT OF SERVICE

Attorney: **LEGAL SERVICING, LLC, 2801 Wehrle Drive – Suite 5, 716–565–9300 x155**

Index No: _____

Court: **CIVIL COURT OF THE CITY OF NEW YORK, COUNTY OF BRONX**

Date Filed: _____

| Plaintiff/Petitioner: **LEGAL SERVICING, LLC. SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK** |
| Defendant/Respondent: **BERNARD LEWIS** |

STATE OF NEW YORK COUNTY OF BRONX  ss.:

2 1 8 1 0

**ROBERT CRANDALL**, being duly sworn deposes and says:
I am not a party to this action, I am over (18) eighteen years of age. I reside in New York State.

On **Thursday May 5th 2005** at **02:18 PM**, I served the within SUMMONS; VERIFIED COMPLAINT on **BERNARD LEWIS** at **4058 PRATT AVE., BRONX, NY, 10466**in the manner indicated below:

**[ X ] SUITABLE AGE.** By delivering a true copy of each to **JANE DOE , CO–TENANT** , a person of suitable age and discretion. Said premises is recipient's [  ] actual place of business   **[ X ]** dwelling house (usual place of abode) within the state.

**[ X ]** MAIL COPY. Pursuant to CPLR–Section 3215(g)(3)(i), On **Thursday May 12th 2005** , deponent completed service by depositing a true copy of each document to the above address in a 1st Class postpaid properly addressed envelope not indicating that mailing was from an attorney or concerned legal action and marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office in the State of New York.

A description of the Defendant, or other person served on behalf of the Defendant is as follows:

| Sex | Color of skin | Color of hair | Age | Height | Weight |
|---|---|---|---|---|---|
| **Female** | **Black** | **Black** | **35 – 49 yrs** | **5'4" – 5'8"** | **160 – 199 lbs** |
| Other features: | | | | | |

**[ X ] MIL. SRVC.** Your deponent asked the person spoken to whether defendant was in the active military service of the United States or N. Y. State; and received a negative reply.  Upon information and belief I have;  being based on the conversations & observations above narrated, defendant is not in the military service.

**[ X ] OTHER.** Private house. No apartment number.

Sworn to before me on **Friday 13th of May 2005**
X _____
**WILLIAM SINGLER**
**Notary Public, State of New York**
**No. 01SI6115080, Qualified in Nassau County**
**Commission Expires August 30, 2008**

X _____
ROBERT CRANDALL
License No: 0955171
Atty File#: 21810

1 1 2 5 9 1

# 112591 112591 112591 112591 112591 112591 112591

# EXHIBIT J

**Civil Court of the City of New York** ORIGINAL

County of  BRONX                                    Index Number   22189 BCV 2005

LEGAL SERVICING, LLC, SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK

## APPLICATION FOR JUDGMENT

Claimant(s)/Plaintiff(s),

-against-

BERNARD LEWIS

Defendant(s),

| | |
|---|---|
| Amount Claimed, less any credits | $15,321.38 |
| Interest @ 9 % from 04 / 26 / 05 | $ 362.68 |
| Attorney Fees (if applicable) | |
| SUBTOTAL | $15,684.06 |
| Costs, by Statute | $ 50.00 |

State of New York, County of ___ERIE___                :ss.

*Disbursements*

| | |
|---|---|
| Service of Summons & Complaint | $ 25.00 |
| Filing of Summons & Complaint | $ 45.00 |
| Prospective Marshal's Fee | $ 40.00 |
| Other (Indicate)_____ | 0 |
| Other (Indicate)_____ | 0 |
| GRAND TOTAL | $ 15,844.06 |

**Attorney Affirmation**

The undersigned, an Attorney at Law of the State of New York and (one of) the attorney(s) of record

for  LEGAL SERVICING, LLC, SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK        (one of) the ____Plaintiff____ (s)

in the above entitled action, affirms that the disbursements specified have been or will be made or incurred.

My client is entitled to a Judgment:

☒ on Default, due to the fact that the Defendant(s) did not file an answer within the time permitted by law.

☐ based upon: ☐ Inquest Court  ☐ Inquest Clerk  ☐ Judge's Order  ☐ Arbitration  ☐ Trial

☐ Failure to Comply with Stipulation      ☐ Other (specify)_____

I affirm that I have complied with the provisions of CPLR § 3215(g)

☐ as per annexed Affidavit or Affirmation

☒ by personally enclosing a copy of the Summons and Complaint in a First Class mail post-paid sealed envelope

properly addressed to the Defendant's    ☒ place of residence;*    ☐ place of employment;*  ☐ last known

residence:*

☐ by personally enclosing a copy of the Summons and Complaint, accompanied by a notice to the corporation that

service has been made pursuant to BCL § 306, in a First Class mail post-paid envelope properly addressed to the

defendant corporation at its last known corporate address:*

*(Insert address here) at   4058 PRATT AVENUE, BRONX, NY 10466              on   JULY 11, 2005

and depositing the envelope in an official depository under the exclusive care and custody of the United States

Postal Service. The envelope bore the legend "Personal and Confidential" and there was no indication on the

outside of the envelope that the communication was from an attorney or that it concerned an alleged debt, and it

has not been returned by the Postal Service.

I further affirm, under the penalties of perjury, that the above statements herein are true.

Rodney A. Giove, Esq.
Attorney for Plaintiff
2801 Wehrle Drive, Suite 5
Williamsville, NY 14221
716-565-9300

Dated: AUGUST 2, 2005                    Affirmed:

## JUDGMENT

Now, on Motion of ____RODNEY A. GIOVE, ESQ.____

the attorney for  LEGAL SERVICING, LLC, SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK        ,it its adjudged that the

following Judgment Creditor(s), residing at the address(es) indicated below, recover of the following Judgment Debtor(s) at the

address(es) indicated:

| Judgment Creditor | Judgment Creditor's Address | Judgment Debtor | Judgment Debtor's Address |
|---|---|---|---|
| 1. LEGAL SERVICING, LLC, SUCCESSOR IN INTEREST TO CHASE MANHATTAN BANK | 2801 WEHRLE DRIVE, SUITE #5 WILLIAMSVILLE, NY 14221 | 1. BERNARD LEWIS | 4058 PRATT AVE, BRONX, NY 10466 |
| 2. | | 2. | |
| 3. | | 3. | |

the sum of __ $ 15,844.06 __ as calculated above, and that the Judgment Creditor(s) have execution therefor.

## ENTRY OF JUDGMENT

In accordance with CPLR § 3215(a), if this Judgment is entered against less than all Defendants, this action is ordered

severed as to any remaining Defendant(s).

Date:_____          Chief Clerk:_____          By _____

CIV-GP-55(Revised 11/03)-i

DATE   AUG 3 0 2005

TRANSCRIPT ISSUED FOR $ 15,844.06

AUG 1 7 2005

NEW YORK CIVIL COURT
05 SEP -1 AM 9:02

# EXHIBIT K

**DISTRICT COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU, 10th JUDICIAL DISTRICT**

---

**PEOPLE OF THE STATE OF NEW YORK,**

      **-against-**                            **FELONY COMPLAINT**

**WILLIAM SINGLER and**
**ZMOD PROCESS CORPORATION, INC.,**
**dba AMERICAN LEGAL PROCESS, INC.,**

                             **Defendants.**

---

I, **Sandra Migaj,** an Investigator with the New York State Attorney General's

Office, deposes and states that the defendants, **WILLIAM SINGLER and ZMOD**

**PROCESS CORPORATION, INC., DBA AMERICAN LEGAL PROCESS, INC.,** at

the dates and times indicated below, committed the following crimes:

      **CRIMINAL POSSESSION OF A FORGED INSTRUMENT in the SECOND**

**DEGREE**, in violation of § 170.25 of the Penal Law of the State of New York (a class D

felony), and

      **OFFERING A FALSE INSTRUMENT FOR FILING in the FIRST DEGREE**, in

violation of § 175.35 of the Penal Law of the State of New York (3 Counts) (a class E

felony),

      **SCHEME TO DEFRAUD in the SECOND DEGREE**, in violation of § 190.65(1)(a)

(a class E felony), and

      **NOTARY PUBLIC or COMMISSIONER OF DEEDS; ACTING WITHOUT**

**APPOINTMENT; FRAUD IN OFFICE**, in violation of § 135-a(2) of the Executive Law of

the State of New York (a class A misdemeanor) (defendant Singler only),

      in that the defendants, on or about February 26, 2008 in the Village of Lynbrook,

County of Nassau, State of New York, when knowing that it was forged and with intent to defraud, deceive and injure another, uttered and possessed a forged instrument; to wit: a public record that was to be filed with a public office; and that the defendants, on or about January 16, 2007, March 28, 2007 and February 26, 2008, in the Village of Lynbrook, County of Nassau, State of New York, when knowing that a written instrument contained a false statement and false information, and with the intent to defraud the state and any political subdivision, public authority and public benefit corporation of the state, offered and presented to a public office, public servant, public authority and public benefit corporation, with the knowledge and belief that it would be filed with, registered and recorded in and otherwise become a part of the records of such public office, public servant, public authority and public benefit corporation; and that the defendants, between on or about January 1, 2008, and on or about October 8, 2008June 30, 2008, within the Village of Lynbrook, County of Nassau, State of New York, engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons and to obtain property from ten or more persons by false and or fraudulent pretenses, representations and promises and so obtained property from one or more such persons; and that the defendant William Singler, on or about February 26, 2008, within the Village of Lynbrook, County of Nassau, State of New York, a notary public, in the exercise of the powers, and in the performance of the duties of such office, practiced fraud and deceit.

## **FACTUAL BASIS**

These crimes were committed under the following circumstances:

1.     This felony complaint is based upon information and belief, with the grounds for the deponent's information and the source for her belief being the investigation conducted by the New York State Attorney General's Office ("NYSAG"); public records filed in the Genesee, Monroe and Orange County Clerk's Offices; information obtained from the Genesee, Monroe and Orange County Clerk's Offices; a review of the ProcessCase.com database; my review of the audit of ProcessCase.com by the New York State Unified Court System Office of Court Administration, conversations with those individuals listed below; and observations made by NYSAG investigators and others.

2.     I have been employed by the NYSAG for 19 years.  During that time, I have received training, and am familiar with the statutes, rules and regulations (specifically CPLR Article 3, Sections 301-312) regarding the proper method for service of process. In addition, as part of my duties as a NYSAG investigator, on several occasions, I have served process upon individuals through personal or substituted service.

3.     Since February 2008, I have been involved in an investigation regarding ZMOD Process Corporation, Inc., dba American Legal Process ("ALP"), a process serving company who's primary clients are high volume debt collection law firms from throughout the state to serve process on individuals who owed money to the law firm's clients.  The law firms paid and relied upon ALP for their services including the purchase of index numbers from the courts and clerks' offices, service of process on debtors and the filing of affidavits of service at those courts and clerks' offices.  Through the course of my investigation, I have identified over fifteen law firms that hired ALP to effectuate service and file affidavits of service.

4.     Based upon my training and experience, I know that before a creditor

seeking to collect a debt can garnish a debtor's paycheck or seize bank accounts and personal property, the creditor must initiate a lawsuit and then obtain a judgment. Such a case is commenced by purchasing from the court a unique index number identifying a particular case. Subsequently, a default judgment may only be secured from a court and filed in the clerk's office after a debtor has been given notice of the legal proceeding through service of the legal papers associated with the matter; an affidavit attesting to that fact has been filed with the court; and the debtor has had the opportunity to respond and contest the creditor's claims; and the debtor has failed to respond and contest the action. I am informed by George Danyluk, Internal Audit Manager ("Danyluk") of the Office of Court Administration that, unless service of the legal papers is made in accordance with this procedure, the resulting judgment may be void or voidable. If a process server claims that proper service upon a party has been made, the server must provide the court clerk where the action is pending with an affidavit detailing the manner and method by which the alleged service was made. To effectuate proper service of process, the server must either have personally served the named party, or if the server was unable, with due diligence, to find the party or a person of suitable age and discretion, then the server may attach the legal papers to the door at the party's address and then mail a copy of the papers to the location (so-called "nail and mail" service). I am further informed by George Danyluk that case law has generally construed due diligence to require that the server make three attempts on three different dates and times to effectuate personal service before resorting to "nail and mail" service.

5.      On April 6, 2009, I reviewed the Certificate of Incorporation which was filed with the State of New York Department of State on June 8, 2006, for ZMOD Process Corporation, Inc., dba American Legal Process, Inc., located at 381 Sunrise Highway,

Lynbrook, New York, and determined that William Singler ("Singler") is listed as the President and Chief Executive Officer of ALP.

6.    October 1, 2008, the NYSAG seized paper and electronic records from ALP's offices at 381 Sunrise highway, Lynbrook, New York during the execution of a court-ordered search warrant.  From these records, I learned that ALP maintained an electronic database called ProcessCase.com, a company located in the New York City and Long Island areas, which detailed the information relating to the cases for which ALP was hired to effectuate service.  The NYSAG obtained a copy of this data base.

7.    The ProcessCase.com database contains over 102,000 records of service of documents, of which 98% were summonses and complaints for ALP from January 1, 2007 through October 8, 2008.  Each record of service contained, *inter alia*, the following:

    a.    The date when respondents sent the document to be served to the process server,

    b.    The date when respondents (or its process server) purchased the index number,

    c.
    d.    The name and address of the defendant, name of the server and notary,

    e.    The date and time when the process server served the document,

    f.    When the process server used nail-and-mail service, the dates and times of each service attempt, the date the summons and complaint was mailed to the defendant, and the name and address of the neighbor.

    f.    The date when an affidavit of service reflecting the information about the service was sworn to, mailed to and filed with the court.

8.    I am informed by Danyluk that the ProcessCase.com data base shows that of the over 102,000 cases, in approximately 73,395 instances, Singler was the notary, despite the fact that the ALP servers were located all across New York State.  Further,

that when a process was made by nail and mail service, for more than 74% of the cases, the party defendant did not answer and the creditor sought and obtained a default judgment.

9.    I am further informed by Danyluk that the ProcessCase.com database shows that, on 3,512 occasions, respondents' servers served, or attempted to serve, documents on (I) different defendants (ii) at two different locations (iii) on the same date and (iv) at the same time.  For ease of reference, I refer to the service of process and the attempted service of process as "service attempts" or "attempted service".  For example, ProcessCase shows that on 407 occasions, one of respondents' servers, Raymond Bennett, was at two or more different locations at the same time.  On 39 occasions, the ProcessCase shows Bennett was at three locations at the same time, on 3 occasions he was at four locations at the same time, and on one occasion he was at five locations at the same time.

10.    I am also informed by Danyluk that a table was created demonstrating that ALP's servers statewide being at two or more locations at the same time.

| Name | Instances at 2 locations or more | Instances at 3 or more locations (included in the previous total) |
|---|---|---|
| Raymond Bennett | 407 | 39 times at 3 locations at same time, 3 times at 4 locations, and once at 5 locations at same time |
| Dunham Toby Tyler | 839 | 39 times at 3 locations at same time, and once at 4 locations at same time |
| Gene Gagliardi | 450 | 18 times at 3 locations at same time, and twice at 4 locations at same time |
| Drefel Grimmett | 388 | 9 times at 3 locations at same time |

| Name | Instances at 2 locations or more | Instances at 3 or more locations (included in the previous total) |
|------|------|------|
| Bill Matzel | 199 | 15 times at 3 locations at same time |
| John Hughes | 184 | 4 times at 3 locations at same time |
| Andrea D'Ambra | 168 | 6 times at 3 locations at same time |
| Greg Tereshko | 165 | 3 times at 3 locations at same time |
| Diana Lentz | 134 | 2 times at 3 locations at same time |
| Herb Katz | 125 | 9 times at 3 locations at same time |
| Bernard Holder | 81 | 1 time at 3 locations at same time |
| Adnan Omar | 69 | 1 time at 3 locations at same time |
| Annette Forte | 68 | 2 times at 3 locations at same time |
| Issam Omar | 51 | 1 time at 3 locations at same time |
| Beth Eubank | 42 | 1 time at 3 locations at same time |
| Michelle Miller | 42 | 4 times at 3 locations at same time |
| | | |

11.    Danyluk further informed me that the ProcessCase database shows that on approximately 13,040 occasions fifty-five of ALP' servers attempted to serve a document on a defendant before the document was transmitted from ALP to the process server, and that on 521 occasions, twenty-two of ALP' servers attempted to serve a summons and complaint on a defendant before the plaintiff had purchased an index number, and filed the summons and complaint with the appropriate court or count clerk.

12.    On April 3, 2009, I spoke with Emily Katt ("Katt"), from  Newburgh in Orange County, New York.  Katt informed me that she has been a process server

employed by ALP since January 2008, and that she was hired by Singler. Katt stated
that throughout the course of her employment, she occasionally spoke with Singler on
the telephone regarding her employment with ALP. Katt also indicated that she received
instructions from ALP employees Mary Hughes ("Hughes"), the office manager of ALP
from August 2005 to December 2008, and Linda Hand ("Hand"), who was ALP's Process
and Court Service Investigation manager.

13.     Katt described ALP's procedures for serving process as follows: ALP
would mail Katt legal papers to serve on a party, as well as a worksheet on which to
record the method, dates and times of service. Starting in March 2008, Katt, at the
direction of an ALP employee, purchased index numbers from various courts that had
jurisdiction over the cases to which she was assigned, and then she completed the
service of process upon the named defendant as she had been directed by ALP. After
Katt completed the worksheets, she would scan and email them to ALP at the Lynbrook
office. Katt did not complete or sign any affidavits of service during this period; and Katt
did not go to ALP's offices in Lynbrook, New York. Katt further stated that at the
beginning of her employment with ALP, Hand told her that ALP would mail out the copies
of the legal papers to the named party. Katt stated that she did not mail any summons
and complaint to a party prior to August 2008.

14.     Katt told me that in the spring of 2008 (which was after NYSAG's
investigation into ALP's practices became known publicly), she first began to receive
from ALP affidavits of service that had been prepared for her to sign regarding the cases
assigned to her. Katt told me that Hand at ALP told her to sign them and have her
signature notarized by a local notary. Prior to the spring of 2008, Katt claimed that she
was unaware that affidavits of service had been created from the worksheets she

submitted to ALP and subsequently filed with the courts. At some point after April, 2008, Katt asked Singler on the phone who had been signing the affidavits of service on her behalf in cases in which she had served process before the spring of 2008. Singler told Katt that he had signed the affidavits of service himself.

15.    I showed Katt a copy of an affidavit of service allegedly sworn to on February 26, 2008, regarding the case of Household Finance Corporation III v. Marie M. Esperance, which had been filed in the Supreme Court of the State of New York, County of Orange, on March 3, 2008 ("Esperance affidavit"). The affidavit stated that the alleged method of service was nail and mail. Two printed names and two corresponding signatures appear at the bottom of the Esperance affidavit: one for the alleged server and the other for the notary. The server name is listed as Emily Katt and that signature purports to have been notarized by Will Singler in Nassau County. Katt told me that she did not sign the Esperance affidavit and that she did not give anyone permission to sign her name to that or any other document.

16.    The Esperance affidavit alleges that Katt mailed a copy of the summons and complaint via United States mail on February 26, 2008. Katt denied that she had ever mailed the summons and complaint to Ms. Esperance, the named party on the` purported affidavit of service.

17.    The Esperance affidavit also alleges that Katt attempted personal service on the Ms. Esperance, the named party, on February 19, 2008, at 8:11 pm; February 20, 2008, at 7:52 am; and February 21, 2008, at 1:26 pm.   Katt acknowledged that she had fabricated the first two claimed attempts at service in the worksheet she gave to ALP. Katt stated that, in her initial conversation with Hand of ALP, Hand told her in substance that: "The law says you have to go three times, but I know that it is a lot of driving, so if

you go once you can just tack it." Katt further indicated that in those cases when she purchased the index number from the court, she would make only one attempt at service on the same day. Katt would then fabricate two false previous dates of attempted service, and record them on the worksheets she sent to ALP. Katt recalls that Hughes at ALP notified Katt in substance that she "had to fix her paperwork because your attempts were before the index number was purchased. Wait a couple of days so your dates don't conflict."

18.    I have reviewed documents and records seized from ALP pursuant to the a court-ordered search warrant described in paragraph 5 above at 381 Sunrise Highway, Lynbrook, New York, on October 1, 2008   Included in the seized material is a three-page paper document ("Premature Serve List"). The first page contains a handwritten note that states, "Hey - need to let the P/S's know that they cannot use day B4 index bought same day as 1st attempt." Hughes, Hand and Nancy Greco (see below), all former ALP employees, told me that this was Singler's handwriting. Attached to the first page of this document is a two-page list with the following heading on each page: "INDEX PURCHASED 01/01/08 to 06/30/08 GREATER THAN FIRST ATTEMPT DATE". The document has the following columns:  Job ID; Document Type; Date Index Purchase; Date Given to Process Server; Attempted Date/Time; and Process Server. The Esperance case referred to above is included on this list, and identifies Emily Katt as the alleged server.  I have reviewed records seized from ALP which indicate that during this period, ALP had over 15 law firms as clients.

19.    There are more than 100 cases on this two-page list.  In each case, the first purported attempt at service is before the date that the index number was purchased, and, according to ALP records, before the court papers were even given to

the servers. I have compared the information on this list to that contained in the ProcessCase.com database and found it to be consistent. I have also received and reviewed affidavits of service that have been filed in the various courts throughout the State relating to the Job IDs on the list.

20.    On April 2, 2009, I spoke with Mary Hughes formerly of ALP in Levittown, Nassau County, New York. Hughes stated that she was ALP's office manager from August 2005 to December 2008. Hughes confirmed that ALP's procedure was to give the servers a worksheet on which to record the alleged dates and times of attempted service. ALP employees would then enter the information on the worksheet into ProcessCase.com and generate an affidavit of service.

21.    Hughes informed me that ALP did not send the affidavits of service to the various process servers to sign until approximately April 2008. Hughes told me that she never met many of ALP's servers. She indicated that in the time that she worked for ALP, she had no knowledge of servers Emily Katt and Diana Lentz (see below) ever coming to the ALP offices in Nassau County. Hughes further stated that, before April 2008, she saw unsigned and unnotarized affidavits of service in Singler's office. She later observed that these affidavits were completed, purported to contain the server's signature and did contain Singler's signature as the purported notary. Hughes stated that ALP then sent these affidavits directly to the court directly. Hughes further stated that she saw Singler request that some of the servers send him samples of their signatures. For rush jobs, Singler instructed Hughes to sign his name as the notary, which she did. Also, prior to April 2008, ALP, not the servers, sent out all of the mailings to the debtors in nail and mail situations. Hughes stated that any returned mail (situations in which the party had either moved or died, for instance, and thus could not

have received the mailed service) was placed in Singler's office; and that she never saw Singler open any of the returned mail, even though there were many returned envelopes.

22.    Hughes informed me that, on many occasions, ALP received servers' worksheets in nail and mail situations that listed only one attempt at personal service. On these occasions, Singler instructed Hughes to fabricate and enter two other dates and times of claimed attempted service.  When servers called the ALP offices to complain about rush jobs, Hughes indicated to me that she overheard Singler tell the servers to "just tack it" to the door.  Hughes stated that Singler also told Hand to give the servers the same instructions.

23.    Hughes told me that Singler sometimes requested that she send out a memo to the servers outlining the procedures for the worksheets. On April 11, 2008, I was involved in the execution of a search warrant executed at the residence of a former ALP process server Annette Forte ("Forte"), located at 12528 Broadway, in the Town of Alden, Erie County, New York.  I have reviewed the records seized.

24.    Included in the records found at Forte's residence was a fuchsia-colored 8 ½ by 11-inch piece of paper that contained the following information:

TO ALL PROCESS SERVERS:

ALL NAIL AND MAIL SERVICES MUST HAVE AT LEAST THREE ATTEMPTS (INCLUDING SERVICE):
-ONE EARLY MORNING TIME - BEFORE 9:00 AM
-ONE AFTERNOON TIME - BETWEEN 12:00 PM AND 5:00 PM
-ONE EVENING TIME - FROM 6:00 TO 11:00 PM
IF YOU DO NOT HAVE ONE OF EACH, YOUR WORK WILL BE RETURNED TO YOU !!!! WHEN YOU DON'T DO THIS, IT MEANS THAT I HAVE TO DO IT, AND IT TAKES A LOT OF TIME FOR ME TO CHANGE HUNDREDS OF WORKSHEETS. I APPRECIATE YOUR COOPERATION WITH THIS. THANKS. [emphasis added]
MARY

25.    On April 2, 2009, I spoke to Linda Hand in Floral Park, Nassau County, New York.  Hand stated that she worked at ALP for Singler from February 2007 to December 2008.  During the course of her employment, Hand heard Singler tell the servers that "No one is following you," and Singler told Hand that she should also tell servers this; Hand did so.  Hand also told me that she never saw Singler open the returned mail referred to above, and that, prior to April 2008, the returned mail was routinely thrown in the garbage.

26.    Annexed hereto is a photograph taken on October 1, 2008, in front of Singler's desk in his office at ALP.  The photograph shows boxes overflowing with 1,042 envelopes returned by the United States Postal Service to respondents as undeliverable.  These envelopes contained summonses and complaints that had been mailed by respondent (or their servers) to defendants who they had served by nail-and-mail service.

27.    On April 2, 2009, I spoke with Nancy Greco ("Greco") in East Meadow, Nassau County, New York.  Greco stated that she was ALP's bookkeeper from February 2005 to December 2008.  Greco told me that she heard Singler instructing the process servers over the phone to "just tack it", and "just get it done."   Greco also told me that she saw faxes coming in to ALP that contained signature samples of various servers.

28.    I am informed by NYSAG Senior Investigator Paul Scherf that he spoke to Diana Lentz ("Lentz"), an ALP server, on June 11, 2008, in Buffalo, Erie County, New York.  Lentz provided copies of email between herself and ALP.  One email, dated December 22, 2006, is from Singler to Lentz with a copy to Hughes, in which Lentz tells Hughes, "Hi Mary, Job ID 36525 served 12/22/2006 @ 1:13 pm, nail and mail, confirmed by 3 Bleakre Road, 14609. Light grey house, affixed to front door.  This was faxed to me

yesterday, it's an old case. Thanks, Diana." The email response from Singler states, "Hi Diana, Thanks for getting it done... Remember we need 3 att on 3 diff days. Could u pls confirm the nail date as of 12/23/06,... as u and the client know, we and u received the case the case fax on 12/21, so u must have made ur first attempt that night, tried again on the 12/22 and ur 3rd attempt must have been on the 12/23...Thank u for correcting ur records. U understand.  This is a tricky one.. Best, Will."

29.    On April 8, 2009, I received from the Monroe County Clerk's Office a copy of an affidavit of service relating to a nail and mail service at 12 Bleaker Road, Rochester, New York 14609, which was filed on January 16, 2007. This affidavit of service was captioned Capital One Bank v. Dorothy Nasello. The dates and times of the attempts at service were, December 21, 2006, at 07:40 pm, December 22, 2006, at 08:12 am, and December 23, 2006, at 01:13 pm. This affidavit of service bears the name and signature of Diana Lentz as the server and the name and signature of Annette Forte as the notary and the "sworn-to date" is December 26, 2006.   The affidavits indicate that they were sworn to in Nassau County, though the notary information contained on the affidavit of service indicates that Annette Forte is a Notary Public qualified in Monroe County.

30.    Lentz also gave Sr. Inv. Scherf an email dated March 26, 2007, from Hughes to Lentz regarding a "rush service." The email states: "Hi Diana, We just sent you two cases last week that I need to see if you can rush them. The numbers are 50588 and 50589, Richalene A Pfendler and Bruce P Pfendler in Genesee County (same case, but two different addresses). Can you please serve these ASAP, but only tack them? The index number is expiring next week, so I am going to enter them as a nail and mail and send the AOS to court today. If you could just tack them at the two

addresses and let me know, I would really appreciate it. Thanks so much."

31.    On April 8, 2009, I received from the Genesee County Clerk's Office a copy of two affidavits of service relating to a nail and mail service on Richalene A and Bruce P Pfendler of Genesee County, which were filed on March 28, 2007. The affidavits of service were captioned <u>JP v Morgan Chase Bank, N.A. v. Richalene A Pfendler and Bruce P Pfendler.</u> At the bottom of one of the affidavits is a printed number "50588" with the place of residence being 1804 Linwood Drive (private house), Lindwood, Is it Linwood or NY, 14486, and the dates and times of the attempts at service were, March 12, 2007, at 07:19 pm, March 16, 2007, at 08:03 am, and March 23, 2007, at 02:06 pm. At the bottom of the other is a printed number "50589" with the place of residence being 33 Lake Street Apt #A, LeRoy, NY 14482 and the dates and times of the attempts at service were, March 12, 2007, at 07:48 pm, March 16, 2007, at 08:26 am, and March 23, 2007, at 02:39 pm. The affidavits of service bear the name and signature of Diana Lentz as the server and the name and signature of William Singler as the notary and the sworn to date is March 26, 2007. The affidavits indicate that they were sworn to in Nassau County.

32.    On February 4, 2009, Sr. Inv. Scherf spoke with Andrea D'Ambra in Middle Island, Suffolk County, New York. D'Ambra stated that she had worked for ALP as a server since May 2007. D'Ambra told Sr. Inv. Scherf that she did not sign affidavits of service until May or June of 2008 when she was instructed by either Singler or Hand that this was now going to be required. She further told Sr. Inv. Scherf that Singler told her, in substance, that because of the cost of gas and the time required, she was not expected to attempt service three times.

33.    On April 1, 2009, I spoke with D'Ambra in Happauge, Suffolk County, New

York. I showed her a copy of an affidavit of service dated September 22, 2008,

regarding a case entitled <u>GE Money v. Edward Medina</u>, that had been filed in the District

Court of Suffolk on September 28, 2008. The affidavit of service claimed that the server

was Andrea D'Ambra with a signature, and that the notary was Linda Hand, with her

signature. D'Ambra indicated to me that this was her signature.

34.    I showed D'Ambra three affidavits of service that had been included on the

above-referenced Premature Server List. The three affidavits related to three lawsuits

filed on February 13, 2008, in Suffolk County District Court, in which the plaintiff was

Capital One Bank and the three defendants were Neil Vigorito, Susan Seminara and

Mark DiRosa. In addition, all three involved alleged nail and mail service and the index

number purchase date was February 5, 2008. In all three affidavits, the claimed first

attempt at service was February 1, 2008; the second claimed attempt at service was

February 2, 2008; and the third and final claimed attempt at service was February 9,

2008. All three bear the name and purported signature of Andrea D'Ambra and the

signed name "William Singler " appears as the notary, with a date of February 11, 2008.

D'Ambra stated that she did not recognize the signature on the three affidavits of service

as hers.

Dated: April __, 2009

_____, New York

False statements made herein are punishable as a
Class A misdemeanor pursuant to Penal Law § 210.45.


_____

Sandra Migaj
Investigator
New York State Attorney General's Office

# EXHIBIT L

- **Meta**
    - Log in
    - Entries RSS
    - Comments RSS
    - WordPress.org

## Long Island Process Serving Company Owner Arrested Today for "Sewer Service"

Posted on Tuesday (April 14, 2009) at 8:45 pm to **Bankruptcy and Society**

**Current Events**

*Written by Craig D. Robins, Esq.*



**Many consumers have been abused by the egregious fraud perpetrated by American Legal Process, a Lynbrook company used by many high-volume Long Island debt collection law firms**

Yesterday I posted news about Attorney General Andrew Cuomo announcing an investigation into process servers who fail to properly serve lawsuit papers (**Attorney General Investigating Process Servers for Taking Illegal Shortcuts** ).

Today, Cuomo announced the arrest of the president of Long Island-based American Legal Process (William Singler) for engaging in a fraudulent business scheme in which the company allegedly failed to provide proper legal notification to thousands of New Yorkers facing debt-related lawsuits, causing them unknowingly to default and have costly judgments entered against them without the chance to respond or defend themselves.

This process serving company was apparently hired by many high-volume debt collection law firms in New York to serve collection lawsuit papers. This usually consisted of a summons and complaint which notifies consumers that they are being sued. American Legal Process (ALP) often neglected to actually serve the papers as required by law, instead engaging in the highly illegal practice of "sewer

service," according to the charges.

As a result, many consumers were subsequently harmed when their bank accounts were restrained and their wages garnished. I have represented many Long Island bankruptcy clients who needed immediate bankruptcy protection because of this.

The charges also include allegations that ALP engaged in additional fraud by covering up their illegal activity by falsifying documents, submitted to courts across the state, swearing that proper legal notification had been duly served upon these individuals.

In addition, Attorney General Cuomo announced his intent to sue one of ALP's largest customers, the the high-volume Long Island debt collection firm of Forster & Garbus, for violations of New York State's consumer protection laws. According to Cuomo, Forster & Garbus used ALP to serve over 28,000 summons and complaints across the state, but failed to supervise the company and relied on legal papers from ALP that it knew or should have known were false. Many of my Long Island bankruptcy clients have been sued by Forster & Garbus.

The investigation also involved some incredible work by the Internal Audit Unit of the New York State Unified Court System, which reviewed more than 100,000 records of affidavits of service.

As a result of the investigation and the charges against ALP, there will certainly be a major shakeup in New York collections practices and the likelihood of numerous class-action suits. It would not surprise me if some of Long Island's largest collection law firms are driven out of business. It also appears that the Attorney General may bring charges against other process service companies as well. Be Sociable, Share!



Related Posts:

1. **Long Island Bankruptcy Lawyers Have Been Very Busy**
2. **Chrysler Bankruptcy Will Lead to Many Long Island Personal Bankruptcy Filings**
3. **Can Same-Sex Married Couples File Joint Personal Bankruptcy?**
4. **New Bankruptcy Chapter: Chapter 14 ???**

🖨 **Print This Post**
Be Sociable, Share!



**2 Responses to "Long Island Process Serving Company Owner Arrested Today for "Sewer Service""**

# EXHIBIT  M

At a Special Term of the Supreme Court, held in
and for the County of Erie at the Erie County
Courthouse, in the City of Buffalo, New York, on
the 2⊥ day of July 2009.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
-----------------------------------------------------------------X

In the Matter of the petition of HONORABLE ANN
PFAU, Chief Administrative Judge of the New York
State Unified Court System,

                         Petitioner,                      Index No. *I 2009 - 8236*

        -against-                         **ORDER TO SHOW CAUSE**

FORSTER & GARBUS; SHARINN & LIPSHIE, P.C.;
KIRSCHENBAUN & PHILLIPS, P.C.; SOLOMON AND
SOLOMON, P.C.; GOLDMAN & WARSHAW, P.C.;
ELTMAN ELTMAN & COOPER; ERIC M. BERMAN, P.C.;
STEPHEN EINSTEIN & ASSOCIATES, P.C.; FABIANO
& ASSOCIATES, P.C.; JONES, JONES, LARKIN & O'CONNELL, LLP;
PANTERIS & PANTERIS, LLP; ZWICKER & ASSOCIATES P.C.;
RELIN, GOLDSTEIN & CRANE LLP; WOODS OVIATT GILMAN LLP;
LESCHACK & GRODENSKY, P.C.; HAYT, HAYT & LANDAU LLP;
PRESSLER and PRESSLER, LLP; JAFFE & ASHER LLP;
MULLEN & IANNARONE, P.C.; ARNOLD A. ARPINO & ASSOCIATES PC;
HOUSLANGER & ASSOCIATES, PLLC; MANN BRACKEN, LLP;
SMITH, CARROAD, LEVY & FINKEL; MCNAMEE, LOCHNER,
TITUS & WILLIAMS, P.C.; THOMAS LAW OFFICES, PLLC; FLECK,
FLECK & FLECK; WOLPOFF & ABRAMSON, LLP;
ERIC W. OSTRAGER; COHEN & SLAMOWITZ, LLP ;
CULLEN and DYKMAN LLP; WINSTON and WINSTON, P.C.;
COOPER ERVING & SAVAGE LLP; ROBERT P. ROTHMAN, PC;
GERALD D. DE SANTIS; GREATER NIAGARA HOLDINGS, LLC;
RODNEY A. GIOVE; ADVANCED LITIGATION SERVICES, LLC;
and JASON J. CAFARELLA;

                        Respondents.
-----------------------------------------------------------------X

      Upon reading and filing the annexed verified petition of the Honorable Ann Pfau,

Chief Administrative Judge of the New York State Unified Court System, verified on July 9,

2009, and the affirmation of James M. Morrissey, Assistant Attorney General of the New York

State Attorney General ("OAG"), affirmed to on July 17, 2009; the affidavits of Aric Andrejko,

Jmm
216 · NF · OH

Associate Internal Auditor for the Internal Audit Unit of the New York State Unified Court System ("UCS"), sworn to on July 6, 2009; Bradely J. Bartram, Intelligence Analyst with the Investigations Division of the OAG, sworn to on June 30, 2009; George Danyluk, Audit Manager for the Internal Audit Unit of the UCS, sworn to on July 15, 2009; Brian Jasinski, Internal Auditor for the Internal Audit Unit of the UCS, sworn to on July 6 , 2009; Sylvia Mahoney, Senior Court Office Assistant with the Buffalo City Court, sworn to on June 30, 2009; Sandra J. Migja, Investigator with the OAG, sworn to on June 29, 2009; OAG Investigator Kathleen Coppersmith, sworn to on June 24, 2009; OAG Investigator Ralph Dorismond, sworn to on June 24, 2009; OAG Senior Investigator Brian Ford, sworn to on June 24, 2009; OAG Investigator Jeffrey D. Haber, sworn to on June 24, 2009; OAG Investigator Andrea Hughes, sworn to on June 24, 2009; OAG Investigator Cynthia Kane, sworn to on June 23, 2009; OAG Investigator Joseph T. Kelly, sworn to on June 24, 2009; OAG Senior Investigator Judith L. Koerber, sworn to on June 25, 2009; OAG Investigator William L. Lightbody, sworn to on June 24 and July 8, 2009; OAG Investigator Douglas Lindamen, sworn to on June 24, 2009; OAG Investigator Frank Lingeza, sworn to on June 24, 2009; OAG Investigator Gerald J. Matheson, sworn to on June 24, 2009; OAG Investigator Paul Matthews, sworn to on June 26, 2009; Investigator John G. Phillips, sworn to on June 24, 2009; OAG Senior Investigator Peter Schwindeller, sworn to on June 24, 2009; OAG Investigator Chad A. Shelmidine, sworn to on June 25, 2009; OAG Senior Investigator Salvatore J. Ventola, sworn to on June 30, 2009; OAG Investigator Jon K. Wescott, sworn to on June 25, 2009, and the exhibits thereto, and upon the motion of ANDREW M. CUOMO, Attorney General of the State of New York, attorney for the petitioner, it is

ORDERED that the respondents in the above-entitled action show cause before Part 8 of this Court, at a Special Term thereof, to be held at the Erie County Courthouse, 25 Delaware Avenue, Buffalo, New York on the 2 5 day of August/September, 2009, at 9:30 2:00 pm

o'clock in the forenoon of that day, or as soon thereafter as counsel may be heard, why an order should not be made pursuant to CPLR § 5015(c) and (d):

    1.    Ordering respondents to identify those actions and proceedings commenced in the judicial districts of New York State (i) in which they appeared, as a party and/or counsel, and (ii) for which American Legal Process, served the summons and complaint, or the notice of petition or order to show cause and petition, and (iii) for which a default judgment was taken, or for which an application for a default judgment is pending (referred to herein as "identified actions and proceedings");

    2.    Ordering respondents to notify the parties to the identified actions and proceedings ("interested parties") by first class mail to the last known residence, or actual place of business, using the notice form annexed as Exhibit N to the motion papers, of the pendency of this special proceeding, and of their right to be heard;

    3.    Requiring that respondents file with the Court a schedule of interested parties to which they sent the notice, including (i) the date each notice was sent, (ii) the name and address to which the notice was sent, (iii) the amount of the default judgment, (iv) the amount paid by the judgment-debtor after the default judgment was entered, if any;

    4.    Providing interested parties with an opportunity to be heard herein;

    5.    Vacating and setting aside default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a default judgment, unless the party seeking to obtain or enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3;

    6.    With respect to those default judgments that are vacated and set aside, directing restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal;

7.    Enjoining the respondents from seeking to obtain a default judgment against any individual defendant as to whom the respondent used American Legal Process to serve the summons and complaint, or the notice of petition or order to show cause and petition, until such time as the respondents can show evidence of service other than an affidavit of service provided by American Legal Process; and

8.    For such other and further relief as the court deems just and proper; and it is further

ORDERED that the petitioner shall file with the Erie County Clerk and the Court an electronic copy of the exhibits, and a paper copy of Exhibits C-P, and shall serve upon the respondents herein an electronic copy of the exhibits; and it is further

ORDERED that the Erie County Clerk shall seal Exhibits A and B, electronic databases containing personally identifiable information of New York State residents, and may not show Exhibits A and B to anyone other than a party, or by Order of the Court, but that such exhibits shall be provided to the respondents; and it is further

ORDERED that Pursuant to C.P.L.R. § 403(b), answering papers, if any, are required to be served at least two days before the return date of this special proceeding. If, however, this order to show cause is served at least twelve days before the return date, answering papers, if any, are required to be served at least seven days before the return date.

SUFFICIENT CAUSE to me appearing therefore,

LET service of one copy of this order and supporting papers on respondents by delivery of the same to their actual places of business by July 3 1, 2009 be deemed due and sufficient service hereof.

**GRANTED**

JUL 21 2009

BY _Carol M. Williams_
CAROL M. WILLIAMS
COURT CLERK

HON. TIMOTHY J. DRURY, J.S.C.

# EXHIBIT  N

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
------------------------------------------------------------------X

In the Matter of the petition of HONORABLE ANN
PFAU, Chief Administrative Judge of the New York
State Unified Court System,

                       Petitioner,                         Index No.

      -against-

FORSTER & GARBUS; SHARINN & LIPSHIE, P.C.;        **VERIFIED PETITION**
KIRSCHENBAUN & PHILLIPS, P.C.; SOLOMON AND
SOLOMON, P.C.; GOLDMAN & WARSHAW, P.C.;
ELTMAN ELTMAN & COOPER; ERIC M. BERMAN, P.C.;
STEPHEN EINSTEIN & ASSOCIATES, P.C.; FABIANO
& ASSOCIATES, P.C.; JONES, JONES, LARKIN & O'CONNELL, LLP;
PANTERIS & PANTERIS, LLP; ZWICKER & ASSOCIATES P.C.;
RELIN, GOLDSTEIN & CRANE LLP; WOODS OVIATT GILMAN LLP;
LESCHACK & GRODENSKY, P.C.; HAYT, HAYT & LANDAU LLP;
PRESSLER and PRESSLER, LLP; JAFFE & ASHER LLP;
MULLEN & IANNARONE, P.C.; ARNOLD A. ARPINO & ASSOCIATES PC;
HOUSLANGER & ASSOCIATES, PLLC; MANN BRACKEN, LLP;
SMITH, CARROAD, LEVY & FINKEL; MCNAMEE, LOCHNER,
TITUS & WILLIAMS, P.C.; THOMAS LAW OFFICE, PLLC; FLECK,
FLECK & FLECK; WOLPOFF & ABRAMSON, LLP;
ERIC W. OSTRAGER; COHEN & SLAMOWITZ, LLP ;
CULLEN and DYKMAN LLP; WINSTON and WINSTON, P.C.;
COOPER ERVING & SAVAGE LLP; ROBERT P. ROTHMAN, PC;
GERALD D. DE SANTIS; GREATER NIAGARA HOLDINGS, LLC;
RODNEY A. GIOVE; ADVANCED LITIGATION SERVICES, LLC;
and JASON J. CAFARELLA;

                       Respondents.
------------------------------------------------------------------X

        Petitioner, the Honorable Ann Pfau, alleges upon information and belief:

## JURISDICTION AND PARTIES

        1.     This is a special proceeding to vacate default judgments in all of the

judicial districts of New York State, upon such terms as may be just, and for restitution where

the underlying summons and complaint, or notice of petition or order to show cause and

petition, were served by ZMOD Process Corp. DBA as American Legal Process ("American

Legal Process"). For purposes of this action, serving a summons and complaint, or a notice of petition or an order to show cause and a petition, is referred to as serving process.

2.      Petitioner brings this special proceeding pursuant to N.Y. Civil Practice Law and Rules (CPLR) § 5015(c) and (d).

3.      CPLR § 5015(c) provides:

> An administrative judge, upon a showing that default judgments were obtained by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law, or other illegalities or where such default judgments were obtained in cases in which those defendants would be uniformly entitled to interpose a defense predicated upon but not limited to the foregoing defenses, and where such default judgments have been obtained in a number deemed sufficient by him to justify such action as set forth herein, and upon appropriate notice to counsel for the respective parties, or to the parties themselves, may bring a proceeding to relieve a party or parties from them upon such terms as may be just. The disposition of any proceeding so instituted shall be determined by a judge other than the administrative judge.

4.      CPLR § 5015(d) provides: "Where a judgment or order is set aside or vacated, the court may direct and enforce restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal."

5.      Petitioner is the Chief Administrative Judge for the New York State Unified Court System, appointed by the Chief Judge of the Court of Appeals pursuant to Article 6, § 28(a) of the New York State Constitution and Judiciary Law § 210(3) to supervise on behalf of the Chief Judge the administration and operation of the Unified Court System. Article 6, § 28(b) and Judiciary Law § 210(3). Chief Administrative Judge Pfau possesses the authority to do all things necessary and convenient to carry out her functions, powers and duties, and both designates the administrative judges for any and all of the courts of the Unified Court System, and delegates to those administrative judges administrative functions, powers and duties possessed by her which she, in her sole discretion, deems appropriate.

6.      Respondents, except as noted below, are law firms and lawyers who

2

used American Legal Process to serve process, and who obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

7.    Respondent Mann Bracken L.L.C. is the successor by merger to Wolpoff & Abramson L.L.P., and Eskanos & Adler P.C., and is named in its own capacity and as the successor by merger to Wolpoff & Abramson L.L.P., and Eskanos & Adler P.C.

8.    Respondent Greater Niagara Holdings, LLC is engaged in the business of debt collection and used American Legal Process to serve process on its behalf, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

9.    Respondent Rodney A. Giove represents plaintiffs in debt collection actions and proceedings, including Greater Niagara Holdings, LLC, and used American Legal Process to serve process, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

10.    Respondent Advanced Litigation Services, LLC is engaged in the business of debt collection and used American Legal Process to serve process on its behalf, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

11.    Respondent Jason J. Cafarella serves or served as corporate counsel to Advanced Litigation Services, LLC and used American Legal Process to serve process, and obtained default judgments in New York State with respect to actions and proceedings for which American Legal Process served process.

12.    From 2004 to date, respondents each have used American Legal Process to serve process on at least 100 occasions.

13.    Petitioner seeks an order and judgment, *inter alia*, ordering respondents

3

to identify those actions and proceedings for which they obtained default judgments on behalf of their clients where American Legal Process served process, and vacating those default judgments upon such terms as may be just unless respondents establish at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3.

### STATUTORY BACKGROUND

14.     In New York State, an action is commenced by the filing of a summons and complaint with the court or county clerk.  A proceeding is commenced by the filing of a notice of petition or order to show cause and petition.   As used herein, the term summons and complaint includes notices of petitions and orders to show cause and petitions.  The term action includes proceedings as well.

15.     The plaintiff must serve the summons and complaint upon the defendant in the manner prescribed by the New York Civil Practice Law and Rules ("CPLR") Article 3.

16.     The plaintiff may serve a natural person by delivery of the summons and complaint within the state to the defendant.  CPLR § 308(1).  This method is referred to herein as "actual service."

17.     The plaintiff may also serve a natural person other than the defendant "by delivery of the summons [and complaint] within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailing the summons and complaint by first class mail to the person's last known residence or actual place of abode.  CPLR § 308(2).  This method of service is referred to herein as "substitute service."

18.     Where the service cannot be made with due diligence by actual service, or substitute service, the plaintiff may affix the summons and complaint "to the door of either the actual place of business, dwelling place or usual place of abode within the state of the

4

person to be served" and mail the summons and complaint by first class mail to the person's last known residence or actual place of abode. CPLR § 308(4). This method of service is referred to herein as "nail-and-mail service."

19.  While CPLR § 308(4) does not define the term "due diligence," typically courts have required three prior attempts at service made on separate days, at various times during the day, before a plaintiff may resort to nail-and-mail service.

## FACTS

20.  Since 2004, respondents used American Legal Process to serve process upon New York residents statewide on well over 150,000 occasions. For example, from January 1, 2007 through October 8, 2008 alone, American Legal Process served process on 102,126 occasions of which more than 101,000 were served at the request of respondents.

21.  The venues for these actions and proceedings, which almost always involved suits against consumers for an alleged debt, were located in every county and all of the judicial districts located in New York State.

22.  Respondents' process server, American Legal Process, prepared affidavits of service in which it, or its servers, detailed how they claimed to effect service of process, and provided the affidavits of service to the appropriate county clerk or court clerk, or to respondents, for filing.

23.  In the great majority of actions for which American Legal Process served process, the defendant did not answer, and the respondents sought and obtained a default judgment pursuant to CPLR § 3215 on behalf of their clients.

24.  To obtain such default judgments, the respondents filed, or had filed, American Legal Process affidavits of service that the defendant was properly served with process.

25.  American Legal Process, or its individual servers, however, repeatedly

5

and persistently falsified its affidavits of service, and/or improperly and illegally notarized the affidavits of service.

26.    Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that they had attempted, without success, to serve the defendant in the action on three occasions before resorting to nail-and-mail service.

27.    Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that they had confirmed that the address to which they affixed the summons and complaint was the actual address of the defendant in the action.

28.    Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that they had confirmed that the defendant in the action was not in active military service.

29.    Respondents' process server, American Legal Process, and its individual servers, repeatedly and persistently lied on affidavits of service that the servers had mailed a copy of the summons and complaint to the defendant in the underlying action within twenty days after they served the summons and complaint by substitute or nail-and-mail service.

30.    Respondents' process server, American Legal Process, and its individual servers, when using nail-and-mail service, repeatedly and persistently affixed the summons and complaint to an address that was not the address of the defendant in the action.

31.    William Singler, the owner of American Legal Process, on a repeated and persistent basis, notarized the signatures of process servers who were not present at the time that he notarized the signature.

32.    Respondents' or respondents' process server, American Legal Process, acting on their behalf, provided the falsified and/or illegally executed affidavits to county clerk or

court clerks.

33.     Relying on these falsified and/or illegally executed affidavits of service which claimed that defendants had been properly served, courts in the all of the judicial districts granted thousands of default judgments which otherwise would not have been granted.

### HARM CAUSED BY USING FALSIFIED AFFIDAVITS OF SERVICE

34.     The harm to civil defendants subjected to default judgments where they have not been properly served , and to the courts that processed the defaults, is near incalculable.

35.     Affidavits of service swear to the truthfulness of the information contained therein. Persons who are sued and the courts rely on the presumption that the affidavits are truthful. They all must be able to rely on the truthfulness of the affidavits for the courts to render decisions in those disputes, leaving no question as to the validity and fairness of those decisions. The integrity of the court system depends upon the confidence of the litigants and public that courts provide justice, and there can be no such confidence when there is doubt whether parties received proper notice to appear in court to be heard in the underlying case.

36.     When false affidavits of service are relied upon to form the basis of a default judgment, a defendant is deprived of his or her opportunity to appear to answer the summons and complaint, and to prevent a wrongful default judgment. The harm to such defendants is substantial, becoming subject to judgments to which they had no opportunity to be heard and to present any cognizable defense, and suffering the significant collateral consequences of having judgments entered against them. And the courts will be burdened by service litigation as the parties dispute the validity of the service in contesting the legality of default judgment.

### CAUSE OF ACTION

37.     By reason of the foregoing, respondents have obtained thousands of

default judgments from courts in the judicial districts of New York State on behalf of their clients by fraud, misrepresentation, illegality, unconscionability, lack of due service, violations of law or other illegalities or where such default judgments were obtained in cases in which those defendants or respondents would be uniformly entitled to interpose a defense predicated upon but not limited to the foregoing defenses.

## RELIEF REQUESTED

WHEREFORE, petitioner demands an order and judgment against respondents as follows:

A.    Ordering respondents to identify those actions and proceedings commenced in the judicial districts of New York State (i) in which they appeared, as a party and/or counsel, and (ii) for which American Legal Process served the summons and complaint, or the notice of petition or order to show cause and petition, and (iii) for which a default judgment was taken, or for which an application for a default judgment is pending (referred to herein as "identified actions and proceedings");

B.    Ordering respondents to notify the parties to the identified actions and proceedings ("interested parties") by first class mail to the last known residence, or actual place of business, using the notice form annexed as Exhibit N to petitioner's motion papers, of the pendency of this special proceeding, and of their right to be heard;

C.    Requiring that respondents file with the Court a schedule of interested parties to which they sent the notice, including (i) the date each notice was sent, (ii) the name and address to which the notice was sent, (iii) the amount of the default judgment, (iv) the amount paid by the judgment-debtor after the default judgment was entered, if any;

D.    Providing interested parties with an opportunity to be heard herein;

E.    Vacating and setting aside default judgments taken in the identified actions and proceedings upon such terms as may be just, or denying a pending motion for a

default judgment, unless the party seeking to obtain or enforce a default judgment establishes at the hearing, without reference to an American Legal Process affidavit of service, that service was effected properly pursuant to CPLR Article 3;

F.    With respect to those default judgments that are vacated and set aside, directing restitution in like manner and subject to the same conditions as where a judgment is reversed or modified on appeal;

G.    Enjoining the respondents from seeking to obtain a default judgment against any individual defendant as to whom the respondent used American Legal Process to serve the summons and complaint, or the notice of petition or order to show cause and petition, until such time as the respondents can show evidence of service other than an affidavit of service provided by American Legal Process; and

H.    For such other and further relief as the court deems just and proper; and it is further

Dated: New York, New York
       July 9, 2009

_____
ANN PFAU
CHIEF ADMINISTRATIVE JUDGE
NEW YORK STATE UNIFIED COURT SYSTEM

VERIFICATION

STATE OF NEW YORK    )
COUNTY OF NEW YORK    ) ss.:

ANN PFAU, being duly sworn, deposes and says: She is the Chief Administrative

Judge of the New York State Unified Court System. She has read the foregoing petition and

knows the contents thereof, and the same is true to her own knowledge, except as to matters

therein stated to be alleged on information and belief, and as to those matters she believes

them to be true.

ANN PFAU

Sworn to before me this
9th day of July, 2009.

Notary Public

HAYDEE MARRERO
NOTARY PUBLIC, State of New York
No. 01MA5067982
Qualified in Bronx County
Commission Expires 9-1-2010

10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE
------------------------------------------------------------------X
·In the Matter of the petition of HONORABLE
ANN PFAU, Chief Administrative Judge of          Index No. 2009-8236
the New York State Unifled Court System,

                Petitioner,          **ATTORNEY**
                                      **AFFIRMATION**

    -against-

FORSTER & GARBUS, ET AL.,

                Respondents.
------------------------------------------------------------------X

        JAMES M. MORRISSEY, an attorney admitted to practice law before the courts

of New York State, hereby affirms under penalties of perjury that:

        1.    I am an Assistant Attorney General in the office of Andrew M. Cuomo,

Attorney General of the State of New York "(OAG"). I am responsible for the prosecution of this

case and am fully familiar with the facts and circumstances thereof. I submit this affirmation in

support of petitioners' order to show cause and verified petition. In the course of my duties I

have conducted an investigation of the above-captioned matter. Unless otherwise indicated, I

make this affirmation upon information and belief, based upon my investigation, a review of

documents and other evidence on file with the Department of Law.

        2.    Petitioner brings this action to vacate default judgments taken statewide

-- usually against consumers alleged to owe a debt -- that were obtained by fraud,

misrepresentation, illegality and lack of proper service. The number of default judgments

respondent seeks to vacate is likely in excess of 100,000.

        3.    ZMOD Process Corp., which was incorporated in June 2004, is a

domestic corporation with its principal place of business located at 381 Sunrise Highway R5,

Lynbrook, New York 11563. ZMOD Process Corp. does business as "American Legal Process"

(referred to herein as "American Legal Process"). Respondents herein used American Legal

Process to serve process statewide.

4.      On April 15, 2009, the OAG brought a special proceeding against American Legal Process in Erie County Supreme Court as a result of its deceptive, fraudulent and illegal business practices. The special proceeding is pending. William Singler, the owner of American Legal Process, was arrested by the OAG on a felony complaint on that same day effectively closing down American Legal Process.

5.      American Legal Process maintained an electronic database using ProcessCase.com on which it kept track of the services it provided. The raw database is annexed hereto on a DVD as Exhibit A.

6.      The Internal Audit Unit of the Unified Court System ("Internal Audit Unit") eliminated repetitive records and analyzed the data base with respect to the service of process in cases involving New York State courts from January 1, 2007 through October 8, 2008, about a 17-month period of the 57 months that American Legal Process was actively serving process. Thus, the numbers and statistics presented herein, while very dramatic, represent an analysis of less than one-third of the life of the company. The database analyzed by the Internal Audit Unit is referred to herein as the ProcessCase database, and is annexed hereto on a DVD as Exhibit B.

7.      Annexed hereto as Exhibit C are copies of sample records of payments made by American Legal Process to servers. Exhibit C was obtained from American Legal Process.

8.      Annexed hereto as Exhibit E are copies of sample worksheets prepared by American Legal Process servers from which American Legal Process prepared affidavits of service. Exhibit E was obtained from American Legal Process.

9.      Annexed hereto as Exhibit J are copies of sample affidavits of service

2

prepared by American Legal Process. Exhibit D was obtained from American Legal Process.

10.    Annexed hereto as Exhibit M are copies of selected corporate records with respect to American Legal Process.

11.    Annexed hereto as Exhibit O are copies of sworn hand written statements of American Legal Process employees and/or servers Emily Katt, dated April 3, 2009, Mary Hughes, dated April 2, 2009, Megan Montreuil, dated April 2, 2009 and Linda Hand, dated April 2, 2009. The statements were taken by the OAG and are transcribed for the convenience of the Court.

12.    Annexed hereto as Exhibit P are selected email messages to or from American Legal Process. Exhibit P was obtained from Google.

13.    Respondents are attorneys and law firms, and two debt collectors who used American Legal Process to serve process.

14.    American Legal Process served summonses and complaints, or a notice of petition or order to show cause and a petition ("summons and complaint") as follows: (a) a respondent provided American Legal Process with the summons and complaint to be served; (b) American Legal Process mailed the summons and complaint, with a copy of each, to the appropriate county clerk or court clerk with a check for the purchase of the index number; and (c) the clerk assigned and affixed the index number to the original summons and complaint and the copy, filed the original summons and complaint, and returned the copy to respondent. Affidavit of Sylvia Mahoney, Senior Court Office Assistant with the Buffalo City Court, sworn to on June 30, 2009 ("Mahoney Aff."), ¶¶ 2-3. On occasion, American Legal Process may have mailed the summons and complaint, with a copy of each, directly to the process server, with the check, and the process server delivered the pleadings to the clerk and purchased the index number.

3

15.    American Legal Process then sent the summons and complaint out to one of its servers for service. American Legal Process used process servers across New York State, each responsible for certain territories. See Exhibit L-3 for a list of the top twenty servers and the judicial districts in which they operated. These top twenty served 84.83% of the 102,126 documents served by American Legal Process from January 1, 2007 through October 8, 2008. American Legal Process usually paid its servers only $4.00 to $8.00 on a per service basis. See Exhibit C for sample payment records.

16.    After serving the summons and complaint, the server provided American Legal Process with a worksheet on which the server detailed how he or she claimed to have effected service. The worksheet requested no information with respect to mailing the summons and complaint where nail-and-mail or substitute service was used. Sample worksheets annexed hereto as Exhibit E.

17.    American Legal Process prepared the actual affidavits of service from the worksheets provided to it by the servers. Among other things, the affidavits of service set forth the manner of service, and, where nail-and-mail service was used, (i) the attempted service dates, and (ii) details of a conversation with the defendant's neighbor confirming the defendant's address, and the fact that the defendant was not active in the military service. Even though there was no information on the worksheet with respect to mailing the summons and complaint, the affidavit set forth the date that the process server purportedly mailed the summons and complaint to the defendant. See Exhibit J for sample affidavits of service.

18.    American Legal Process provided the affidavits of service to the appropriate county clerk or court clerk. Mahoney Aff., ¶ 4. In some cases, the server filed them directly with the clerks.

19.    Where American Legal Process served a summons and complaint by so-

4

called "nail and mail" service, defendants defaulted 75.8% of the time. The OAG reviewed 235

cases in which respondents used American Legal Process to serve process and obtained

default judgments. Affidavit of George Danyluk, Internal Audit Manager of the Unified Court

System Internal Audit Unit, sworn to on July 15, 2009 ("Danyluk Aff.") ¶ 6. Almost all of the

actions and proceedings were against consumers who were alleged to owe a debt, and the

average default judgment was for $5,475.

## AMERICAN LEGAL PROCESS FALSIFIED AFFIDAVITS OF SERVICE

### American Legal Process' Policy to Attempt Service Only Once

20.    American Legal Process' policy and practice, communicated to its

servers, was to attempt service once, affix the summons and complaint to the door if no one

answered the door, and fabricate two earlier attempts. This policy and practice is shown by the

sworn handwritten statements from American Legal Process employees and/or servers

annexed hereto as Exhibit O, and the Unified Court System Internal Audit Unit analysis of the

ProcessCase database. This policy may have changed after Annette Forte, an American Legal

Process server, was arrested in April 2008 for filing false documents.

### American Legal Process Servers at Two Places at the Same Time

21.    The ProcessCase database shows that, on 3,512 occasions, American

Legal Process servers served, or attempted to serve, documents on (i) different defendants (ii)

at two different locations (iii) on the same date and (iv) at the same time. Danyluk Aff. ¶ 6.

This, of course, is physically impossible. For ease of reference, petitioners refer to the service

of process and the attempted service of process as "service attempts" or "attempted service".

A table of the top twenty servers, who served 85% of the documents, appears below. The table

is derived from the Danyluk Aff. ¶ 7(a)-(t).

5

| Name | Instances at 2 locations or more at same time | Instances at 3 or more locations (included in the previous total) |
|---|---|---|
| Raymond Bennett | 407 | 39 times at 3 locations at same time, 3 times at 4 locations at the same time, and once at 5 locations at same time |
| Dunham Toby Tyler | 839 | 39 times at 3 locations at same time, and once at 4 locations at same time |
| Gene Gagliardi | 450 | 18 times at 3 locations at same time, and twice at 4 locations at same time |
| Drefel Grimmett | 388 | 9 times at 3 locations at same time |
| Bill Matzel | 199 | 15 times at 3 locations at same time |
| John Hughes | 184 | 4 times at 3 locations at same time |
| Andrea D'Ambra | 168 | 6 times at 3 locations at same time |
| Greg Tereshko | 165 | 3 times at 3 locations at same time |
| Diana Lentz | 134 | 2 times at 3 locations at same time |
| Herb Katz | 125 | 9 times at 3 locations at same time |
| Bernard Holder | 81 | 1 time at 3 locations at same time |
| Adnan Omar | 69 | 1 time at 3 locations at same time |
| Annette Forte | 68 | 2 times at 3 locations at same time |
| Issam Omar | 51 | 1 time at 3 locations at same time |
| Dan Beck | 49 | |
| Beth Eubank | 42 | 1 time at 3 locations at same time |
| Michelle Miller | 42 | 4 times at 3 locations at same time |
| Harry Marinelli | 33 | 1 time at 3 locations at same time |
| Michael Pszczola | 10 | |
| Courtney Goldstein | 8 | |

**American Legal Process Servers at Two Places When Physically Impossible**

22.    The ProcessCase database shows that American Legal Process servers,

repeatedly and persistently, claimed to be at different locations at different times when it was physically impossible to do so, given the time difference and the physical distance between the locations. Danyluk Aff., ¶ 9.

23.    Examples from eleven American Legal Process servers, derived from the Danyluk Aff., ¶¶ 9-29, are given below. These servers served more than 49,300 documents from January 1, 2007 through October 8, 2008. Danyluk Aff., ¶ 30. For purposes of the table the terms "serves" includes attempts at service.

| Name | Service Attempts | Times Serving Process | Miles Required for Attempts/ Time Required | Examples |
|------|------------------|----------------------|-------------------------------------------|----------|
| Isaam Omar | 77 on 6/16/08 | 6:09 am - 10:19 pm | 8,194 6 days, 4 hrs, 34 minutes | Eleven round trips b/t Kings & Cattaraugus Counties (400 miles apart); serves in Olean at 10:17 a.m. and 2 minutes later in Brooklyn |
| Isaam Omar | 69 6/17/08 (the next day) | 6:05 am - 8:28 pm | 10,771 7 days, 19 hrs, 58 minutes | Thirteen round trips b/t Kings & Chautauqua Counties (400 miles apart); serves in Brooklyn at 8:19 a.m. and 1 minute later in Jamestown |
| Drefel Grimmett | 85 on 9/1/07 | 6:00 am - 9:29 pm | 3,373 3 days, 2 hrs, 14 minutes | Serves in Cohoes at 8:02 p.m. and Wappinger Falls 7 minutes later (94 miles away) |
| Drefel Grimmett | 81 on 9/3/07 | 6:07 am - 9:39 pm | 3,199 3 days, 22 minutes | Serves in Albany at 7:07 a.m. and Ellenville 4 minutes later (84 miles away) |
| Annette Forte | 73 on 11/13/07 | 6:06 am - 9:33 pm | 3,859 3 days, 13 hrs, 8 minutes | Four round trips b/t Wayne & Chautauqua Country (150 miles apart); serves in Newark at 6:56 am and Bemus Point 6 minutes later (171 miles apart) |
| Annette Forte | 94 on 2/12/08 | 6:01 am - 10:01 pm | 2,036 2 days, 1 hr, 3 minutes | Serves in Lindley at 9:05 a.m. and Tonawanda 6 minutes later (146 miles apart) |

| Name | Service Attempts | Times Serving Process | Miles Required for Attempts/ Time Required | Examples |
|---|---|---|---|---|
| Gene Gagliardi | 88 on 8/15/07 | 6:02 am - 9:51 pm | 3,079 2 days, 21 hrs, 41 minutes | Serves in Richmond County at 4:02 p.m. and Putnam County 4 minutes later (82 miles apart) |
| Gene Gagliardi | 91 on 8/16/07 | 6:02 am - 9:46 pm | 2,640 2 days, 12 hours, 38 minutes | Serves in Orange County at 7:58 am and Richmond County one minute later (84 miles away) |
| Dan Beck | 92 on 3/7/08 | 6:06 am- 9:24 pm | 2,068 2 days, 8 hrs | Serves in Canajoharie at 3:37 pm and Saratoga Springs 2 minutes later (87 miles apart) |
| Dunham Toby Tyler | 86 on 9/24/07 | 6:28 am - 7:27 pm | 1,662 1 day, 18 hrs, 15 minutes | Serves in Baldwinsville at 3:01 pm and Dexter 6 minutes later (77 miles apart) |
| Raymond Bennett | 74 on 4/19/08 | 6:04 am - 9:10 pm | 1,313 1 day, 9 hours, 13 minutes | Serves in Cahoes at 6:14 am and Cairo 3 minutes later (55 miles apart) |
| Raymond Bennett | 69 4/21/08 | 6:04 am - 9:20 pm | 1,368 1 day, 11 hours, 18 minutes | Serves in Averill Park at 8:42 pm and Cairo 1 minute later (54 miles apart) |
| Bill Matzel | 72 9/24/07 | 8:03 am - 8:56 pm | 1,184 1 day, 9 hours, 35 minutes | Serves in Blossvale at 8:38 am and Little Falls 1 minute later (62 miles apart) |
| Bill Matzel | 67 2/21/08 | 8:01 am - 10:26 pm | 1,419 1 day, 15 hours, 47 minutes | Serves in West Winfield at 6:39 pm and Camden 4 minutes later (57 miles apart) |
| Harry Marinelli | 50 9/1/07 | 6:13 am - 4:41 pm | 1,662 1 day, 16 hours, 58 minutes | Serves in Saranac Lake at 7:16 am and Massena 2 minutes later (80 miles apart) |
| Harry Marinelli | 43 4/10/08 | 6:12 am - 8:51 pm | 1,194 1 day, 4 hours, 33 minutes | Serves in Parishville at 7:44 am and Cadyville 4 minutes later (89 miles apart) |

| Name | Service Attempts | Times Serving Process | Miles Required for Attempts/ Time Required | Examples |
|------|------------------|----------------------|--------------------------------------------|----------|
| Michele Miller | 49 5/9/08 | 7:25 am - 9:10 pm | 1,697 1 day, 17 hours, 37 minutes | Serves in Watertown at 8:22 pm and Brusher Falls one minute later (83 miles apart) |
| Michele Miller | 50 5/13/08 | 7:38 am - 9:00 pm | 1,187 1 day, 7 hours, 33 minutes | Serves in Adams at 12:05 pm and Waddington 7 minutes later (94 miles apart) |
| Diana Lentz | 100 9/17/07 | 6:33 am - 8:15 pm | 1,172 1 day, 2 hours, 13 minutes | Serves in Depew at 7:26 am and Rochester 4 minutes later (69 miles apart) |
| Diana Lentz | 100 10/30/07 | 6:09 am - 10:12 pm | 1,848 1 day, 18 hours, 44 minutes | Serves in Rochester at 6:46 am and Niagara Falls 3 minutes later (95 miles apart) |

**American Legal Process Servers Attempt Service Before Documents Received**

24.    The ProcessCase database shows that on 13,040 occasions, fifty-five of American Legal Process servers (including all of the top twenty) attempted to serve a document on a defendant before the document was transmitted from respondents to American Legal Process.  This, of course, is physically impossible.  Danyluk Aff., ¶ 31.

25.    This is also shown by the email messages annexed hereto as Exhibit P, and the American Legal Process reports annexed hereto as Exhibit F.

**American Legal Process Servers Attempt Service Before Index Number Purchased**

26.    The American Legal Process ProcessCase database shows that on 516 occasions, twenty-two of its servers attempted to serve a summons and complaint on a defendant before the plaintiff had purchased an index number and filed the summons and complaint with the appropriate clerk.  Danyluk Aff., ¶ 32.  It is physically impossible to serve a

summons and complaint, with an index number affixed to it, before the index number is purchased from the clerk.

27.   This is also shown by the American Legal Process report and memos annexed hereto as Exhibit F.

## William Singler Falsely Claimed to Have Notarized Signatures

28.   The American Legal Process ProcessCase database shows that, from January 1, 2007 to October 8, 2008, William Singler, the owner of American Legal Process, claims to have notarized the signatures of process servers from across New York State on 73,395 occasions for an average of over 3,300 affidavits per month.  Danyluk Aff., ¶ 39.

29.   The analysis of the UCS Internal Audit Unit shows that Singler notarized the signatures of servers on dates when, according to American Legal Process ProcessCase database, it was physically impossible for him to do, or the claim is so highly improbable that it should not be credited.

30.   The Internal Audit Unit looked at November 26-28, 2007, and examined 4 process servers for whom ProcessCase shows served process and had their signatures notarized by Singler.  A summary of the results where both are claimed, created from the Danyluk Aff., ¶¶ 40-51, appears below.

| Name | Activities Shown in Processcase database |
| --- | --- |
| Annette Forte | The ProcessCase database shows that Annette Forte served process for more than 15 hours on November 26, 2007 and made a 14 hour round trip to Lynbrook to have her signature notarized.  She served for more than 14 hours on November 27 and made the same round trip.  Forte served for just under 16 hours on November 28 and made a third consecutive trip to Lynbrook.  It was not physically possible for Forte to do both on any of these three days. |

| Name | Activities Shown in Processcase database |
|------|------------------------------------------|
| Beth Eubank | While it was physically possible for Beth Eubank to serve process for 10.5 hours on November 27, 2007, and make the 14.5 hour round trip to Lynbrook to have her signature notarized by Singler, she would have had to work for 25 ½ hours continuously to do so (from 8:00 p.m. on 11/26 until 9:35 on 11/27). |
| Raymond Bennett | While it was physically possible for Raymond Bennett to serve process and drive to Lynbrook on November 26, 27 and 28, 2007 to have his signature notarized, he would have had to work an 18-hour, 19-hour and 15-hour workday respectively to do so. |
| Bethel Debman | While it was physically possible for Bethel Debman to serve process and drive to Lynbrook on November 27 and 28, 2007 to have his signature notarized, he would have had to work and 17-hour and 18-hour workday respectively to do so. |

31. · The UCS Internal Audit Unit also looked at ProcessCase for days that servers were especially active in serving process, and had their signatures notarized on the same day. A summary of the results, created from the Danyluk Aff., ¶¶ 52-66, appears below.

| Name | Date | Activities Shown in ProcessCase Database |
|------|------|-------------------------------------------|
| Diana Lentz | 10/29/07 | It was not possible for Lentz to serve process for more than 13 hours, and drive to Lynbrook to have her signature notarized. |
| Diana Lentz | 1/30/07 | It was not possible for Lentz to serve process for more than 16 hours, and drive to Lynbrook to have her signature notarized. |
| Annette Forte | 2/11/08 | It was not possible for Forte to serve process for just under 16 hours, and drive to Lynbrook to have her signature notarized. |
| Annette Forte | 2/12/08 | It was not possible for Forte to serve process for 16 hours, and drive to Lynbrook to have her signature notarized. |
| Dan Beck | 1/3/08 | To both serve for just over 15 hours and have his signature notarized 25 times would have required a 21.5-hour work day. |

| Name | Date | Activities Shown in ProcessCase Database |
|------|------|------------------------------------------|
| Dan Beck | 1/4/08 | To both serve for just over 13 hours and have his signature notarized 24 times would have required a second consecutive 21.5-hour work day. |
| Bill Matzel | 9/24/07 | To both serve for just under 13 hours and have his signature notarized 26 times would have required a 23-hour work day. |
| Bill Matzel | 9/25/07 | To both serve for just under 13 hours and have his signature notarized would have required a second consecutive 23-hour work day. |
| Issam Omar | 6/23/08 | To both serve for just over 15 hours and have his signature notarized 60 times would have required a 19-hour work day. |
| Issam Omar | 6/24/08 | To both serve for just over 11 hours and have his signature notarized 36 times would have required a 15.5-hour work day, after his previous 19-hour work day. |
| Raymond Bennett | 2/26/08 | To both serve for just over 15 hours and have his signature notarized would have required a 21-hour work day. |
| Raymond Bennett | 2/27/08 | To both serve for just over 15 hours and have his signature notarized would have required a second consecutive 21-hour work day. |
| Raymond Bennett | 2/28/08 | To both serve for 15 hours and have his signature notarized 76 times would have required a third consecutive 21-hour work day. |

32.     The evidence that Singler falsely claimed to have notarized his server's signatures also includes the handwritten sworn statements of American Legal Process employees and/or servers Emily Katt, Mary Hughes, Megan Montreuil and Linda Hand, annexed hereto as Exhibit O and an email annexed hereto as Exhibit P, page 2.

### American Legal Process Servers Lied about Confirming Addresses and Military Status

33.     American Legal Process, or its servers, prepared affidavits of service representing that, when the servers used nail-and-mail service, the server confirmed with a

12

neighbor of the address to which the process was affixed that: (i) the address was in fact the address of the named defendant, and (ii) the named defendant was not in military service (referred to herein as "confirming conversation"). The affidavits of service set forth the neighbor's address and the date of the confirming conversation. See Exhibit J for sample affidavits of service.

34.  The evidence shows that, on a repeated and persistent basis, American Legal Process servers lied about having the confirming conversation, since the address of the neighbor set forth in the affidavit simply does not exist. The evidence includes an analysis of the addresses of neighbors with whom American Legal Process servers claimed to have the confirming conversation, Danyluk Aff., ¶¶ 34-36, an email annexed hereto as Exhibit P, page 1 and Exhibit K.

### American Legal Process Servers Affix Summons and Complaint to the Wrong Address

35.  The evidence shows that American Legal Process servers, on a repeated and persistent basis, affixed the summons and complaint to an address that was not the address of the defendant named in the underlying action when they used nail-and-mail service. The evidence includes the analysis of the OAG and the UCS, Danyluk Aff., ¶¶ 37-38, email annexed hereto as Exhibit P, pages 6, 8, 10, 11, and Exhibit D.

### American Legal Process Affidavits of Service Falsely State That the Server Mailed the Summons and Complaint after Claiming to Effect Service by Nail-and-Mail or Substitute Service

36.  American Legal Process affidavits of service falsely state that the individual server mailed the summons and complaint after claiming to effect service by nail-and-mail or substitute service.

37.  This is shown by the handwritten sworn statements of American Legal Process servers and/or employees Emily Katt and Mary Hughes annexed hereto as Exhibit M, pages 1, 3, 5 and 7.

## CONCLUSION

38.    The Court should grant the petition in all respects.

Dated: Buffalo, New York
      July 17, 2009

                                            JAMES M. MORRISSEY
                                            Assistant Attorney General

# EXHIBIT O

# The New York State Attorney General Andrew M. Cuomo Announces Guilty Plea Of Process Server Company Owner Who Denied Thousands Of New Yorkers Their Day In Court

ALBANY, N.Y. (January 15, 2010) - Attorney General Andrew M. Cuomo today announced that William Singler, owner of Long Island based American Legal Process (ALP), has pled guilty to scheme to defraud for failing to provide proper legal notification to thousands of New Yorkers facing primarily debt related lawsuits.

The fraud caused many to default and have costly judgments entered against them without the chance to respond or defend themselves in court.

Singler pleaded guilty today in Nassau County Supreme Court to one count of Scheme to Defraud in the First Degree (class E felony). He is expected to be sentenced on March 24 by the Hon. Alan L. Honorof. A lawsuit filed by Cuomo against ALP and Singler earlier this year seeking damages, penalties and injunctive relief remains pending.

"Singler broke the law and then lied to cover it up," said Attorney General Cuomo. "It is not a victimless crime, but one that impacted lives and caused financial hardship for thousands of New Yorkers. Many had their bank accounts frozen, their wages garnished, and liens put on their homes, all because they were denied their day in court."

ALP was primarily hired by lawyers representing plaintiffs in debt collection lawsuits to serve court papers on defendants. However, Singler admitted that ALP process servers, with his knowledge, failed to properly serve the court papers on defendants named in the lawsuits. Further, Singler stated that even though he knew that many of the process servers had failed to properly serve the court papers in accordance with state law, he submitted false affidavits of service stating, under oath, that the court papers had indeed been served.

Attorney General Cuomo thanked the New York State Unified Court System, especially its Internal Audit Unit, for their help in the investigation, which included the review of hundreds of court files and more than 100,000 records of affidavits of service.

Carolyn Coffey, an attorney with MFY Legal Services, said: "MFY commends Attorney General Cuomo for prosecuting ALP and for taking actions to help protect the due process rights of New Yorkers. We hope that the Attorney General's office will continue to investigate process servers and law firms that have made a mockery of our justice system by engaging in 'sewer

service.' Thousands of New Yorkers are denied their day in court because of improper service. It's an abuse that must end."

Attorney General Cuomo has also filed a lawsuit against ALP and Singler. According to court papers, between January 2007 and October 2008, ALP claimed to have served 98,000 summons and complaints throughout New York State to residents alleged to owe debt. The Attorney General's investigation revealed that thousands of legal documents were not properly served or served at all. Furthermore, the suit alleges that ALP attempted to cover up its unlawful business practices by filing false affidavits of service. According to the criminal and civil complaints, ALP's conduct included:

> Instances in which ALP process servers claim to have made process-serving attempts in more than one place at the exact same time. In one particular case, a process server claimed to have been at four different addresses at precisely the same moment

> Instances in which an ALP process server claimed to have made process-serving attempts that would have required him to drive more than 10,000 miles in a single day

> Instances in which ALP process servers claim to have served individuals with the summons and complaint before they had even received those documents from Singler and ALP

Additionally, Cuomo is seeking have an estimated 100,000 default judgments against consumers who were not legally served by ALP thrown out. His office has filed suit against 35 law firms and two debt collectors that relied on ALP to notify consumers that they faced debt-related lawsuits. In addition to seeking to vacate all of the default judgments where the sole evidence that the defendant received notice of the suit is an ALP affidavit, the lawsuit asks the court to:

> Order the law firms and debt collectors to inform the New York State Unified Court System of each action in which they used ALP to serve legal process and in which a default judgment was granted

> Notify all the parties in those actions of the existence of this lawsuit and their right to be heard

> Notify the court of the amount of any default judgments taken in any of the relevant actions, as well as whether the debtor paid any amount to satisfy the default judgment.

Additionally, where a default judgment is ultimately vacated, the lawsuit asks the court to direct

that proper restitution be made to any debtor who made payment on an improperly obtained default judgment.

The criminal case is being prosecuted by Assistant Attorney General Cydney Kelly under the supervision of the Richard Ernst, Deputy Bureau Chief of the Criminal Prosecutions Bureau, and Gail Heatherly, Bureau Chief of the Criminal Prosecutions Bureau. The investigation was handled by Investigator Sandra Migaj, under the supervision of Deputy Chief Investigator James Domres. The pending civil lawsuits are being handled by Assistant Attorney General James Morrissey, in conjunction with Dennis Donnelly, George Danyluk, Aric Andrejko and Dan Johnson of the Internal Audit Bureau of the New York State Unified Court System.

**Attorney General's Press Office:** (212) 416-8060

nyag.pressoffice@ag.ny.gov

# Press Release Archive

- > August 2019
- > July 2019
- > June 2019
- > May 2019
- > April 2019
- > March 2019
- > February 2019
- > January 2019
- > December 2018
- > November 2018
- > October 2018
- > September 2018

VIEW ALL PRESS RELEASE ARCHIVES

# EXHIBIT P

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX

Index Number: 22189 BCV 2005 ✓

Legal Servicing, LLC

Petitioner/Plaintiff(s)

- against -

ASSIGNMENT OF
JUDGMENT and
SUBSTITUTION OF
ATTORNEY

BERNARD E. LEWIS

Defendant(s),

THIS INDENTURE, made June 23, 2010, between Legal Servicing, LLC, (the "Assignor"), and Resolution Management, LLC (the "Assignee").

WHEREAS, Judgment was entered in the CIVIL COURT OF THE CITY OF NEW YORK, COUNTY OF BRONX , STATE OF NEW YORK in favor of Legal Servicing, LLC, and against BERNARD E. LEWIS in the sum of $15,844.06, which judgment was duly entered on August 17, 2005, in the office of the Clerk of the County of BRONX, and

WHEREAS, the Assignee, Resolution Management, LLC, is now the owner said judgment,

NOW THEREFORE WITNESSETH, that the Assignor, in consideration of the sum of $10.00 received and duly paid and other good and valuable consideration, has sold, assigned and transferred and by these presents hereby sells, assigns and transfers to the Assignee, the said judgment and all monies that may be had or obtained by means thereof, or upon any proceedings to be had thereupon. The assignee has the right to take all lawful proceedings for the recovery of the money due or to become due on said judgment; and upon payment, to acknowledge satisfaction or discharge the same. The Assignor hereby covenants that there is now due on the judgment the sum of $15,844.06 plus any accrued interest to the date of this assignment and that the Assignor will not collect or receive the same or any part thereof nor release or discharge said judgment, but will allow all lawful proceedings therein to be taken by the Assignee; and that Annemarie E. Steward, Esq., is retained as attorney for plaintiff;

IT IS HEREBY consented that Mark H. Stein, Esq., of Lacy Katzen, LLP, be substituted as counsel in the above entitled proceeding in place and stead of the undersigned attorney as of the date hereof.

10 SEP -2 AM10: 04

2010-3348

**IN WITNESS WHEREOF**, this assignment has been duly executed by the Assignor and Assignee the day and year first above written.

It is agreed by all parties below that facsimile signatures will be deemed originals.

**ASSIGNOR:**

**Legal Servicing, LLC**

By: _____

Robert Van De Mark, Designated Agent

State of New York    ) ss:
County of New York  )

On June 24, 2010, before me, the undersigned, personally appeared Robert Van De Mark,  personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and with full authority thereof and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument, and that such individual (s) made such appearance before the undersigned.

_____
Notary Public

SALLY A. O BRIEN
Notary Public, State of New York
No. 01OB6216179
Qualified in Erie County
Commission Expires Jan. 11, 2014

**ASSIGNEE:**

**Resolution Management, LLC**

By: _____

Michael A. Iacobelli, Jr., Designated Agent

State of New York    ) ss:
County of Nassau    )

On June 25th 2010, before me, the undersigned, personally appeared Michael A. Iacobelli, Jr., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and with full authority thereof, and that by his/her/their signature (s) on the instrument, the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument, and that such individual (s) made such appearance before the undersigned.

_____
Notary Public

LAURA A BEAVER
Notary Public - State of New York
No. 01BE6184220
Qualified in Erie County
My Comm. Expires March 31, 2012

*Outgoing Attorney* - Annemarie E. Steward, ESQ
Corporate Counsel
Legal Servicing, LLC
2801 Wehrle Drive, Suite #5
Williamsville, New York 14221

*Incoming Attorney* - Mark H. Stein, Esq.
Lacy Katzen, LLP
130 East Main Street
Third Floor
Rochester, NY 14604

# EXHIBIT Q

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through August 2, 2019.

Selected Entity Name: RESOLUTION MANAGEMENT, LLC
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | RESOLUTION MANAGEMENT, LLC |
| **DOS ID #:** | 3402814 |
| **Initial DOS Filing Date:** | AUGUST 21, 2006 |
| **County:** | ERIE |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

RESOLUTION MANAGEMENT, LLC
PO BOX 25776
ROCHESTER, NEW YORK, 14625

**Registered Agent**

NONE

This office does not require or maintain
information regarding the names and addresses of
members or managers of nonprofessional limited
liability companies. Professional limited liability
companies must include the name(s) and
address(es) of the original members, however this
information is not recorded and only available by
viewing the certificate.

Entity Information    https://appext20.dos.ny.gov/.../PUBLIC_CORP_SEARCH.ENT...

## *Stock Information

**# of Shares**      **Type of Stock**      **$ Value per Share**

No Information Available

*Stock information is applicable to domestic business corporations.

## Name History

**Filing Date**    **Name Type**         **Entity Name**

AUG 21, 2006   Actual       RESOLUTION MANAGEMENT, LLC

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

# EXHIBIT R

YSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 06/11/201

STATE OF NEW YORK
SUPREME COURT   COUNTY OF BRONX

---

LEGAL SERVICING, LLC,

                     **Plaintiff,**

  -against-

BERNARD LEWIS,

                    **Defendant.**

---

**SUMMONS**

**Index No.**
*Plaintiff's Address:*
**2801 Wehrle Drive, Suite #5**
**Williamsville, New York 14221**

*The basis of venue designated:*
**The existing judgment which is the subject**
**of this lawsuit was entered in Bronx**
**County**

*To the Above Named Defendant:* **YOU ARE HEREBY SUMMONED** to appear in the Supreme Court, in the County of Bronx at the office of the Clerk of the said Court located at 851 Grand Concourse #111, County of Bronx, State of New York, within the time provided by law as noted below and to file your Answer* to the annexed Complaint with the plaintiffs' attorney within the time provided by law as noted below; upon your failure to answer, judgment will be taken against you for the relief demanded in the Complaint, together with the costs of this action.

**DATED: June 11, 2015**

By:

Annemarie E. Steward, Esq.
Attorney for the Plaintiff
2801 Wehrle Drive, Suite #5
Williamsville, New York 14221
716-565-9300

DEFENDANT:
BERNARD LEWIS

*Note: The law provides that:*
    *(A) If this Summons is served by its delivery to you personally within the State of New York, you must answer within twenty (20) days after such service; or*
    *(B) If the Summons is served by delivery to any person other than you personally, or is served outside the State of New York, or by publication, or by any means other than personal delivery to you within the State of New York, you are allowed thirty (30) days after service is complete within which to Answer.*

**\* You need not physically go to the Court to serve an Answer.**

STATE OF NEW YORK
SUPREME COURT     COUNTY OF BRONX

---------------------------------------------------

**LEGAL SERVICING, LLC,**

<em>Plaintiff,</em>

<strong>COMPLAINT</strong>

-vs-

Index:

**BERNARD LEWIS,**

<em>Defendant,</em>

_____

1.      Plaintiff, Legal Servicing, LLC, by and through its attorney, Annemarie E. Steward, as and for its Complaint against the Defendant, alleges as follows:

<strong>PARTIES</strong>

2.      Plaintiff is a Limited Liability Company, duly organized and existing under and by virtue of the laws of the United States, with an office at 2801   Wehrle   Drive,   Suite   5, Williamsville, New York 14221.

3.      Defendant, Bernard Lewis, is a natural person and resides at 3820 1st Avenue, Lake Charles, LA 70607.

<strong>JURISDICTION AND VENUE</strong>

4.      The events which give rise to this action involve a credit card account issued to the Defendant by First Chase which said account was ultimately assigned to Plaintiff.

5.      Venue in the County of Bronx is proper because it is the county in which judgment was entered against the Defendant.

6.      This Court has jurisdiction over the Defendant because he owns real property in New York State.

## BACKGROUND

7.      On August 17, 2005, judgment in the amount of $15,844.06 was entered in the New York City Civil Court of Bronx County under index number 22189 BCV 2005, in favor of Legal Servicing, LLC, the Plaintiff named above, and against Bernard Lewis, the Defendant named above. A Transcript of Judgment was filed in the Bronx County Civil Court on August 30, 2005.   Copies of the Judgment and Transcript of Judgment are annexed hereto as Exhibit "A".

8.      A transcript of such judgment was also filed in the Bronx County Clerk's Office on July 18, 2012, thereby creating a lien against any real property owned by the Defendant in Bronx County.  A copy of the Transcript of Judgment is annexed hereto as Exhibit "B".

## CAUSE OF ACTION

9.      Plaintiff repeats and realleges the allegations set forth above as if more fully set forth herein.

10.      Pursuant to CPLR 5014(1), an action on a money judgment may be commenced between the original parties to the judgment where ten years have elapsed since the first docketing of the judgment.

11.      The Judgment was docketed more than nine years prior to the commencement of this action.

12.      Plaintiff is the owner and the holder of the Judgment.

13.      In light of the foregoing, Plaintiff is entitled to an order and judgment renewing, continuing and extending the judgment lien in the amount of $15,844.06 together with interest at 9% per annum from the 17th day of August, 2005.

**WHEREFORE,** Plaintiff demands of this Court judgment in its favor against the

Defendant for:

(a)     on the Cause of Action, pursuant to CPLR 5014(1),  in the amount of $15,844.06 together with interest at the statutory rate of 9% per annum from the 17th day of August, 2005.

(b)     an extension of the judgment lien for an additional ten (10) years against defendant for the sum of $15,844.06, with interest at the rate of 9 percent per annum from August 17, 2005; and

(e)     the costs and disbursements of this action; and

(f)     such other and further relief as the Court deems fair and proper.

**DATED:** June 11, 2015

ANNEMARIE E. STEWARD, ESQ.
*Attorney for Plaintiff*

# EXHIBIT S

YSCEF DOC. NO. 3
RECEIVED NYSCEF: 07/01/201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Job #-252166

**AFFIDAVIT OF SERVICE**

Index no : 23210/2015E
Date Index Number Purchased: 06/11/2015

| PLAINTIFF(S): | LEGAL SERVICING, LLC |
| DEFENDANT(S): | BERNARD LEWIS |

STATE OF NEW YORK
COUNTY OF NASSAU        ss.:

**EMMAD GABBAR**, the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of eighteen and not a party to this action. I reside in the STATE OF NEW YORK.

On 06/27/2015 at 6:15 PM, I served the within **SUMMONS AND COMPLAINT WITH EXHIBITS; NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; STATEMENT OF AUTHORIZATION FOR ELECTRONIC FILING on BERNARD LEWIS at 4818 WILDER AVENUE, BRONX, NY 10470** in the manner indicated below:

SUITABLE AGE: By delivering a true copy of each to **KATHERINE "DOE" (REFUSED LAST NAME) , CO−TENANT**, a person of suitable age and discretion. Said premises is recipient's usual place of abode within the state.

Pursuant to CPLR − Section 308(2) On **06/28/2015** , service was completed by depositing a true copy of each document to the above address in a 1st Class postpaid properly addressed envelope not indicating that the mailing was from an attorney or concerned legal action and marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office.

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of skin/race | Color of hair | Approx Age | Approx Height | Approx Weight |
|---|---|---|---|---|---|
| FEMALE | BLACK | HEADWRAP | 22 | 5ft. 4in. − 5ft 8in. | 130−159 Lbs. |

Other Features:

Your deponent asked the person spoken to whether the Recipient was in the active military service and received a negative reply. Upon information and belief I have; being based on the conversations and observations above narrated, Recipient is not in the military service.

Sworn to and subscribed before me on
_____June_____ 30 , 20 15
by an affiant who is personally known to
me or produced identification.

_____
NOTARY PUBLIC
My Commission Expires: _____

RACHEL HASSAN
Notary Public, State of New York
No. 01HA6263404
Qualified in Nassau County
Commission Expires June 11, 2016

X _____
EMMAD GABBAR
License#: 20147L1-DCA
North American Process Serving, LLC.
2801 Wehrle Drive
Williamsville, NY 14221
716.565.0258
Atty File#:

**North American Process Serving
DCA License Number
1362383**

# EXHIBIT T

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX   STATE OF NEW YORK

Index No. 23210/2015 E

LEGAL SERVICING, LLC

Plaintiff,

against

BERNARD LEWIS

Defendant(s)

JUDGMENT AND JUDGMENT LEIN RENEWAL

I hereby certify that I have
adjusted this bill of costs at
$ 365.00
FEB 2 5 2016
Date          County Clerk
Luis M. Diaz

Our File No.: 21810

That this action is against a Natural Person(s) and is based upon non-payment of a contractual obligation.

| | |
|---|---|
| Amount claimed in Summons and Complaint | $15,844.06 |
| Interest from August 17, 2005 @ 9% per annum | $14,798.79 |
| Cause of Action for Account Stated and Attorneys Fees Waived | 0.00 |
| Additional Filing Fee for Summons and Complaint | 0.00 |
| Costs by Statute | $15.00 |
| Service of Summons & Complaint | $210.00 |
| Filing of Summons & Complaint | 95.00 |
| RJI Fee | 0.00 |
| Transcripts and Docketing Fees | $45.00 |
| Motion Fees                                  TOTAL | $31,007.85 |

STATE OF NEW YORK, COUNTY OF ERIE) ss:

The undersigned, Annemarie E. Steward, Esq., attorney(s) of record for the Plaintiff herein, affirms under the penalties of perjury, that the disbursements above specified are correct and true and have been or will be necessarily be made or incurred herein and are reasonable in amount; that service of the summons and verified complaint has been made upon the Defendant(s) as appears by the affidavit of service filed herein; that the within action is against a Natural Person(s) and is based upon nonpayment of a contractual obligation; and the Plaintiff is duly licensed with the New York City Department of Consumer Affairs under license number 1201402;

That on August 13, 2015 , a copy of the Summons and Verified Complaint was mailed to the Defendant(s) at least twenty (20) days before the entry of judgment pursuant to CPLR 3215(g)(3) or (4) (as applicable), in an official depository of the U.S. Postal Service within the State of New York, said mailing was by first class mail in a postpaid envelope, properly addressed to the Defendant(s) at the Defendant's last known residence shown herein. The envelope bore the legend 'Personal and Confidential' and there was no indication on the outside of the envelope that the communication was from the attorney, or concerned an alleged debt.;

That Defendant having failed to answer herein and the time to do so having expired, Plaintiff is entitled to Judgment by Default. Plaintiff is also entitled to an extension of the judgment lien for an additional ten (10) years against the Defendant in the sum of $15,844.06, with interest at the rate of 9% per annum from August 17, 2005. This affirmation is also made in compliance with the Federal Soldiers & Sailors Civil relief Act of 1940 as amended. That upon investigation the Defendant is not a member of the U.S. military services.

Dated: February 25, 2016

Annemarie E. Steward, Esq.
2801 Wehrle Drive, Suite 5
Williamsville, NY 14221
716-565-9300

NOW, ON MOTION OF Annemarie E. Steward, Esq., attorney for the Plaintiff, it is ADJUDGED, that LEGAL SERVICING, LLC Plaintiff, having a business at 2801 Wehrle Drive, Suite #5, Williamsville, Ny 14221 does recover of Defendant(s) 1. Bernard Lewis residing/located at 4818 Wilder Ave., Bronx, New York 10470 judgment in the sum of $15,844.06 with interest of $14,798.79 , together with costs and disbursements of $365.00 amounting in all to the sum of $31,007.85 an extension of the judgment lien for an additional ten (10) years against the Defendant in the sum of $15,844.06 with interest at the rate of 9% from August 17, 2005, to the entry of judgment, and that Plaintiff shall have execution therefore.

FEB 2 5 2016

JUDGMENT ENTERED ON

LUIS M. DIAZ
COUNTY CLERK

INDEX NO. 23210/2015E

RECEIVED NYSCEF: 02/25/2016

FILED: BRONX COUNTY CLERK 02/25/2016 10:58 AM

NYSCEF DOC. NO. 18

At a Civil Term Part 15 of the Supreme Court of the State of New York, held in and for the County of Bronx, at the Courthouse located at 851 Grand Concourse, Bronx, New York, on the 22 day of Feb ruary , 2016

PRESENT:                Hon. Mary Ann Briganttl

HON. _____, J.S.C.

_____

LEGAL SERVICING, LLC,

                    Plaintiff,              Index No. 23210/2015E

          -against-

                                            ORDER

BERNARD LEWIS,

                    Defendant.

_____

    Plaintiff having filed a Motion for an Order granting judgment and extension of judgment lien, and such application having regularly come on to be heard before me on the 16 day of December , 2015.

    NOW, after reading and filing the affirmation of Annemarie E. Steward, Esq. affirmed December 3, 2015, the affidavit of Robert Van De Mark, sworn to on December 3, 2015, together with the exhibits thereto annexed, all in support of the Plaintiff's application, and due deliberation having been had,

    NOW, on Motion of Annemarie E. Steward, Esq., attorney for Plaintiff, it is

ORDERED, that Plaintiff's application is hereby granted in its entirety and, it is further

ORDERED, that the Clerk of Bronx County enter judgment in favor of the Plaintiff and as against the Defendant in the amount of $15,844.06 together with interest at the statutory rate of 9% per annum from the 17th day of August, 2005, an extension of the judgment lien for an additional ten (10) years against the Defendant for the sum of $15,844.06, with interest at the rate of 9% per annum from August 17, 2005, and costs and disbursements of this action.

J.S.C.

Hon. Mary Ann Brigantti

# EXHIBIT U

YSCEF DOC. NO. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---

LEGAL SERVICING, LLC,

                           Petitioner,          Index No.

       -against-                     **PETITION**

BERNARD LEWIS A/K/A
BERNARD E. LEWIS,

                       Respondent.

---

TO THE SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF STEUBEN:

Petitioner, Legal Servicing, LLC, by its attorney, Annemarie E. Steward, Esq., complaining of respondent, respectfully alleges:

1.     That petitioner, Legal Servicing, LLC is a Delaware Limited Liability Company and maintains an office at 2801 Wehrle Drive, Suite 5, Williamsville, New York.

2.     That on April 26, 2005, Legal Servicing, LLC, Successor in Interest to Chase Manhattan Bank brought an action against the respondent, Bernard Lewis, in the Bronx County Civil Court, to recover the sum of Fifteen Thousand Three Hundred twenty One and 38/100 ($15,321.38) Dollars for a consumer credit transaction with respect to an unpaid Chase Manhattan Bank account number 5263501210809503.

3.     That thereafter and on the 17th day of August, 2005, a judgment was duly entered in that action in favor of the plaintiff, Legal Servicing, LLC, Successor in Interest to Chase Manhattan Bank, and against Bernard Lewis, the defendant and the respondent herein, for the sum of Fifteen Thousand Eight Hundred Forty Four and 06/100 ($15,844.06) Dollars.

4.     That a transcript of the judgment was duly filed and docketed in the Bronx County Clerk's Office on the 18th day of July, 2012, thereby creating a lien against the real property of the respondent in Bronx County.   A copy of the Transcript of Judgment is annexed hereto as **Exhibit A**.

5.     That on June 11 2015, an action entitled Legal Servicing, LLC vs. Bernard Lewis was commenced in the Bronx County Supreme Court under Index Number 23210/2015E by the Petitioner herein

YSCEF DOC. NO. 1

RECEIVED NYSCEF: 11/16/201

against Bernard Lewis, the respondent herein, to obtain a renewal of the judgment issued in the original action.

6.    That on February 25, 2016, Legal Servicing, LLC obtained a renewal of the aforementioned Judgment against Bernard Lewis, the respondent herein, in the amount of Thirty One Thousand Seven and 85/100 ($31,007.85) Dollars.  A copy of the Judgment and Judgment Lien Renewal is annexed hereto as **Exhibit B**.

7.    That upon information and belief, respondent is the owner in fee of certain real property located in Bronx County described as follows:

> ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Bronx, City and State of New York, bounded and described as follows:
>
> BEGINNING at a point on the Easterly side of Pratt Avenue, distant 607.93 feet northerly from the corner formed by the intersection of the northerly side of Lustre Street with the easterly side of Pratt Avenue;
>
> RUNNING THENCE Northerly along the easterly side of Pratt Avenue, 25 feet;
>
> THENCE Easterly at right angles to the easterly side of Pratt Avenue and part of the distance through a party wall, 100 feet;
>
> THENCE Southerly parallel with the easterly side of Pratt Avenue, 25 feet;
>
> THENCE Westerly at right angles to the easterly side of Pratt Avenue, 100 feet to the easterly side of Pratt Avenue, at the point or place of BEGINNING
>
> SAID PREMISES being known as and by street number 4058 Pratt Avenue, Bronx, New York 10466.

8.  That upon information and belief, such real property is improved by a single family residence, which upon information and belief, is **not** the Respondent's homestead and therefore respondent is not entitled to the exemption set forth in CPLR Section 5206(e).

9.  That the Petitioner is entitled to a sale of the respondent's interest in the real property known as 9785 Ward Road, Wayland,

YSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 11/16/201

New York 14572. *See*, Kolb vs. Anisis, 104 A.D.2d 399 (2nd Dept. 1984).

10. That no previous application for the relief herein prayed for has been made.

**WHEREFORE**, petitioner demands that a judgment be entered against the respondent, Bernard Lewis a/k/a Bernard E. Lewis, directing the sale of the respondent's interest in the aforesaid property by the sheriff and that the proceeds arising from that sale be paid over to the Petitioner, and that the aforesaid judgment for Thirty One Thousand Seven and 85/100 ($31,007.85) Dollars with interest thereon from the 25th day of February, 2016, together with the fees and costs of the aforesaid action be adjudged to be a lien against the proceeds for that sum in excess of Thirty One Thousand Seven and 85/100 ($31,007.85) Dollars, and for such other and further relief as may be just, proper, and equitable, together with the fees and costs of this proceeding.


Dated: November 15, 2017
       Williamsville, New York


                                    Annemarie E. Steward, Esq.


THIS IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

YSCEF DOC. NO. 1

RECEIVED NYSCEF: 11/16/201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX                                    Index No.:

LEGAL SERVICING, LLC,

                                   Petitioner,

                    -against-


BERNARD LEWIS A/K/A
BERNARD E. LEWIS,

                                   Respondent.


_____


_____

                        **PETITION**

_____


                    Annemarie E. Steward, Esq.
                    Attorney for Petitioner
                    2801 Wehrle Drive, Suite 5
                    Williamsville, NY 14221
                        (716) 565-9300

# EXHIBIT V

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---

LEGAL SERVICING, LLC,

                          Petitioner,           **Index Number**
                                                **31007/2017E**

       -against-                                **AFFIRMATION IN**
                                                **OPPOSITION**

BERNARD LEWIS A/K/A
BERNARD E. LEWIS,
                          Respondent.

---

    Annemarie E. Steward, an attorney duly licensed to practice law in the State of New York, pursuant to CPLR 2106 and under the penalties of perjury, affirms the following to be true:

    1.    I am the attorney for the Petitioner in the above-entitled action. Based upon a review of the file maintained by the Petitioner and myself in this action, I am familiar with the facts and circumstances of this case and the proceedings heretofore.

    2.    I make this Affirmation in Opposition to the Motion of Bernard Lewis a/k/a Bernard E. Lewis, the Respondent herein, wherein the Respondent is requesting that this Court vacate the default judgment and the renewal judgment entered against the Respondent.

    3.    It is respectfully submitted that the Respondent is by no means whatsoever entitled to the relief requested in his Motion. This is an action for an order permitting the sale of the Respondent's interest in real property located at 4058 Pratt Avenue, Bronx, New York 10466. As established in your affirmant's papers in support of said petition, this Court, in a previous matter commenced in 2015, awarded a judgment and judgment

lien renewal to Legal Servicing, LLC and against the Respondent, Bernard Lewis. Said judgment is in the amount of $31,007.85, and Petitioner's only available legal remedy of enforcement is the sale of the aforementioned property.

## PROCEDURAL HISTORY OF THIS MATTER AND THE MATTERS PRECEEDING THIS CASE

4.    As stated by your affirmant in the petition dated November 15, 2017, on April 26, 2005, Legal Servicing, LLC, Successor in Interest to Chase Manhattan Bank brought an action against the respondent, Bernard Lewis, in the Bronx County Civil Court, to recover the sum of Fifteen Thousand Three Hundred twenty One and 38/100 ($15,321.38) Dollars for a consumer credit transaction with respect to an unpaid Chase Manhattan Bank account number 5263501210809503.

5.    Thereafter and on the 17th day of August, 2005, upon the Defendant's failure to answer the complaint, judgment was duly entered in that action in favor of the plaintiff, Legal Servicing, LLC, Successor in Interest to Chase Manhattan Bank, and against Bernard Lewis, the defendant and the respondent herein, for the sum of Fifteen Thousand Eight Hundred Forty Four and 06/100 ($15,844.06) Dollars.

6.    As further stated in the petition dated November 15, 2017, on June 11 2015, an action entitled Legal Servicing, LLC vs. Bernard Lewis was commenced in the Bronx County Supreme Court under Index Number 23210/2015E by the Petitioner herein against Bernard Lewis, the respondent herein, to obtain a renewal of the judgment issued in the original action.

7.    On February 25, 2016, and upon the Defendant Bernard Lewis' failure to answer the complaint, Legal Servicing, LLC obtained a renewal of the aforementioned

Judgment against Bernard Lewis, the respondent herein, in the amount of Thirty One

Thousand Seven and 85/100 ($31,007.85) Dollars.

8.     On November 30, 2017, the instant matter was commenced by the

electronic filing of a notice of petition and petition with the Bronx County Clerk's Office.

9.     On December 19, 2017, the Respondent was served with copies of the

Notice of Petition and Petition with supporting documentation pursuant to CPLR 308(2).

## SERVICE OF PROCESS IN THE INSTANT ACTION WAS IN COMPLAINCE WITH THE NEW YORK CPLR

10.     In the instant action, the Respondent was served in accordance with

Section 308(2) of the New York Civil Practice Law and Rules. CPLR 308(2) states, *inter*

*alia*, that:

> Personal service on a natural person shall be made by any
> of the following methods: by delivering the summons
> within the state to a person of suitable age and discretion at
> the actual place of business, dwelling place or usual place
> of abode of the person to be served and by either mailing
> the summons to the person to be served at his or her last
> known residence or by mailing the summons by first class
> mail to the person to be served at his or her actual place of
> business in an envelope bearing the legend "personal and
> confidential" . . . such delivery and mailing to be effected
> within twenty days of each other.

In that case, pursuant to the Affidavit of Service, the process server delivered the

Summons and Complaint to the Defendant's co-tenant, "Jane Doe", a person of suitable

age and discretion, residing at the Respondent's dwelling house, at 4818 Wilder Avenue,

Bronx, New York 10470 on December 19, 2017

11.     Thereafter, within twenty (20) days of delivery of the Summons and

Complaint, and pursuant to the Affidavit of Service, a copy of the Summons and

Complaint was mailed to the Defendant's dwelling house in an envelope marked

"personal and confidential."  Said mailing was not returned to the process server as undeliverable.  A copy of the Affidavit of Service, along with a copy of an abstract of driving record confirming the Respondent's address is annexed hereto as Exhibit "A". Furthermore, the Respondent does not deny that he received a copy of the Summons and Complaint in the mail and therefore he cannot "overcome the inference of proper mailing that arose from the affidavit of service." *See*, Wells Fargo Bank, N.A. vs. Decesare, 154 A.D.3d 717, 62 N.Y.S.3d 446 (N.Y. App. Div., 2017).

12.     It is also important to note that, pursuant to the Respondent's affidavit sworn to on September 18, 2018, Mr., Lewis states that "for the record, Bernard Lewis resides at 4818 Wilder Avenue, Bronx, New York 10470" (*See Lewis aff. Para. 3, page 4*).  The Respondent therefore admits that he resided at the address where service of process in the 2015 renewal judgment action was effectuated.  As such, the process server properly served the Respondent at his residence and therefore Mr. Lewis was duly served with a copy of the Summons and Complaint in accordance with CPLR 308(2).

## SERVICE OF PROCESS IN THE ACTION UNDER INDEX NUMBER 23210/2015E WAS IN COMPLAINCE WITH THE NEW YORK CPLR

13.     In the 2015 action entitled Legal Servicing, LLC vs. Bernard Lewis commenced in the Bronx County Supreme Court under Index Number 23210/2015E, the Defendant was served in accordance with Section 308(2) of the New York Civil Practice Law and Rules.  CPLR 308(2) states, *inter alia*, that:

> Personal service on a natural person shall be made by any of the following methods: by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last

known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" . . . such delivery and mailing to be effected within twenty days of each other.

In that case, pursuant to the Affidavit of Service, the process server delivered the Summons and Complaint to the Defendant's co-tenant, Katherine "Doe", a person of suitable age and discretion, residing at the Defendant's residence, at 4818 Wilder Avenue, Bronx, New York 10470 on June 27, 2015.

14.    Thereafter, within twenty (20) days of delivery of the Summons and Complaint, and pursuant to the Affidavit of Service, a copy of the Summons and Complaint was mailed to the Defendant's residence in an envelope marked "personal and confidential."    Said mailing was not returned to the process server as undeliverable.  A copy of the Affidavit of Service is annexed hereto as Exhibit "B".   Furthermore, and again, the Respondent does not deny that he received a copy of the Summons and Complaint in the mail and therefore he cannot "overcome the inference of proper mailing that arose from the affidavit of service." See, Wells Fargo Bank, N.A. vs. Decesare, 154 A.D.3d 717, 62 N.Y.S.3d 446 (N.Y. App. Div., 2017).

15.    It is also important to again note that, pursuant to the Respondent's affidavit sworn to on September 18, 2018, Mr. Lewis states that "for the record, Bernard Lewis resides at 4818 Wilder Avenue, Bronx, New York 10470" (See Lewis aff. Para. 3, page 4). The Respondent therefore admits that he resided at the address where service of process in the 2015 renewal judgment action was effectuated.  As such, the process server properly served the Respondent at his residence and therefore Mr. Lewis was duly served with a copy of the Summons and Complaint in accordance with CPLR 308(2).

## FAILURE OF EXCUSABLE DEFAULT IN THE ACTION UNDER INDEX NUMBER 23210/2015E

16.     Pursuant to CPLR 5015(a)(1), in order to be entitled to vacatur of a default judgment, the moving party must establish a reasonable excuse for his failing to appear in the instant action **and** a meritorious defense. *See,* Genesee Management, Inc., et al. vs. Debra N. Barrette, et al., 4 A.D.3d 874; 771 N.Y.S.2d 778 (4th Dept. 2004); Hayes vs. R.S. Mahis & Son, 303 A.D.2d 1018, 756 N.Y.S.2d 811 (2003).

17.     In his affidavit in support of the within motion, the Respondent claims that he was never served with the Summons and Complaint in the 2015 Supreme Court action. The Respondent's patently false and bald allegations do not constitute a reasonable excuse for his default in the present action. Your affirmant respectfully submits that a conclusory denial of receipt of the Summons and Complaint is insufficient to rebut the presumption of service. *See,* American Business Credit, Inc. vs. Israel Sanabria, et al., 19 A.D.3d 624; 799 N.Y.S.2d 77 (2nd Dept. 2005); Dolec Consultants vs. Lancer Litho Packaging Corp., 245 A.D.2d 415, 666 N.Y.S.2d 458; Manhattan Sav. Bank vs. Kohen, 231 A.D.2d 499, 500; 647 N.Y.S.2d 256; Sando Realty Corp. vs. Aris, 209 A.D.2d 682, 619 N.Y.S.2d 140.

18.     Furthermore, it must be noted that a process server's affidavit constitutes prima facie evidence of proper service. *See,* Genway Corp. vs. Elgut, 177 A.D.2d 467, 575 N.Y.S.2d 899 (2nd Dept. 1991). In order to rebut the presumption of service, the Defendant/Respondent must provide an affidavit containing specific facts in contradiction to the process server's affidavit, and not merely bald allegations. *See,* In the Matter of Nationwide Mutual Insurance Company vs. Thomas Carlini and Karen Carlini, 12 Misc. 3d 718; 814 N.Y.S.2d 856 (2nd Dept. 2006); DiLorenzo vs. Dutton

Lumber Co., 67 N.Y.2d 138, 492 N.E.2d 116, 501 N.Y.S.2d 8 (1986); Incorporated Vil. Of Hempstead vs. Jablonsky, 283 A.D.2d 553, 725 N.Y.S.2d 76 (2nd Dept. 2001); Matter of Gambardella vs. Ortov Lighting, 278 A.D.2d 494, 717 N.Y.S.2d 923 (2nd Dept. 2000); Parker vs. City of New York, 272 A.D.2d 310, 707 N.Y.S.2d 199 (2nd Dept. 2000). In this case, the Respondent provides absolutely nothing in support of his motion other than the completely false unsubstantiated allegations contained in his affidavit. Furthermore, the Defendant does not argue that he resided at a different address at the time of service but rather admitted that he resided at the address where service of process in the 2015 renewal judgment action was effectuated.

19.    With regard to the Respondent's allegations pertaining to the "ongoing" investigation against North American Process Serving, the company that effectuated service of the Summons and Complaint in the 2015 renewal judgment action, this allegation is a misrepresentation of the facts at hand. Although North American Process Serving was part of an investigation conducted by the New York State Attorney General's Office, this investigation was closed in July of 2009 as no findings were made with regard to the company's business practices. Annexed hereto as Exhibit "C" is a letter from James Morrissey, Assistant Attorney General for the State of New York.

20.    On the contrary, the Petitioner has provided sufficient proof that service was completed in accordance with New York CPLR 308(2). As such, the Respondent's request for relief must be denied.

## LACK OF MERITORIOUS DEFENSE IN THE ACTION UNDER INDEX NUMBER 23210/2015E

21.     Your affirmant respectfully submits that the Respondent has failed to provide a meritorious defense in support of his motion.   As stated *supra*, the Respondent's affidavit contains nothing more than false and conclusory allegations that are unsubstantiated by any credible documentary evidence.

22.     With regard to the Respondent's allegations that this Court should not have jurisdiction over the 2015 action, Legal Servicing, LLC commenced that action as a new action in order to obtain a new judgment for the outstanding balance that was well over the $25,000.00 threshold.   Regardless, this Court should have jurisdiction over an action of this nature since only the Supreme Court has the authority to direct the County Clerk to enter judgment and a renewal of the judgment lien.

23.     Regardless, CPLR 5015(a)(1) states, in pertinent part, that:

> The Court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of excusable default, if such motion is made within one year of service of a copy of the judgment with written notice of its entry upon the moving party . . .

In this case, the Defendant has made the instant motion more than **TWO YEARS** after entry of the 2015 renewal judgment.   As such, not only has the Defendant failed to provide a reasonable excuse for his default in the 2015 action, he is no longer within his time of right to request that the Petitioner's judgment be vacated.

## THE RESPONDENT HAS NO VALID DEFENSE TO THE INSTANT ACTION

24.    The Respondent clearly has nothing more to offer this Court than unsubstantiated, false and misleading statements pertaining to the practices of Legal Servicing and your affirmant, along with an abundance of case law and statutory law that is irrelevant to this case.

25.    Further, the Respondent no longer has standing to raise the arguments contained in his motion. The bottom line here is that the Respondent's papers are not only irrelevant at this junction, but are also moot.

26.    However, your affirmant feels that it is necessary to once again respond to certain specific allegations raised by the Respondent in his opposition. In page 10 of the Respondent's affidavit, the Respondent states that "Legal Servicing is also owned by Annemarie Steward."

27.    The Respondent's statement is a complete fabrication. It is respectfully submitted that **your affirmant is not, nor ever was, the owner of Legal Servicing, LLC. Your affirmant has been employed as Corporate Counsel to Legal Servicing, LLC since January of 2007.** Further, there are no public records whatsoever that would indicate that your affirmant is the owner of Legal Servicing, LLC. On the contrary, annexed hereto as Exhibit "D" is a current report from the Better Business Bureau dated October 9, 2018 showing **Robert Van De Mark as the Managing Member of Legal Serving, LLC. Mr. Van De Mark has been the sole owner and managing member of Legal Servicing, LLC since the business was created in 2004. Further, the annexed report demonstrates that Legal Servicing, LLC maintains an A+ rating with the Better Business Bureau.**

YSCEF DOC. NO. 25                                                    RECEIVED NYSCEF: 10/16/201

28.    With regard to the Respondent's comments pertaining to the business practices of Legal Servicing, LLC and your affirmant, said statements are not only irrelevant to this matter, but are also a completely false and misleading rendition of Legal Servicing, LLC's and business practices and your affirmant's practice as an attorney at law. Your affirmant respectfully submits that I am and always have been an attorney in good standing with the New York State Bar since June of 2001. No claims have ever been filed against me and I take great offense to the Respondent's crude assertions that I have conducted myself in any way other than with the utmost professionalism in this action and the previous actions.

29.    It is clear that the Respondent's main goal is to distract this Court's attention from the true merits of this case by insulting the integrity of Legal Servicing, LLC and your affirmant. Mr. Lewis has decided to use this case as a vehicle to overturn two validly entered judgments despite his failure to appear and defend himself in both the 2005 and 2015 actions.

30.    Again, as stated previously, this is simply an action for an order permitting the sale of the Respondent's interest in real property located at 4058 Pratt Avenue, Bronx, New York 10466. As such, it is respectfully requested that any and all of the claims made by the Respondent with regard to Legal Servicing, LLC's and business practices and your affirmant's practice as an attorney at law be disregarded by this Court.

## THE RESPONDENT IS TIME-BARRED FROM RAISING ANY DEFENSE TO THE ACTION UNDER INDEX NUMBER 22189 BCV 2005

31.    With regard to the Respondent's arguments pertaining to the action commenced in 2005, wherein Legal Servicing, LLC obtained a judgment in the amount

of $15,844.06 against Bernard Lewis, your affirmant respectfully submits that the present

action is separate and distinct from the action commenced in 2005.  As such, the

Respondent cannot utilize this case in an attempt to have the original judgment from 2005

vacated.

32.    Regardless, and for the sake of argument, it is respectfully submitted that

any defenses raised by the Respondent are of no consequence at this juncture since the

Respondent is no longer within his time of right to raise a meritorious defense to the 2005

action.

33.    CPLR 5015(a)(1) states, in pertinent part, that:

> The Court which rendered a judgment or order may relieve
> a party from it upon such terms as may be just, on motion
> of any interested person with such notice as the court may
> direct, upon the ground of excusable default, if such motion
> is made **within one year of service of a copy of the
> judgment** (*emphasis added*) with written notice of its entry
> upon the moving party . . .

In this case, the Respondent is attempting to call the 2005 judgment into question **OVER**

**TWELVE YEARS** after entry of the original 2005 judgment.

34.    Furthermore, pursuant to CPLR 317

> A person served with a summons other than by personal
> delivery to [him] . . . who does not appear may be allowed
> to defend the action within **one year after [he] obtains
> knowledge of entry of the judgment, but in no event
> more than five years after such entry,** (*emphasis added*)
> upon a finding of the court that [he] did not personally
> receive notice of the summons in time to defend and has a
> meritorious defense.

As such, not only has the Respondent failed to provide a reasonable excuse for his default

in the 2005 action, he is no longer within his time of right to call the judgment into

question.

35.    Furthermore, your affirmant respectfully submits that any alleged issues raised by the Respondent pertaining service of the Summons and Complaint in the 2005 action are irrelevant. Pursuant to CPLR 5014(2), "an action upon a money judgment may only be maintained between the original party to the judgment where . . . the judgment was entered against the defendant by default for want of appearance and the summons was served other than by personal delivery to him . . ." As such because service of the Summons and Complaint in the 2015 renewal judgment action was proper and in accordance with CPLR 308(2), no issue can be raised with regard to service in the prior 2005 action.

36.    Accordingly, it is respectfully submitted that the arguments raised by the Respondent with regard to the 2005 action are completely irrelevant to this case. Further, the claims he has raised in his opposition are completely self-serving and unsupported by any credible evidence. See, Barretta Realty Skyline Div. of Real Property Technologies, LLC vs. A+ Abstract, Inc., 32 Misc.3d 133 (App. Term, 2nd, 11th & 13th Jud. Dists.).

37.    However, your affirmant would like to clarify one point of contention raised by the Respondent in paragraph 5 of his affidavit. Mr. Lewis states that "Court records show that the plaintiff in the case of 22189 BCV 2005 was Resolution Management LLC." The Respondent provides a case summary from the Bronx County Civil Court. Your affirmant respectfully submits that Legal Servicing, LLC assigned the judgment in the 2005 action to Resolution Management, LLC in November of 2009. An assignment of the judgment was filed with the Bronx County Civil Court on September 2, 2010.

38. Resolution Management, LLC then assigned the judgment in the 2005 action back to Legal Servicing, LLC on May 1, 2012. Although an assignment of judgment from Resolution Management, LLC to Legal Servicing, LLC was not recorded with the Bronx County Civil Court, said assignment must not be considered invalid. *See, Law Research Serv., Inc. vs. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836 (2d Cir. 1974), wherein the Court held that assignments are not required "to be recorded in order to be deemed valid, and the assignee of a judgment may attempt to enforce that judgment and collect from the debtor . . ." As such, the Respondent's arguments pertaining the Plaintiff's name in the 2005 action lack any merit whatsoever.

39. Regardless, it must be noted that the judgment Petitioner seeks to enforce is not the judgment obtained in the 2005 action against the Respondent. Rather, the Petitioner is seeking to enforce a judgment lien that was renewed and obtained against the Respondent on February 25, 2016. This is clearly stated in both my petition affirmation dated November 15, 2017 (*See* WHEREFORE paragraph on page 3 of petition and WHEREFORE paragraph on page 5 of affirmation).

40. It is unequivocally clear that the Respondent's motion papers are nothing more than a frivolous attempt to distract this Court from the Petitioner's undisputable entitlement to enforce its judgment.

41. Based upon the foregoing, it is respectfully requested that the relief requested in the Respondent's Motion be denied in its entirety, and that the Petition of Legal Servicing, LLC be granted in its entirety.

YSCEF DOC. NO. 25
RECEIVED NYSCEF: 10/16/201

**WHEREFORE**, Petitioner respectfully requests that this Court deny the relief requested in the Respondent's Motion in its entirety, and that an order be issued permitting execution on the Respondent's interest in the real property located at 4058 Pratt Avenue, Bronx, New York 10466, together with such other and further relief as the Court may deem just and proper.

Dated:    October 15, 2018
          Williamsville, New York

Annemarie E. Steward, Esq.

TO:    BERNARD LEWIS A/K/A
       BERNARD E. LEWIS
       RESPONDENT *PRO SE*
       4818 WILDER AVENUE
       BRONX, NEW YORK 10470

YSCEF DOC. NO. 25

RECEIVED NYSCEF: 10/16/201

STATE OF NEW YORK
SUPREME COURT   COUNTY OF BRONX

Index No.:  31007/2017E

LEGAL SERVICING, LLC,

Petitioner ,

-against-

BERNARD LEWIS A/K/A
BERNARD E. LEWIS,

Respondent.

---

## AFFIRMATION IN OPPOSITION

---

Annemarie E. Steward, Esq.
Attorney for Petitioner
2801 Wehrle Drive, Suite 5
Williamsville, NY 14221
(716) 565-9300

# EXHIBIT W

STATE OF NEW YORK
SUPREME COURT    COUNTY OF BRONX

LEGAL SERVICING, LLC,

                                    Petitioner,                    Index No. 31007/2017E

        -against-                                                  NOTICE OF
                                                                   SETTLEMENT
                                                                   OF ORDER
BERNARD LEWIS A/K/A
BERNARD E. LEWIS,

                              Respondent.

        **PLEASE TAKE NOTICE** that the annexed proposed Order Permitting Execution on
Real Property will be presented to the Honorable Mary Ann Brigantti, J.S.C., Bronx County
Supreme Court, 851 Grand Concourse #111, Part 15, Bronx, New York 10451, on the 9th day of
July, 2019 at 9:30 in the forenoon of that day, for settlement and signature. The proposed Order
is being submitted in accordance with the memorandum decision issued by the Honorable Mary
Ann Brigantti on June 6, 2019.

DATED: June 13, 2019

                                    By_____
                                    Annemarie L. Steward, Esq.
                                    Attorney for Petitioner
                                    2801 Wehrle Drive, Suite #5
                                    Williamsville, New York 14221
                                    (716) 626-1330

TO:    Bernard Lewis a/k/a
       Bernard E. Lewis
       Respondent *pro se*
       4818 Wilder Avenue
       Bronx, New York 10470

At an IAS Term, Part 15 of the Supreme
Court of the State of New York, held in and
for the County of Bronx, at the Courthouse
located at 851 Grand Concourse, Bronx,
New York, on the _____ day _____
of _____, 2019.

PRESENT:
HON. MARY ANN BRIGANTTI, J.S.C.

_____

LEGAL SERVICING, LLC,

                          **Petitioner,**

      **-against-**

**BERNARD LEWIS A/K/A,**
**BERNARD E. LEWIS,**

                          **Respondent.**

_____

Index # 31007/2017E

**ORDER PERMITTING**
**EXECUTION ON**
**REAL PROPERTY**

Petitioner having petitioned this Court, for an Order pursuant to CPLR §5236 directing the sale of real property belonging to respondent and such petition having regularly come on to be heard before this Court on the 29th day of October, 2018.

NOW, after reading and filing the notice of petition dated November 15, 2017, the petition verified November 15, 2017, the affirmation of Annemarie E. Steward, Esq. affirmed November 15, 2017, together with the exhibits thereto annexed, all in support of the petition, the opposition of the Respondent dated December 28, 2017, together with exhibits annexed thereto, the reply affirmation of Annemarie E. Steward, Esq., affirmed on January 3, 2018, together with exhibits annexed thereto, and due deliberation having been had, and the parties having appeared before this Court on October 29, 2018, and the Court having filed its memorandum decision dated June 6, 2019.

NOW, on motion of Annemarie E. Steward, attorney for Petitioner, it is

**ORDERED** that Petitioner, Legal Servicing, LLC, may issue execution against Respondent's interest in the real property located at 4058 Pratt Avenue, Bronx, New York, 10466; and it is further

**ORDERED** that the Bronx County Sheriff be directed to conduct a sale of real property located at 4058 Pratt Avenue, Bronx, New York, 10466; and it is further

**ORDERED** that that the proceeds arising from the sale not exceeding One Hundred Sixty Five Thousand Five Hundred Fifty and 00/100 ($165,550.00) Dollars be paid over to the Respondent; and it is further

**ORDERED** that the Renewal Judgment for Thirty One Thousand Seven and 85/100 Dollars ($31,007.85), with interest thereon from the 25th day of February, 2016, together with the fees and costs of this action, be adjudged to be a lien against the proceeds for that sum in excess of One Hundred Sixty Five Thousand Five Hundred Fifty and 00/100 ($165,550.00) Dollars; and it is further

**ORDERED** that the surplus in excess of One Hundred Sixty Five Thousand Five Hundred Fifty and 00/100 ($165,550.00) Dollars be applied to the payment of the Renewal Judgment entered with the Bronx County Clerk's Office on February 25, 2016.

**MARY ANN BRIGANTTI, J.S.C.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No.: 31007/2017E

LEGAL SERVICING, LLC,

Petitioner,

-against-

BERNARD LEWIS A/K/A
BERNARD E. LEWIS,

Respondent,

## NOTICE OF SETTLEMENT OF ORDER

Annemarie E. Steward, Esq.
Attorney for Petitioner
2801 Wehrle Drive, Suite 5
Williamsville, NY 14221
(716) 565-9300