UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERNARD LEWIS,<br><br>                              Plaintiff,<br><br>            -v-<br><br>ANNMARIE STEWARD, ESQ., et al.,<br><br>                              Defendants. | 19 Civ. 8085 (PAE) (OTW)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Bernard Lewis brings this action against defendants Annemarie Steward, Esq., Legal Servicing, LLC ("Legal Servicing"), Robert T. Van De Mark, North American Process Serving, LLC ("NAPS"), Rodney A. Giove, Robert Crandall, William Singler, Resolution Management, LLC ("Resolution"), Mark H. Stein, Esq., JP Morgan Chase Bank, N.A. ("Chase"), and Erin Capital Management, LLC ("Erin Capital"). He brings federal claims under the Fair Debt Collection Practice Act ("FDCPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state-law claims under judiciary law § 487(1) and for negligence. These claims arise out of two default judgments obtained against Lewis in state court as a result of debt incurred on a credit card originally issued by Chase.

Before the Court are two motions. On February 13, 2020, Chase moved to dismiss the claims against it, which are under RICO and for negligence. Lewis, for his part, has moved for a preliminary injunction seeking to enjoin the auction of his property and to compel Giove to comply with a 2009 state-court order in an unrelated case. On August 18, 2020, the Honorable Ona T. Wang, United States Magistrate Judge, issued a Report and Recommendation recommending the Court grant Chase's motion, deny Lewis's motion, and deny, on grounds of mootness, Lewis an

opportunity to amend his Complaint.  Lewis has filed objections to the Report, and Chase has

filed a response.  For the following reasons, the Court adopts the Report in full.

## I.     Background

### A.     Factual Background[1]

Sometime before 2005, Lewis obtained a Chase credit card.  Compl. ¶ 16.  He incurred

debt on it; the Complaint does not state when.  After Lewis's debt was 90 days in default, Chase

sold the right to collect the debt to Legal Servicing and Erin Capital.  *Id.* ¶¶ 16, 18, 37.[2]  Lewis

alleges that the debt was, at the time of the sale, "inaccurate, not owed, and or otherwise not

collectable." *Id.* ¶ 18.

After the sale, Legal Servicing and Erin Capital attempted to collect on the debt.  *Id.*

¶¶ 38–46.  In 2002, Erin Capital obtained a default judgment against Lewis, *id.* ¶ 38, and in

2005, Legal Servicing obtained a default judgment against Lewis for $15,844.06, *id.* ¶ 46.  Lewis

did not learn about the Erin Capital default judgment until 2019 when the judgment was assigned

to another entity.  *Id.* ¶ 38.  Erin Capital has not appeared in this action.

In June 2010, Legal Servicing, through its counsel, Annemarie Steward, Esq., assigned its

default judgment to Resolution.  *Id.* ¶ 63.  Lewis alleges that five years later, on June 11, 2015,

---

[1] Neither party has objected to the statement of facts in the Report and Recommendation. Dkt. 68 ("Report").  The Court therefore adopts that statement of facts in full.  The Court assumes familiarity with the Report and sets out here only the limited facts necessary to put the issues at hand in context.  These are primarily drawn from the Complaint, Dkt. 2 ("Compl."), and the attached Exhibits.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The debt may have arisen from one or two distinct Chase credit-card accounts, resulting in one or two sales.  *See* Compl. ¶ 37; *id.*, Exs. E–F.  That detail is not consequential to this decision.

despite having assigned Legal Servicing's default judgment to Resolution, Steward filed a summons and complaint for a "judgment lien renewal" in New York State Supreme Court in Bronx County. *Id.* ¶¶ 65–66, 69.  On February 25, 2016, "the Supreme Court entered an order granting Legal Servicing LLC, a default judgment lien renewal in the amount of $31,007.85." *Id.* ¶ 71.  On November 16, 2017, Legal Servicing, through Steward, filed a petition to auction a property in the Bronx belonging to Lewis to satisfy the judgment.  *Id.* ¶ 72.

The Complaint is not clear as to when Lewis discovered the renewed judgment and petition to auction his property.  *Id.* ¶ 74.  On October 1, 2018, Lewis filed a motion in state Supreme Court that, he states, sought to "vacate the default judgment, judgment lien renewal, and dismissal for misrepresentation, fraud and lack of jurisdiction."  *Id.*  On June 6, 2019, the Supreme Court denied that motion.  *Id.* ¶ 87; *see also* Dkt. 24-1 at 3–7 (June 6, 2019 order of Supreme Court Justice Brigantti granting Legal Service's petition to force the sale of the property and denying Lewis's motion).

### B.     Procedural History

On August 29, 2019, Lewis filed his Complaint, bringing the claims set out above against the 11 defendants.  Compl.  On August 30, 2019, the Court referred this case to Judge Wang for general pretrial supervision.  Dkt. 3.  On December 13, 2019, defendants Steward, Legal Servicing, Van De Mark, and Giove answered.  Dkt. 16.  As of the date of this opinion, defendants NAPS, Crandall, Singler, Resolution, Stein, and Erin Capital have not appeared.

On December 16, 2019, Lewis filed a motion seeking a preliminary injunction and temporary restraining order ("TRO") to enjoin Legal Servicing from auctioning Lewis's property at 4058 Pratt Avenue, Bronx, New York, 10466, and to compel Giove to comply with a state-court order in an unrelated action.  Dkt. 17 ("Mot. Prelim. Inj.").  On December 17, 2019, the Court referred that motion to Judge Wang for a report and recommendation.  Dkt. 20.  On

3

December 17, 2019, defendants Steward, Legal Servicing, Van De Mark, and Giove filed an opposition to Lewis's motion.  Dkt. 21 ("Opp. Prelim. Inj.").

On December 20, 2019, Judge Wang, having determined that there was no emergency, issued an order to show cause as to why she should not treat Lewis's motion as for a preliminary injunction.  Dkt. 22.  On December 27, 2019, Lewis filed an opposition.  Dkt. 23.  On December 30, 2019, Steward, Legal Servicing, Van De Mark, and Giove filed a letter supplementing the record by setting out the procedural history of the underlying state-court actions.  Dkt. 24.  On January 3, 2020, the same defendants filed an opposition to Lewis's motion for a preliminary injunction.  Dkt. 25.  On January 21, 2020, Lewis filed his reply.  Dkt. 28.

On February 13, 2020, Chase filed a motion to dismiss the negligence and RICO claims against it.  Dkts. 32–33.  On February 14, 2020, the Court referred that motion to Judge Wang for a report and recommendation.  Dkt. 35.  On March 11, 2020, Lewis filed an opposition to Chase's motion.  Dkt. 38 ("Lewis Opp.").  On March 19, 2020, Chase filed its reply.  Dkt. 40 ("Chase Reply").[3]

On August 18, 2020, Judge Wang issued the Report, which recommends that Lewis's motion for a preliminary injunction be denied and that Chase's motion to dismiss be granted.  On September 2, 2020, Lewis served his Objections on Chase, and on September 17, 2020, filed them.  Dkt. 73 ("Objections") at 29.  On September 15, 2020, Chase filed its response to Lewis's objections.  Dkt. 71 ("Chase Resp.").

---

[3] Also on March 19, 2020, Chase moved for, *inter alia*, a stay of discovery pending resolution of its motion to dismiss.  Dkt. 41.  On March 20, 2020, Judge Wang granted the stay until May 15, 2020.  Dkt. 43.  On May 12, 2020, Chase requested an extension of the stay until resolution of the motion to dismiss, Dkt. 53, which Judge Wang granted, Dkt. 54.

C.      **Current Status of Other Defendants**

Defendants Steward, Legal Servicing, Van De Mark, and Giove have appeared and answered the complaint.  On October 30, 2020, these defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, Dkt. 76, and moved to stay all discovery pending resolution of that motion, Dkt. 77.  On November 2, 2020, the Court referred the 12(c) motion to dismiss to Judge Wang for a report and recommendation. Dkt. 78.  On November 17, 2020, Judge Wang stayed all discovery.  Dkt. 87.

Defendants NAPS, Crandall, Singler, Resolution, Stein, and Erin Capital have not appeared or otherwise participated in this action.  On November 12, 2020, Lewis requested a Clerk's Certificate of Default as to Resolution, Singler, and Erin Capital.  Dkts. 83–85.  On the same day, the Clerk of Court issued such certificates as to these three defendants.  Dkt. 86.

II.     **Legal Standards Governing a Report and Recommendation**

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When specific objections are timely made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation

strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). "This is so even in the case of a *pro se* petitioner." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE) (AJP), 2017 WL 5125542, at *2 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 F. App'x 584 (2d Cir. 2018). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

## III.   Discussion

Lewis raises various objections to the Report.  First, Lewis objects to the Report's recommendation that his negligence claim against Chase be held time-barred, and argues that fraudulent concealment on Chase's part tolls the statute of limitations.  Objections at 1–6. Second, Lewis objects to the Report's recommendation that his preliminary injunction be denied, and contends that the state-court judge is a "facilitator" of the conspiracy. *Id.* at 7. Lewis's remaining objections concern defendants other than Chase and/or are not directed at the Report. And Lewis does not seek leave to amend his Complaint or object to the Report's recommendation that he not be granted leave to amend.  Accordingly, clear error review of the other sections of the Report is appropriate. *See Dickerson*, 2013 WL 3199094, at *1.  The Court reviews *de novo* the Report's conclusions as to Lewis's negligence claim and preliminary injunction motion, and reviews for clear error its unobjected-to recommendations as to the RICO claim and as to leave to amend.

### A.      Chase's Motion to Dismiss

#### 1.      Legal Standards Governing a Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When resolving a motion to

dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable

inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145.  That tenet, however, does not apply to

legal conclusions. *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*,

572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it]

suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation

omitted).  However, *pro se* status "does not exempt a party from compliance with relevant rules

of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal

quotation marks and citation omitted).  The Court may not read into *pro se* submissions claims

inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127

(2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*,

459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

## 2.      The Recommendation to Dismiss the Negligence Claim

Under New York law, the elements of common law negligence are "duty, breach, damages, causation and foreseeability." *Hyatt v. Metro-N. Commuter R.R.*, 16 A.D.3d 218, 792 (1st Dep't 2005). "[T]o prevail on [a] claim of common-law negligence, there must first be a legal duty owed by defendant to" the plaintiff. *D'Amico v. Christie*, 71 N.Y.2d 76, 87 (1987). The duty cannot be contractual, as it is well-established under New York law that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).

Here, Lewis's Complaint alleges that Chase was "negligent when it sold the same zombie debt to multiple third party debt buyers which include accounts that were inaccurate, or in some way not collectable." Compl. ¶ 120. The Report concluded that the Complaint has not pled a valid negligence claim because it does not plead that Chase owed any duty to Lewis. *See* Report at 6 n.4. That is correct. As to Lewis's relationship with Chase, the Complaint alleges only that Lewis "had a credit card with Chase Bank" and that Chase had "sold the same zombie debt that was inaccurate, not owed, and or otherwise not collectable to both Erin Capital Management LLC, and Legal Servicing LLC." Compl. ¶¶ 16–18. Chase argues that this latter statement is belied by the exhibits attached to Lewis's Complaint. *See* Chase Mem. at 6. Regardless, even taking this factual allegation as true, the Complaint's allegations do not support a negligence claim. As the Report recognized, Lewis's having a credit card with Chase does not give rise a non-contractual legal duty owed to him by Chase. And the Complaint admits that his sole relationship with Chase arises out of the credit card that he obtained from Chase, the debts incurred on which he allegedly later defaulted. Compl. ¶ 16. Because Lewis cannot pursue tort damages based on a breach of a solely contractual duty, *see Clark-Fitzpatrick*, 70 N.Y.2d at 389, his negligence claim fails at the threshold.

In any event, even assuming that the Complaint pled all elements of negligence, that claim would be time-barred, as the Report recognized. Report at 5–6. In general, under New York law, negligence claims have a statute of limitations of three years. N.Y. C.P.L.R. § 214. The limitations period begins to run when "the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009) (internal citations and quotations omitted). The limitations period for claims sounding in fraud, however, is the greater of six years or two years after the plaintiff could have, with reasonable diligence, discovered the fraud. N.Y. C.P.L.R. § 213(8).

Here, the Report reasons that, although the Complaint does not state when the sale of the debt arising from Lewis's use of the credit card occurred, it must have occurred before Legal Servicing or Erin Capital obtained their default judgments—in 2002 and 2005, respectively—more than a decade before August 2019, when Lewis filed the Complaint. Report at 6; Compl. ¶¶ 38, 46. Lewis does not object to that conclusion, nor does he dispute that the limitations period here is three years. Instead, he asserts that under a theory of fraudulent concealment, the statute of limitations on his negligence claim should be tolled. Objections at 1–6. But Lewis's statement to this effect is conclusory. He does not point to any allegations in the Complaint supporting an inference of fraudulent behavior by Chase. Consequently, Lewis's negligence claim, even if otherwise properly pled, would be subject to a three-year statute of limitations and hence time-barred.

### 3. The Recommendation to Dismiss the RICO Claim

As noted, Lewis does not object to the Report's recommendation that the RICO claim against Chase be dismissed. Although Lewis conclusorily states that the "chronology of the events will demonstrate a conspiracy in this matter," the objections that follow relate to the

actions of other parties, such as Legal Servicing, and to a separate action that Lewis brought in this District, which was recently dismissed as frivolous. *See Lewis v. Hatem et al.*, No. 19 Civ. 6446 (GBD) (KHP), Dkt. 70 (S.D.N.Y. Aug. 18, 2020). Lewis's objections and accompanying exhibits do not relate to Chase.

Judge Wang properly recommended that Lewis's RICO claim against Chase be dismissed for failing to allege any predicate acts with the "requisite specificity" required for a RICO claim, or "any acts at all by Chase beyond the sale of the initial debt." Report at 10. To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). To establish a violation of § 1962(c), "a plaintiff must show that a person engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quoting *DeFalco*, 244 F.3d at 305); *see also Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018).

As the Report recognized, the Complaint is devoid of factual allegations that could plausibly support a RICO claim. Report at 10–11. For one thing, it alleges only a single act by Chase: the sale of the initial debt, which Lewis asserts was not collectable. Even assuming that act was an act of racketeering, a single act is a legally insufficient basis on which to find the pattern of unlawful activity required by RICO. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) ("[T]hat a pattern 'requires at least' two predicates implies 'that while two acts are necessary, they may not be sufficient.'" (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985))). The Complaint also fails to plausibly allege Chase's involvement in a criminal enterprise, alleging only that Legal Servicing and Erin Capital "follow[ed] [Chase's]

10

directions" and that Chase, Legal Servicing, and Erin Capital, along with the individual

defendants, form an "enterprise."  Compl ¶¶ 150–153.  But as the Report concludes, these

conclusory allegations fall for short of plausibly pleading such an enterprise.[4]  *See* Report at 10

(citing *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539

(S.D.N.Y. 2001)).  Even giving the Complaint the most liberal reading possible, it falls far short

of pleading a viable RICO claim against Chase.

### 4.        The Recommendation to Deny Leave to Amend

As the Report correctly notes, "the court should not dismiss a *pro se* [complaint] without

granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795

(2d Cir. 1999) (internal quotation and citation omitted).  Here, however, the deficiency in

Lewis's negligence and RICO causes of action against Chase is "substantive"—it cannot be

cured with better pleading, and hence amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d

99, 112 (2d Cir. 2000).

As to the negligence claim, it is barred by the statute of limitations.  The actions at issue

occurred well over a decade ago, and even assuming Lewis could replead this claim so as to

make out a plausible negligence claim, there is no indication whatsoever—including in Lewis's

objections—of facts that could support a theory of fraudulent concealment.  And as to the RICO

claim, an opportunity to amend would similarly be futile.  Lewis's sparse objections do not

identify any facts that could patch the multiple holes in this claim as pled.

---

[4] The Complaint also contains allegations about a consent order Chase entered into in a
California Consumer Financial Protection Bureau action.  *See* Compl. ¶¶ 19–36.  It does not
explain how these allegations are relevant to this action or to Lewis's credit card debt.

It would, finally, also be futile to permit Lewis to amend the Complaint to attempt to assert other possible claims against Chase. In the Report, Judge Wang specifically instructed Lewis that, "[t]o the extent that Plaintiff believes he can amend his Complaint as to Chase to assert claims that would not be subject to dismissal, he shall describe such claims in any objections timely filed to this Report and Recommendation." Report at 12. Notably, Lewis did not do so. There is no non-speculative basis on which to infer that Lewis could now fashion a complaint that would make out a plausible claim of any sort against Chase.

## B.    Preliminary Injunction

The decision to grant or deny a preliminary injunction rests in the district court's sound discretion. *See Am. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 232 (2d Cir. 1998). A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). The party seeking the injunction carries the burden of persuasion to demonstrate, "by a clear showing," that the necessary elements are satisfied. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, at 129–30 (2d ed.1995)) (emphasis omitted).

To obtain a preliminary injunction in the Second Circuit, a plaintiff must demonstrate: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation . . . ." *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The plaintiff must also show that the balance of hardships "tips in plaintiffs' favor," and that the "public interest would not be disserved by the issuance of a preliminary injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)).

Relevant here, the Anti-Injunction Act prohibits a federal court from granting an injunction staying a state-court proceeding "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 ("Anti-Injunction Act"). These exceptions are "rare" and "narrow," and any "doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).

Here, Lewis seeks a preliminary injunction[5] (1) preventing Legal Servicing, Steward, and Van De Mark from auctioning the property in the Bronx, and (2) compelling Giove to comply with a 2009 state court order in an unrelated case. *See* Mot. Prelim. Inj. at 2.

As to Lewis's bid to stay the property auction, such a stay is squarely barred by the Anti-Injunction Act. Legal Servicing obtained an order in New York State Supreme Court authorizing the sale of the Bronx property to enable it to satisfy its judgment against Lewis. *See* Dkt. 24-1 at 3–7 (June 6, 2019 order of Justice Brigantti granting petition to force sale of property). That auction, the Court understands, is currently stayed pending the outcome of

---

[5] As the Report notes, Lewis's motion was styled as seeking both a preliminary injunction and a TRO. *See* Report at 12 n.6; *see also* Mot. Prelim. Inj. Having reviewed the motion and Lewis's opposition to Judge Wang's order to show cause, Dkt. 23, the Court agrees that Lewis's motion is properly treated as one for a preliminary injunction. Lewis has not demonstrated that the more deliberative timetable and adversarial submissions appropriate for resolving a preliminary injunction motion would cause him immediate and irreparable harm. On the contrary, the state-court order at issue, granting the petition to force a sale of the property, has been stayed pending the outcome of a separate adverse-possession case regarding the same property. *See* Opp. Prelim. Inj., Ex. C ("Stay Order") (November 25, 2019 order staying order granting petition to force sale of property). At least as of June 30, 2020, the stay has not been lifted. *See* Dkt. 59 (June 30, 2020 status update from defendants Legal Servicing, Steward, Van De Mark, and Giove that the stay has not been lifted). In any event, the reasons articulated here for denying the preliminary injunction motion would apply equally to a substantively parallel application for a TRO.

another state-court case.  *See* Stay Order.  Lewis does not identify any exception that would permit this federal court to issue an injunction to stay Justice Brigantti's order permitting the sale.  In his Objections, Lewis appears to acknowledge that the Anti-Injunction Act blocks this aspect of his action here, and that his application is instead properly directed to the New York State Supreme Court.  Objections at 6.  But, he explains, "[i]t is not possible to seek resolution by the State Court when the State Court Judge has become a facilitator of the conspiracy to steal the subject property."  *Id.* at 7.  As a basis to avoid the Anti-Injunction Act, that argument is frivolous.  Lewis has not recited any basis to accuse Justice Brigantti of complicity in such a conspiracy.  This aspect of his preliminary injunction application is, therefore, unsustainable.

As to Lewis's bid to compel Giove's compliance with a state court order, that motion is frivolous (and likely moot).  Lewis seeks to compel Giove to comply with an order to show cause issued more than 11 years ago, on July 21, 2009, in an unrelated state-court action.  Mot. Prelim Inj. at 2; *see* Opp. Prelim. Inj., Ex. D (copy of order to show cause).  Defendants explain that Giove entered into a consent order with New York State and that, as a result, Justice Drury dismissed the action on June 28, 2010.  Opp. Prelim. Inj. at 3.  The Report concluded that the motion to compel compliance with this order to show cause was "frivolous on its face, and is likely moot."  Report at 12 n.6.  That is correct, for multiple reasons.  Lewis has not explained how that order relates to this action; why, in light of the 2010 dismissal of the state-court action, the order to show cause in that action is not moot; or why, if not, asking this Court, as opposed to the presiding state court, to enforce a state-court order is warranted as an exercise of judicial discretion.  This aspect, too, of Lewis's preliminary injunction application is meritless.

**CONCLUSION**

For the foregoing reasons, the Court adopts the Report in full and denies Lewis leave to amend the Complaint.

14

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 17 and 32 and to terminate defendant Chase.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 19, 2020
      New York, New York