UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

BERNARD LEWIS,

                      Plaintiff,              19 Civ. 8085 (PAE)

      -v-

                                                    ORDER

LEGAL SERVICING, LLC, et al.,

                    Defendants.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

    *Pro se* plaintiff Bernard Lewis brings this action against defendants Annemarie Steward, Legal Servicing, LLC ("Legal Servicing"), Robert T. Van De Mark ("Van De Mark"), North American Process Serving, LLC ("NAPS"), Rodney A. Giove ("Giove"), Robert Crandall ("Crandall"), William Singler ("Singler"), Resolution Management, LLC ("Resolution"), Mark H. Stein ("Stein"), and Erin Capital Management, LLC ("Erin Capital"). Lewis claims violations of New York Judiciary Law § 487(1), the Fair Debt Collection Practice Act ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and brings a claim for negligence. These all arise from two default judgments entered against Lewis in state court as a result of unpaid debt on a credit card originally issued to him by JP Morgan Chase Bank, N.A., a former defendant in this case.

    Lewis has filed a motion for a default judgment against defendants Singler, Resolution, Stein, and Erin Capital. Dkt. 98. Stein has opposed Lewis's motion for a default judgment and moved to vacate the entry of default against him. Dkt. 105. For the reasons that follow, Lewis's motion for default judgment is denied, and Stein's motion to vacate the Clerk's Certificate of Default against him is granted.

I.     **Background**

    A.     **Factual Background**

The account below is drawn largely from Lewis's Complaint, Dkt. 2 ("Compl."), and attachments. Although the Complaint is murky in significant respects, the Court has attempted, where possible, to clarify Lewis's allegations.

Before 2005, Lewis obtained a Chase credit card, and thereafter incurred debt on it. *Id.* ¶ 16. The Complaint does not specify when the debt was incurred or sold. After the debt was 90 days in default, Chase sold the debt to Legal Servicing and Erin Capital. *Id.* ¶¶ 16, 18, 37. Lewis alleges that the debt was, at the time of the sale, "inaccurate, not owed, and or otherwise not collectable." *Id.* ¶ 18. The debt may have been associated with two separate accounts. *See id.*, Exs. E–F.

Following the sales, Legal Servicing and Erin Capital attempted to collect on the debt. *Id.* ¶¶ 39–41, 43–46. In 2002, Erin Capital obtained a default judgment against Lewis, *id.* ¶ 38, and in 2005, Legal Servicing obtained a default judgment against Lewis for $15,844.06, *id.* ¶ 46; *id.*, Ex. J. Lewis did not learn about the Erin Capital default judgment until 2019 when the judgment was assigned to another entity. *Id.* ¶ 38.

Singler was a notary who, in 2005, notarized an affidavit of service of Legal Servicing's complaint upon Lewis. *Id.* ¶¶ 10, 45; *id.*, Ex. I (copy of Singler affidavit of service). Singler also owns the company American Legal Process, Inc., a process serving company. *Id.* ¶ 10; *id.*, Ex. L (press release regarding Singler's company). The allegations against Singler in the Complaint largely focus on a 2009 criminal action against Singler and his business for "sewer service," and a special proceeding to void thousands of default judgments in which Singler or his company allegedly served the complaint on the wrong address, misrepresented the method of service, or falsely notarized affidavits of service. *See id.* ¶¶ 47–49, 53–62, 93–95; *id.*, Exs. K

(copy of criminal complaint against Singler and American Legal Process, Inc.), L (April 14, 2009 press release regarding Singler's arrest), N (verified petition of special proceeding to vacate default judgments). The Complaint alleges conclusorily that Giove and Steward directed Singler to "engage in sewer service upon [Lewis.]" *Id.* ¶ 153. The Complaint also alleges that Erin Capital engaged in "sewer service." *Id.* ¶ 121.

In June 2010, Legal Servicing, through its counsel Steward, assigned its default judgment to Resolution. *Id.* ¶ 63. Lewis alleges that on June 11, 2015, despite having assigned Legal Servicing's default judgment to Resolution, Steward filed a summons and complaint for a "judgment lien renewal" in the New York Supreme Court in Bronx County. *Id.* ¶¶ 65–66, 69. On February 25, 2016, "the Supreme Court entered an order granting Legal Servicing LLC, a default judgment lien renewal in the amount of $31,007.85." *Id.* ¶ 71. On November 16, 2017, Legal Servicing, through Steward, filed a petition to auction a property in the Bronx belonging to Lewis to satisfy the judgment. *Id.* ¶ 72. Stein was allegedly the attorney who represented Resolution in its purchase of the default judgment from Legal Servicing. *Id.* ¶ 12.

The Complaint is not clear as to when Lewis discovered the renewed judgment and petition to auction his property. *Id.* ¶ 74. On October 1, 2018, Lewis filed a motion to "vacate the default judgment, judgment lien renewal, and dismissal for misrepresentation, fraud and lack of jurisdiction." *Id.* On June 6, 2019, the Supreme Court denied Lewis's motion. *Id.* ¶ 87; *see also* Dkt. 24-1 at 3–7 (June 6, 2019 order of New York Supreme Court Justice Brigantti granting the petition to force the sale of the property and denying Lewis' motion).

B. **Relevant Procedural History**

On August 29, 2019, Lewis filed his Complaint. Compl. On August 30, 2019, the case was referred to Judge Wang for general pretrial supervision. Dkt. 3. On December 10, 2019,

3

Lewis filed an affidavit of service on Singler, Resolution, and Erin Capital. Dkts. 5–6, 12.[1] However, Lewis did not at this time file proof that he had served the summons and complaint on Stein.

On November 12, 2020, Lewis applied for a Clerk's Certificate of Default against Resolution, Singler, and Erin Capital, Dkts. 83–85, which issued the same day, Dkt. 86. On December 30, 2020, Lewis filed an affidavit of service for Stein, affirming that on November 27, 2019 service was accepted by "Antonio Paba." Dkt. 90. On February 5, 2021, Lewis again applied for entry of default against Singler, Resolution, and Erin Capital, but added Stein. Dkts. 93–94. The same day, a Clerk's Certificate of Default issued for Stein. Dkt. 96.

On February 9, 2021, Stein, then proceeding *pro se*,[2] filed an objection to Lewis's request for an entry of default (which at this point had already issued) on the basis that Lewis had not filed an affidavit of service as to him. Dkt. 96 ("Stein Obj."). On February 17, 2021, Lewis filed an objection to the Stein Objection, stating that he had filed an affidavit of service on February 4, 2021. Dkt. 97. The same day, Lewis filed a motion for a default judgment against Singler, Resolution, Erin Capital, and Stein. Dkt. 98 ("Lewis Mem."). On March 17, 2021, Stein moved to set aside the entry of default and opposed Lewis's motion for a default judgment. Dkt. 103, as amended Dkts. 105 (motion to set aside entry of default), 106 ("Stein Aff."), 107 ("Stein Opp'n"). On March 30, 2021, Lewis opposed Stein's motion to set aside the entry of default. Dkt. 104 ("Lewis Opp'n").

Now pending are Lewis's motions for a default judgment and the objections to same.

---

[1] The docket text incorrectly reflects that the affidavit of service at docket 12 reflects service on Steward.

[2] Counsel appeared *pro hac vice* for Stein on February 24, 2021. Dkt. 102.

## II. Applicable Legal Standards

"Federal Rule of Civil Procedure 55 establishes a two-step process for a plaintiff to obtain a default judgment." *Harty v. Koutsourades*, No. 20 Civ. 2779 (PMH), 2021 WL 1299495, at *2 (S.D.N.Y. Apr. 7, 2021). First, pursuant to Rule 55(a), where a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Second, absent circumstances in which the "plaintiff's claim is for a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(a), the plaintiff "must apply to the court for a default judgment," Fed. R. Civ. P. 55(b)(2).

In deciding whether to grant a default judgment, courts in this Circuit consider three factors: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Sanchez v. Hunt's Point Triangle, Inc.*, No. 15 Civ. 03787 (LTS), 2018 WL 1137065, at *3 (S.D.N.Y. Mar. 1, 2018) (quoting *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02 Civ 9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)). If the court determines that these factors favor the plaintiff, the court "must decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted." *Id.* (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Rule 55(c) does not define 'good cause,'" but the Second Circuit has instructed courts to look to the same three criteria as for an entry of a default judgment. *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12 Civ. 0052 (JPO), 2013 WL 1809637, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (summary order)) (instructing courts to consider "(1) whether

5

the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense").

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court . . . ." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). "In this circuit, there is a strong 'preference for resolving disputes on the merits.'" *Murray*, 2013 WL 1809637, at *3 (quoting *Enron*, 10 F.3d at 95). Default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary," but "an understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case" and "afford[] litigants a reasonable chance to be heard." *Enron*, 10 F.3d at 96. Good cause "should be construed generously." *Id.* Defaults "are particularly disfavored by the law when substantial rights are implicated, or when substantial sums of money are demanded." *Id.* at 97 (citations omitted).

## III. Discussion

### A. Stein

#### 1. Willfulness

"The Second Circuit has interpreted willfulness, in the context of a default, to refer to conduct that is more than merely negligent or careless." *Fischer v. Forrest*, No. 14 Civ. 1307 (PAE), 2014 WL 2717937, at *3 (S.D.N.Y. June 16, 2014) (cleaned up). "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Murray*, 2013 WL 1809637, at *4 (citation omitted). Even gross negligence does not lead to a finding of willfulness. *See Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).

Stein argues that although he was eventually served the complaint at his place of business, he never received a copy of the summons. *See* Stein Opp'n at 4–5. He argues that he

became aware of the action in September 2019, when he was mailed only a civil cover sheet and the first page of the complaint. Stein Aff. ¶ 7. His intention, he states, was to monitor the docket, wait for proper service, and then move to dismiss. *See id.* ¶¶ 9–10. In March 2020, Stein received an envelope addressed to "Special Private Intelligence Agency," an entity with which he was not familiar, and that contained a copy of the complaint only (not the summons). *See id.* ¶ 11. The envelope was postmarked November 19, 2019, and was placed on Stein's chair at his office. *Id.* ¶ 12.

On February 10, 2021, Stein learned that an affidavit of service had been filed on December 30, 2020, claiming that the summons and complaint had been served on November 27, 2019 to Antonio Paba, who works for GLC, a company that Stein's firm, Lacy Katzen LLP ("Lacy Katzen"), has contracted to provide, *inter alia*, messaging, copying, and answering services, but who was not authorized to accept service on behalf of Lacy Katzen. *See id.* ¶¶ 15–18. The affidavit indicates that service was addressed to GLC, at an address that was not the firm's. *See* Stein Aff., Ex. C. Stein claims that Paba never informed him that any papers had been left for him. *See id.* ¶ 19.

On the facts recited by Stein, which the Court has been given no reason to doubt, Stein's default here is clearly not willful. There are a number of defects in the service upon Stein, most prominently that he was never served a copy of the summons, and Stein represents that he was actively monitoring the docket waiting to be properly served before he appeared. Once Stein became aware that an affidavit of service had been filed—despite, he argues, his never having been properly served—he entered an appearance and promptly contested the default judgment. Lewis argues that the fact that GLC provides certain secretarial services for Stein's firm and has instructions for what to do if GLC receives service intended for someone at the firm proves that

GLC was hired to avoid service. *See* Lewis Opp'n, Ex. A ¶¶ 56–59 (affidavit of Bernard Lewis in support of his motion for default judgment). But there is no evidence for this claim. At worst, Stein can be faulted for not entering an appearance once he had actual knowledge of (although not service in) the action. But that conduct does not rise to the level of willfulness.

### 2. Meritorious Defenses

"A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Fischer*, 2014 WL 2717937, at *4 (cleaned up). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* (citation omitted).

Lewis brings three claims against Stein: (1) a claim for violation of New York Judiciary Law § 487; (2) a claim for common law negligence; and (3) a civil RICO claim. *See* Compl. ¶¶ 90–132, 146–62. Against each claim, Stein proffers a facially meritorious, and indeed a substantial, defense. First, he persuasively argues that Lewis's section 487 and negligence claims are time-barred. *See* Stein Opp'n at 7. The relevant conduct undisputedly occurred, at the latest, in 2012. The statute of limitations for claims under section 487 is six years, *see Melcher v. Greenberg Traurig, LLP*, 23 N.Y.3d 10, 15 (2014) (C.P.L.R. § 213(1) applies to claims for attorney deceit under Judiciary Law § 487), and for negligence, three years, *see* C.P.L.R. § 214. Stein also identifies substantive defenses to these claims, namely that the section 487 claim fails because Lewis has not made any non-conclusory allegations that Stein deceived, intended to deceive, or colluded with anyone, and that Lewis's negligence claim fails because Stein, who was not Lewis's attorney, did not owe any duties to Lewis. *See* Stein Opp'n at 5–6. He also argues that Lewis's civil RICO claims fails because Lewis fails to allege the

8

existence of an enterprise or pattern of racketeering, and fails to allege Stein's involvement in either. *See id.* at 8–10.

### 3. Prejudice to Lewis

"Prejudice to the nondefaulting party is 'the single most persuasive reason for denying a Rule 55(c) motion.'" *Murray*, 2013 WL 1809637, at *5 (quoting 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2699 (3d ed. 2010)). Lewis has not articulated any prejudice he would suffer were the Court to vacate the default judgment against Stein. This case has not yet moved past the motion to dismiss stage, and discovery has not begun. *See* Dkt. 87 (staying discovery until resolution of the pending motion to dismiss). Accordingly, the only possible prejudice would be delay. And it is "well established that delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Murray*, 2013 WL 1809637, at *5 (cleaned up). Lewis has made no such showing. The Court finds no reason why Lewis would be meaningfully prejudiced were his claims against Stein were litigated on the merits, beginning, presumably, with a motion to dismiss from Stein, following by discovery on the surviving claims (if any).

The Court finds that all three factors favor Stein. Accordingly, the Court finds that Stein has demonstrated good cause to set aside the entry of default pursuant to Rule 55(c).

### B. Other Defaulting Defendants

The other defaulting defendants, Singler, Resolution, and Erin Capital, have not appeared or moved to vacate the entries of default against them. Notwithstanding their failure to appear, the Court denies Lewis's motion for a default judgment against these defendants because the Court, in its discretion, is not at all convinced that Lewis "has pleaded facts supported by

9

evidence sufficient to establish the defendant's liability with respect to each cause of action asserted." *Sanchez*, 2018 WL 1137065, at *3.

There is a pending motion to dismiss filed by defendants Steward, Legal Servicing, Van De Mark, and Giove (together, the "moving defendants") alleging, *inter alia*, that (1) Lewis's Judiciary Law § 487, negligence, and FDCPA claims are time-barred; and (2) Lewis's claims cannot be heard by this Court under the Rooker-Feldman and Younger abstention doctrines. *See* Dkt. 76-7. If the moving defendants succeed on either theory, most or all of Lewis's claims against the defaulting defendants would also fail. Accordingly, the Court entertains significant doubts as to whether Lewis has pled liability on each claim (Judiciary Law § 487, negligence, FDCPA, and RICO) against the other defaulting defendants. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96.

Accordingly, Lewis's motion for a default judgment against Singler, Resolution, and Erin Capital is denied without prejudice. Lewis may seek leave to re-file this motion after the Court resolves the pending motion to dismiss.

## CONCLUSION

For the foregoing reasons, Lewis's motion for a default judgment is denied. Stein's motion to vacate the Clerk of Court's entry of default against him is granted. Stein is directed, within three weeks of the date of this order, to answer or otherwise respond to the complaint.

The Clerk of Court is respectfully directed to vacate the entry of default against Stein at docket 95, and to terminate the motions pending at dockets 98 and 105.

SO ORDERED.

                                            *Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 9, 2021
      New York, New York