UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BERNARD LEWIS,

         Plaintiff,

  -v-

ANNEMARIE E. STEWARD, ESQ. et al.,

         Defendants.

19 Civ. 8085 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

  *Pro se* plaintiff Bernard Lewis brings claims against defendants Annemarie E. Steward, Legal Servicing, LLC ("Legal Servicing"), Robert T. Van De Mark, North American Process Serving, LLC ("NAPS"), Rodney A. Giove, Robert Crandall, William Singler, Resolution Management, LLC ("Resolution"), Mark H. Stein, JP Morgan Chase Bank, N.A. ("Chase"), and Erin Capital Management, LLC ("Erin Capital"). These consist of federal claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and state-law claims under New York Judiciary Law § 487(1) and for negligence. Dkt. 2 ("Compl."). The claims stem from two default judgments entered against Lewis in state court as a result of unpaid debt incurred on a credit card originally issued to him by Chase. On November 19, 2020, the Court dismissed Lewis's claims against Chase. Dkt. 88.

  Pending now is a motion for judgment on the pleadings filed by Steward, Van De Mark, Giove, and Legal Servicing (collectively, the "moving defendants"). Dkt. 76. On March 15, 2022, the Honorable Ona T. Wang, United States Magistrate Judge, issued a Report and Recommendation (the "Report") recommending that the Court grant the motion and dismiss

Lewis's claims against them with prejudice and without leave to amend. Dkt. 113. Lewis has filed objections to the Report, Dkt. 117, and the moving defendants have filed a response, Dkt. 118. For the following reasons, the Court adopts the Report in full.

I. **Background**

   A. **Factual Background**[1]

Sometime before 2005, Lewis obtained a Chase credit card. Compl. ¶ 16. He incurred debt on the credit card, and after the debt was 90 days in default, Chase sold the right to collect the debt to Legal Servicing and Erin Capital.[2] *Id.* ¶¶ 16, 18, 37. The Complaint does not state when the debt was incurred or sold. The Complaint alleges that the debt was, at the time of the sale, "inaccurate, not owed, and or otherwise not collectable." *Id.* ¶ 18.

After the sale, Legal Servicing and Erin Capital attempted to collect on the debt.[3] *Id.* ¶¶ 38–46. On May 5, 2005, a verified complaint by Legal Servicing and summons were served on Lewis by Robert Crandall. *Id.* ¶¶ 9, 45; *id.* at Ex. I (affidavit of service). The affidavit of service was notarized by William Singler, the owner of process-serving company American

---

[1] Neither party has objected to the statement of facts in the Report. The Court therefore adopts the statement of facts in full. The Court assumes familiarity with the Report and sets out here only the limited facts and procedural history necessary to assess the issues presented. These are primarily drawn from the Complaint, Dkt. 2 ("Compl."), the moving defendants' Answer, Dkt. 16 ("Answer"), and exhibits attached to the Complaint and Answer. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009))).

[2] The debt may have arisen from one or two distinct accounts, resulting in one or two sales. *See* Compl. ¶¶ 18, 37; *id.* at Exs. E–F. That detail is not consequential to this decision.

[3] In 2002, Erin Capital obtained a default judgment against Lewis. *Id.* ¶ 38. Lewis did not learn about the Erin Capital default judgment until 2019, when the judgment was assigned to another entity. *Id.*

Legal Process, Inc. ("ALP"). *Id.* ¶¶ 10, 45; *see id.* at Ex. I (affidavit of service); Ex. O (press release regarding Singler and ALP). Legal Servicing's suit, and ensuing default judgment, were filed by moving defendant Rodney Giove, an attorney. *Id.* ¶¶ 8, 39, 46. Moving defendant Robert Van De Mark, the managing member, president, and CEO of Legal Servicing, submitted an affidavit in support of the suit. *Id.* ¶¶ 6, 43. On August 17, 2005, Legal Servicing obtained a default judgment in state court against Lewis for $15,844.06. *Id.* ¶ 46; *id.* at Ex. J.

The Complaint alleges conclusorily that Giove and Annemarie Steward, counsel for Legal Servicing, had directed Singler and Crandall to "engage in sewer service," in which an entity fails to properly serve a party but nonetheless affirms that they have done so, upon Lewis.[4] *Id.* ¶ 153. The Complaint details a 2009 criminal prosecution of Singler and his business, ALP, for engaging in sewer service, as well as a special proceeding to void thousands of default judgments in which Singler or ALP allegedly served the complaint on the wrong address, misrepresented the method of service, or falsely notarized affidavits of service. *See id.* ¶¶ 47–49, 51–62, 93–95; *id.* at Ex. K (criminal complaint against Singler and ALP); *id.* at Ex. N (verified petition of special proceeding to vacate default judgments). The Complaint alleges that Singler's "admissions" in documents filed in the 2009 criminal case suggested that Crandall "may not have even signed the affidavit of service in Lewis['s] case" in 2005. *Id.* ¶ 49.

On July 21, 2009, the Erie County Supreme Court ordered respondents—including Giove—who had used ALP to serve process in various proceedings to show cause why the court should not require respondents to vacate and set aside default judgments stemming from actions in which ALP had served process. *Id.* at Ex. M. On January 15, 2010, the New York State Attorney General announced that Singler had pled guilty to taking part in a fraudulent scheme.

---

[4] The Complaint also alleges that Erin Capital engaged in "sewer service." *Id.* ¶ 121.

*Id.* ¶ 61. Later that year, on August 2, 2010, Giove entered into a consent order in the special proceeding that severed and dismissed the claims against him and required him, *inter alia*, to provide notice to individuals served by ALP and against whom default judgments were entered on or after January 1, 2006. Dkt. 25-2, ¶ 3(c).

The Complaint states that, upon finding out about Singler's arrest, Giove "turned [Lewis's] file over to" Steward. Compl. ¶ 62. In June 2010, Legal Servicing, through Steward, assigned the default judgment arising out of Lewis's debt to Resolution. *Id.* ¶ 63. On June 11, 2015, despite having assigned Legal Servicing's default judgment to Resolution, Steward filed a summons and complaint for a "judgment lien renewal" in New York State Supreme Court in Bronx County on the basis of the default judgment against Lewis. *Id.* ¶¶ 65–66, 69. On February 25, 2016, the Supreme Court entered an order granting Legal Servicing a renewal judgment in the amount of $31,007.85. *Id.* ¶ 71.

On November 16, 2017, Legal Servicing, through Steward, filed a petition to auction a property in the Bronx belonging to Lewis in order to satisfy the judgment. *Id.* ¶ 72; *id.* at Ex. U. The Complaint is not clear as to when Lewis discovered the renewed judgment and petition to auction his property. *Id.* ¶ 74. On October 1, 2018, Lewis filed a motion in state Supreme Court that, he states, sought to "vacate the default judgment, judgment lien renewal, and dismissal for misrepresentation, fraud and lack of jurisdiction." *Id.* Steward filed an opposition to the motion. *Id.* ¶¶ 75–86. On June 6, 2019, the Supreme Court denied Lewis's motion, on the bases, among others, that he failed to provide a reasonable excuse for either default and that his claims of improper service of process were conclusory and unsubstantiated. *Id.* ¶ 87; *see also* Dkt. 24-1 at 3–7 (June 6, 2019 order of Supreme Court Justice Brigantti granting Legal Servicing's petition and denying Lewis's motion).

On November 25, 2019, the New York State Supreme Court in Bronx County stayed Legal Servicing's action to auction the property in the Bronx, pending resolution of a separate adverse possession action concerning ownership of that property. Dkt. 24-1 at 23. As of the filing of this order, the docket for the state court action by Legal Servicing against Lewis indicates that the case is "disposed," and a November 9, 2021 order of the Supreme Court, Appellate Division, First Department had affirmed the Supreme Court's decision to stay the action.

**B.     Relevant Procedural History**

On August 29, 2019, Lewis filed the Complaint, bringing the claims set out above against the 11 defendants. Compl. As to the moving defendants in particular, Lewis filed claims under New York Judiciary Law § 487(1) against Steward and Giove, *id.* ¶¶ 108–18; negligence claims against Steward, Van De Mark, and Giove, *id.* ¶¶ 122, 124–27, 129–32; claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against Steward, Van De Mark, and Legal Servicing, *id.* ¶¶ 134–45; and claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, against all defendants, *id.* ¶¶ 150–52, 154–62. The Complaint seeks, *inter alia*, $96,000 in damages, an injunction on the auction of the Bronx property, and referrals of Giove and Steward to the bar association for "misconduct." *Id.* at 44.

On August 30, 2019, the Court referred this case to Judge Wang for general pretrial supervision. Dkt. 3. On December 13, 2019, the moving defendants answered the Complaint and filed two counterclaims: that Lewis (1) had violated Rule 11(b) by filing a frivolous lawsuit; and (2) was engaging in malicious prosecution of them. Dkt. 16 ("Answer") ¶¶ 177–81.

On December 16, 2019, Lewis filed a motion seeking a preliminary injunction and temporary restraining order ("TRO") to enjoin Legal Servicing from auctioning Lewis's property at 4058 Pratt Avenue, Bronx, New York, 10466, and to compel Giove to comply with the New

York State Supreme Court order to show cause. Dkt. 17. On December 17, 2019, the Court referred that motion to Judge Wang for a report and recommendation, Dkt. 20, and the moving defendants opposed Lewis's motion, Dkt. 21. On December 20, 2019, Judge Wang, having determined that there was no emergency, issued an order to show cause as to why she should not treat Lewis's motion as one for a preliminary injunction. Dkt. 22. On December 27, 2019, Lewis filed an opposition. Dkt. 23. On December 30, 2019, the moving defendants filed a letter supplementing the record by setting out the procedural history of the underlying state-court actions. Dkt. 24. On January 3, 2020, the moving defendants submitted a reply affirmation, Dkt. 25, and on January 21, 2020, Lewis filed a reply, Dkt. 28.

On August 18, 2020, Judge Wang issued a report and recommendation as to both the preliminary injunction and a motion to dismiss filed by Chase. Dkt. 68. On November 19, 2020, the Court adopted the report in full, denying Lewis's motion for injunctive relief and dismissing Lewis's complaint against Chase without leave to amend the Complaint. Dkt. 88.

On October 30, 2020, the moving defendants filed the instant motion for judgment on the pleadings, Dkt. 76, and for a stay of discovery, Dkt. 77. On November 2, 2020, the Court referred the motion to Judge Wang for a report and recommendation. Dkt. 78. On November 17, 2020, Judge Wang granted the stay of discovery pending resolution of the moving defendants' motion. Dkt. 87. On December 14, 2020, Lewis opposed the motion for judgment on the pleadings, Dkt. 89, and on January 22, 2021, the moving defendants filed a reply, Dkt. 91.

As to the remaining defendants, on August 9, 2021, the Court denied Lewis's motion for default judgment against Singler, Stein, Resolution, and Erin Capital and granted Stein's motion to vacate the entry of default against him. Dkt. 109. On August 26, 2021, Stein answered the

6

Complaint. Dkt. 112. To date, Resolution, Erin Capital, NAPS, Crandall, and Singler have not appeared in this action.

### C. The Report

On March 15, 2022, Judge Wang issued the Report, which addresses the pending motion for judgment on the pleadings. It recommends that the Court grant the motion and deny Lewis leave to amend the Complaint. Report at 2. As an initial matter, Judge Wang found that neither the *Rooker-Feldman* nor the *Younger* doctrine barred Lewis's suit in its entirety. *Id.* at 10–14. As to the New York Judiciary Law § 487(1) claim, Judge Wang found the claim partially time barred, and that the Complaint fails to sufficiently allege conduct arising to "deceit" under the provision. *Id.* at 15–20. Likewise, as to the negligence claim, Judge Wang found it untimely, and that the Complaint fails to sufficiently allege that any moving defendant owed any duty to Lewis. *Id.* at 20–22. With respect to the federal claims, Judge Wang found the FDCPA allegations also time barred and outside the scope of relief afforded by the FDCPA provisions at issue, *id.* at 22–30, and that the Complaint fails to sufficiently allege, *inter alia*, the existence of an "enterprise" or predicate acts required to state a RICO claim, *id.* at 30–35. Finally, Judge Wang recommended denial of leave to amend the complaint as futile. *Id.* at 35–36.

On March 29, 2022, Lewis filed objections to the Report. Dkt. 117 (the "Objections"). On April 11, 2022, the moving defendants responded and requested that the Court adopt the Report. Dkt. 118.

## II. Discussion

### A. Applicable Legal Standards

#### 1. Legal Standards Governing a Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1). When specific objections are timely made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g., Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1–2 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). "This is so even in the case of a *pro se* petitioner." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17 Civ. 1022 (PAE) (AJP), 2017 WL 5125542, at *2 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 F. App'x 584 (2d Cir. 2018). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

### 2. Legal Standards Governing a Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*,

569 F.3d 40, 43 (2d Cir. 2009) (per curiam)); *accord L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

Thus, on such a motion, the Court accepts all of the non-movant's factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under this standard, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. And, if the allegations of a pleading "are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading]." *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted). The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

### B. Analysis

#### 1. Objections

Lewis raises various objections. However, even when reading these with the special solicitude owed to *pro se* filings, the Court does not discern any objections directed at the Report's findings. Although Lewis quotes the Report's conclusions on the four claims at issue, *see, e.g.*, Objections at 20–22 (§ 487(1) claim), 23–24 (negligence claim), 25 (FDCPA claims), 26 (RICO claim), 32–33 (RICO claim), he does not directly address the Report's recommendations, making only conclusory statements or restating allegations from the Complaint. *See, e.g., id.* at 20 ("The conduct of defendant Annemarie Steward . . . has now demonstrated egregious, and intentionally deceitful conduct."); *id.* at 22 ("Giove, Steward and Legal Servicing either knew, or should have known what William Singler and [ALP] were doing, but look the other way.").

Many of Lewis's objections instead concern issues outside the scope of the motion before the Court.[5] At points, Lewis also references the adverse effect of the stay of discovery on his ability to substantiate his allegations. *See, e.g., id.* at 2, 20–21, 23, 32. But these arguments are

---

[5] These include his assertion that Steward, the court and attorneys involved in the state action, and others are engaged in a conspiracy warranting a criminal referral, *see id.* at 23–24, 33–35; *see also id.* at 12–19 (discussing lawsuit against a state court judge); his allegations about the parties and claims involved in state court proceedings concerning the ownership of the Bronx property, *see id.* at 3–12; and his commentary about the amount that Legal Servicing may collect from him, *see id.* at 26, 31–32; *see also id.* at 27–31 (discussing cases involving debts under Arizona law).

Lewis also argues that the Report "overlooked the fact" that Resolution had failed to appear and asserts that Resolution was established for "nefarious reasons." *Id.* at 33. But, because Resolution is not involved in the instant motion, and because the Report does indeed mention that Resolution has not appeared in this action, *see* Report at 7, the Court finds no error in the Report's references to Resolution.

outside the scope of the instant Rule 12(c) motion, which, by nature, turns only on the pleadings and attached exhibits.

Accordingly, because Lewis's objections to the four claims against the moving defendants were either conclusory or repetitive of the allegations in the Complaint, the Court reviews the Report for clear error. *Dickerson*, 2013 WL 3199094, at *1–2. Finding none, the Court adopts the Report in full.[6]

### 2. New York Judiciary Law § 487(1) Claim

Under New York Judiciary Law § 487(1), a party may recover treble damages from an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." "[T]he statute applies to any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008). "[N]umerous New York State courts interpreting the statute, as well as federal courts construing the state court decisions, have concluded that liability attaches under [§ 487] only if the deceit is 'extreme' or 'egregious.'" *Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016), *as amended* (May 4, 2016) (collecting cases).

The Court finds no clear error in the Report's conclusion that, even assuming Lewis timely filed this claim, the Complaint fails to sufficiently allege a violation within § 487(1). *See* Report at 15–20. Even drawing all reasonable inferences in Lewis's favor, the Complaint does not plausibly allege that Giove and Steward's actions of, *inter alia*, ordering service of process on Lewis, transferring the case to each other and to Resolution, and seeking default judgment

---

[6] The Report does not rely on either abstention doctrine in recommending dismissal of the claims, and neither party objected to Judge Wang's findings on that issue. The Court thus declines to rule on the applicability of the abstention doctrines.

against Lewis evinced an "intent to deceive" the parties or the court, *Amalfitano*, 533 F.3d at 123, or constituted "extreme or egregious" conduct, *Ray*, 182 F. Supp. 3d at 29. *See, e.g., id.* (dismissing § 487 claim where the plaintiff failed to make out plausible claim that the defendants' statements were "intentionally deceitful"). And the facts alleged do not supply a plausible basis on which to conclude that either Giove or Steward did not honestly believe their representations to him and the court. The Court thus adopts the Report's recommendation to dismiss these claims.

### 3. Negligence Claim

"The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015), *as amended* (Nov. 23, 2015) (internal quotation marks omitted); *see also, e.g., Hyatt v. Metro-N. Commuter R.R.*, 16 A.D.3d 218, 218 (1st Dep't 2005). "If the defendant owes no duty to the plaintiff, the action must fail." *Pasternack*, 807 F.3d at 19; *see also D'Amico v. Christie*, 71 N.Y.2d 76, 87 (1987). "Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Darby v. Compagnie Nat'l Air Fr.*, 96 N.Y.2d 343, 347 (2001).

The Report found the negligence claims against Giove, Steward, and Van De Mark untimely, even under the six-year statute of limitations for claims sounding in fraud, and that the Complaint fails to plead that the moving defendants owed a duty to Lewis. Report at 21–22 (citing N.Y. C.P.L.R. § 214 (three-year limitations period for negligence claims); and N.Y. C.P.L.R. § 213(8) (six-year limitations period for claims sounding in fraud)). The Court finds no clear error in, and adopts, the Report's recommendation to dismiss this claim. As to timeliness, the Court is mindful that, as the Report recognizes, "[Lewis's] damages and date(s) thereof are

far from clear," *id.* at 21, making the precise application of the statutes of limitations unclear. However, even accepting all factual allegations as true and even assuming (contrary to the Report) that the claim is timely, the Complaint fails to plausibly allege that any of the moving defendants, in their capacity working for a debt collector, owed any duty to Lewis. The negligence claim thus fails as a matter of law. *E.g., Darby*, 96 N.Y.2d at 347.

### 4.  FDCPA Claims

To recover under the FDCPA, a plaintiff must satisfy three threshold requirements: "(1) [T]he plaintiff must be a 'consumer,' (2) the defendant must be a 'debt collector,' and (3) the defendant must have committed some act or omission in violation of the FDCPA." *Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp. 3d 340, 348 (S.D.N.Y. 2015) (quoting *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868 (PKC), 2011 WL 4344044, at *3 (S.D.N.Y. Sept. 8, 2011)). "Two principles guide our inquiry into whether a communication from a debt collector to a consumer violates the FDCPA." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 165 (2d Cir. 2020). "First, the FDCPA must be construed liberally to effectuate its stated purpose." *Id.* (internal quotation marks omitted). "Second, in evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the least sophisticated consumer would be deceived by the collection practice, looking to the impression likely to be left upon the unsophisticated consumer." *Id.* (internal quotations marks and alteration omitted).

FDCPA actions must be brought within one year from the date of the alleged violation. 15 U.S.C. § 1692k(d). "[A]bsent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019).

The Complaint alleges violations of several FDCPA provisions: (1) Section 1692d, which prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," (2) Section 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," (3) Section 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including collecting an amount not "expressly authorized by the agreement . . . or permitted by law," and (4) Section 1692g, which requires, *inter alia*, that a debt collector "cease" collection of a debt for which a consumer has timely submitted a dispute or request for information on the original creditor, until the debt collector obtains and sends to the consumer certain information. *See* Compl. ¶¶ 134–45.

The Report recommends dismissal of the FDCPA claims because the claims are time barred and fail on their merits. Report at 23. Reviewing this recommendation for clear error, the Court finds none. As the Report observes, the vast majority of the alleged events in the Complaint occurred more than one year before the Complaint was filed on August 29, 2019, and thus, the FDCPA claims are time barred. Report at 24. Furthermore, assuming, *arguendo*, that the claims are timely, the Complaint makes only "[t]hreadbare recitals" of the FDCPA provisions, "supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. For instance, as the Report points out, many claims turn, at least in part, on the allegation that the debt was not owed or otherwise not collectable, but the Complaint does not allege concrete facts supporting that assertion. Report at 28. Because the Complaint does not plausibly allege conduct or statements by the moving defendants that violated the FDCPA, the Court dismisses these claims.

### 5. RICO Claim

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). In turn, to establish a violation of § 1962(c), "a plaintiff must show that a person engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *DeFalco*, 244 F.3d at 306); *see also Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018).

The Report recommends dismissal of the RICO claim because the Complaint fails to sufficiently allege a pattern of any racketeering activity, the existence of a RICO enterprise, or the requisite injury to business or property. Report at 32–35. The Court again finds the Report's recommendation not erroneous. Even giving the Complaint the most liberal reading possible, the Complaint's conclusory allegations—including that Legal Servicing "follow[s] direction of defendant [Chase]," Compl. ¶ 150, that Giove and Steward obey Van De Mark's directions, *id.* ¶ 152, and Giove and Steward directed service on Lewis in conjunction with other defendants, *id.* ¶ 153–54—do not plausibly plead the existence of a criminal enterprise or a pattern of racketeering activity. *See, e.g., First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) ("Plaintiffs' conclusory naming of a string of entities does not adequately allege an enterprise." (internal quotation marks omitted)). The Court thus dismisses the RICO claim.

### 6. Leave to Amend the Complaint

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d

15

Cir. 2000)). "However, 'leave to amend a complaint may be denied when amendment would be futile.'" *Id.* (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)).

The Report recommends denying leave to amend as futile on the grounds that some of the claims are time barred and that "a liberal reading of the Complaint and the additional factual allegations made in Plaintiff's opposition to Moving Defendants' motion and his numerous other filings in this action and in the 2017 [state court] Action do not indicate that Plaintiff can remedy the numerous substantive deficiencies" in his claims. Report at 36. Again, the Court discerns no clear error in this recommendation. The deficiencies in the claims, including the untimely nature of some claims and the failure to plead elements of the remaining claims, are substantive, rendering amendment futile. *See, e.g.*, *Walker v. Pitnell*, 860 F. App'x 210, 212 (2d Cir. 2021) (affirming dismissal, without leave to amend, of FDCPA claims of *pro se* litigant where claims were untimely and complaint failed to allege sufficient facts to support them); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Although Lewis cites in the Objections various documents that he would seek in discovery, including contract documents between Resolution and Legal Servicing and specific conversations between the moving defendants, *see, e.g.*, Objections at 21, 32, such discovery would not cure the identified pleading-stage deficiencies. As with the Court's denial of leave to amend the claims against former defendant Chase, Dkt. 88, there is no non-speculative basis on which to infer that Lewis could now fashion a complaint that would make out a plausible claim against the moving defendants. The Court thus adopts the recommendation to dismiss these claims with prejudice.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full and denies Lewis leave to amend the Complaint with respect to his allegations against the moving defendants. The Clerk of Court is respectfully directed to terminate the motion pending at docket 76.[7]

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 30, 2022
     New York, New York

---

[7] The moving defendants' Rule 12(c) motion does not mention the two counterclaims asserted in their answer. Answer ¶¶ 177–81. Absent an indication otherwise, the Court thus assumes that the moving defendants plan to proceed with their counterclaims.

17